UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAN MARTÍNEK,

                Plaintiff,

v.

AMTRUST FINANCIAL SERVICES, INC.,
BARRY D. ZYSKIND, GEORGE KARFUNKEL,
and LEAH KARFUNKEL,

                Defendants.

No. 19-cv-8030
(Failla, J.)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP

Michael B. Carlinsky
Kevin S. Reed
Guyon H. Knight
51 Madison Ave., 22nd Fl.
New York, NY 10010
(212) 849-7000

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ........................................................................................................................2

      A.     AmTrust Issues The Preferred Stock ..............................................................2

      B.     AmTrust Proposes A Go-Private Transaction, Which The Common
            Stockholders Approve.....................................................................................4

      C.     Defendants' Statements Concerning The Preferred Stock....................................5

      D.     AmTrust Elects To Voluntarily Delist The Preferred Stock.................................6

STANDARD OF REVIEW .........................................................................................................7

ARGUMENT..............................................................................................................................8

I.      PLAINTIFF HAS NOT IDENTIFIED ANY FALSE OR MISLEADING
        STATEMENTS OR OMISSIONS .....................................................................................9

      A.     All Of The Statements Plaintiff Identifies Are True, And Are Protected
            Forward-Looking Statements..........................................................................9

            1.     Statements That The Preferred Stock Will Remain "Outstanding
                    According To Its Terms" ......................................................................9

            2.     Deutsche Bank Presentation .................................................................11

            3.     Statements Regarding Defendants' "Expect[ation]" Or "Current
                    Intention" That The Preferred Stock Will Continue To Be Listed ...........12

            4.     Other Statements Regarding The Listing Of The Preferred Stock
                    After Consummation Of The Transaction ..............................................14

             5.     Statements Made After AmTrust Announced The Delisting.....................15

      B.     Plaintiff Has Not Alleged Any Material Omission..............................................15

II.     PLAINTIFF HAS NOT PLEADED A STRONG INFERENCE OF SCIENTER ............16

      A.     Plaintiff's Allegations Cannot Support A Finding Of Motive As A Matter
            Of Law .......................................................................................................17

      B.     Plaintiff Offers No Circumstantial Evidence Sufficient To Demonstrate
            "Conscious Misbehavior" .............................................................................19

III.    PLAINTIFF HAS NOT STATED A 20(a) CLAIM...........................................................22

IV.   PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO REPLEAD ...........................23

CONCLUSION.........................................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*In re Adv. Battery Techs., Inc.*,
781 F.3d 638 (2d Cir. 2015) .................................................................................... 19, 21

*Anschutz Corp. v. Merrill Lynch & Co.*,
690 F.3d 98 (2d Cir. 2012) ............................................................................................ 16

*Arco Capital Corp. Ltd. v. Deutsche Bank AG*,
986 F. Supp. 2d 296 (S.D.N.Y. 2013) ........................................................................... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................... 8

*ATSI Comms., Inc. v. Shaar Fun, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ............................................................................................ 23

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)....................................................................................................... 15

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996) .......................................................................................... 18

*In re Cross Media Mkting. Corp. Sec. Litig.*,
314 F. Supp. 2d 256 (S.D.N.Y. 2004) ........................................................................... 18

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)....................................................................................................... 16

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) .......................................................................................... 17

*Elliott Assocs., L.P. v. Hayes*,
141 F. Supp. 2d 344 (S.D.N.Y. 2000) ........................................................................... 18

*Fant v. Perelman*,
1999 WL 199078 (S.D.N.Y. Apr. 9, 1999) .............................................................. 19, 20

*Gissin v. Endres*,
739 F. Supp. 2d 488 (S.D.N.Y. 2010) ........................................................................... 13

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
1998 WL 283286 (S.D.N.Y. June 1, 1998) ................................................................... 18

ii

*Honig v. Bloomberg*,
    2008 WL 8181103 (S.D.N.Y. Dec. 8, 2008) ........................................................................... 16

*Jones v. Perez*,
    550 F. App'x 24 (2d Cir. 2013) ............................................................................................ 14

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ..................................................................................... 8, 18, 19

*Kalnit v. Eichler*,
    99 F. Supp. 2d 327 (S.D.N.Y. 2000) ..................................................................................... 17

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) ................................................................................................. 12

*Levy v. Maggiore*,
    48 F. Supp. 3d 428 (E.D.N.Y. 2014) ..................................................................................... 23

*Maverick Fund, L.D.C. v. Comverse Tech. Inc.*,
    801 F. Supp. 2d 41 (E.D.N.Y. 2011) ..................................................................................... 13

*Ong v. Chipotle Mexican Grill, Inc.*,
    294 F. Supp. 3d 199 (S.D.N.Y. 2018) ................................................................................ 8, 13

*Pearlstein v. BlackBerry Ltd.*,
    93 F. Supp. 3d 233 (S.D.N.Y. 2015) ..................................................................................... 19

*Phillips v. LCI Int'l, Inc.*,
    190 F.3d 609 (4th Cir. 1999) ......................................................................................... 17, 18

*Porat v. Lincoln Towers Community Ass'n*,
    464 F.3d 274 (2d Cir. 2006) ........................................................................................... 23, 24

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996) ................................................................................................... 21

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010) ........................................................................................... 13, 16

*Spec. Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014) ..................................................................................... 23

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta Inc.*,
    552 U.S. 148 (2008)......................................................................................................... 8, 15

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015) ................................................................................................... 15

iii

*In re Supercom Inc. Sec. Litig.*,
   2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018) ............................................................. 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................ 16, 19

*Tiberius Capital, LLC v. PetroSearch Energy Corp.*,
   2011 WL 1334839 (S.D.N.Y. Mar. 31, 2011), *aff'd*,
   485 F. App'x 490 (2d Cir. 2012) ............................................................................. 18

*In re Time Warner Inc. Sec. Litig.*,
   9 F.3d 259 (2d Cir. 1993) ....................................................................................... 15

*Whitley v. Comsat Corp.*,
   2001 WL 1135946 (S.D.N.Y. Sept. 25, 2001) ......................................................... 16

*Wimberly v. Experian Info. Sols., Inc.*,
   2019 WL 6895751 (S.D.N.Y. Dec. 18, 2019) .......................................................... 12

*Wyche v. Adv. Drainage Sys., Inc.*,
   2017 WL 971805 (S.D.N.Y. Mar. 10, 2017), *aff'd*,
   710 F. App'x 471 (2d Cir. 2017) ............................................................. 2, 16, 17, 19

*Zagami v. Cellceutix Corp.*,
   2016 WL 3199531 (S.D.N.Y. June 8, 2016) ................................................... 8, 9, 23

## Rules / Statutes

15 U.S.C. § 78*l*(d) .................................................................................................... 10

15 U.S.C. § 78u-4(b) .................................................................................................. 8

15 U.S.C. § 78u-4(b)(1)(B) ......................................................................................... 8

15 U.S.C. § 78u-4(b)(2) ............................................................................................ 16

15 U.S.C. § 78u-5(i)(1)(B) ........................................................................................ 13

17 C.F.R. § 240.12d2-2(d)(3) ...................................................................................... 7

70 Fed. Reg. 42,456 .................................................................................................... 7

Del. Code tit. 8, § 213(a) ........................................................................................... 20

Fed. R. Civ. P. 9(b) .................................................................................... 1, 8, 9, 18

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1, 7

iv

Defendants AmTrust Financial Services, Inc. ("AmTrust"), Barry D. Zyskind, George Karfunkel, and Leah Karfunkel (the "Individual Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Complaint ("Compl.," Dkt. 5) of Plaintiff Jan Martínek pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff's Complaint identifies no false statements of fact, no material omissions of fact, no motive to commit fraud, and no circumstantial evidence of scienter.  In other words, Plaintiff has failed to plead numerous essential elements of his claims for violations of the Securities Exchange Act of 1934 ("Exchange Act").

Plaintiff allegedly purchased shares in six series of AmTrust preferred securities, which AmTrust voluntarily delisted from the New York Stock Exchange ("NYSE") in February 2019. Plaintiff asserts that this decision contradicted statements made by Defendants during 2018, while AmTrust went through a go-private transaction that involved only AmTrust's common stock.  Not so.  Beginning in January 2018, Defendants told investors of their current intention that "the outstanding series of AmTrust preferred stock will remain outstanding in accordance with their terms," and that "[i]n the future, the Issuer may take any action that is permitted by the terms of each series of preferred stock."  (Compl. ¶¶ 66(a), (c).)  Plaintiff admits (as he must) that the preferred securities remain outstanding and traded in the over-the-counter market, and Plaintiff does not (and cannot) identify a single term of the securities that Defendants breached. AmTrust also made a handful of forward-looking statements that it "expected" that the preferred securities would remain listed on the NYSE after the go-private transaction closed.  (*Id.* ¶¶ 66(f), (h), (k).)  But not only did the preferred securities remain listed for a time after the closing, these forward-looking statements are protected by the safe harbor provision of the Private Securities

Litigation Reform Act of 1996 ("PSLRA").  In short, Plaintiff's Complaint is founded on statements that are true and protected, and his claims can be dismissed for this reason alone.

Plaintiff also has not pleaded that Defendants had any motive to defraud investors. Plaintiff offers speculation that Defendants wanted to coax the go-private transaction to be approved or avoid SEC scrutiny.  But courts have held that these generalized motives (even if true) cannot support securities fraud claims.  Nor has Plaintiff alleged facts that raise a strong inference of conscious misbehavior on the part of Defendants.  The mere passage of time between Defendants' statements and the decision to delist the securities is insufficient to show scienter as a matter of law.  Plaintiff's other allegations are sheer speculation, none of which can overcome Defendants' reasonable and uncontradicted explanation for the decision to delist: that the costs of keeping the preferred securities listed "exceed[ed] the benefits given the small number of record holders and low daily trading volume." (*Id.* ¶ 73 (emphasis omitted).)

Plaintiff is a sophisticated investor who performed a diligent pre-suit investigation.  But no investigation can discover facts that do not exist.  In reality, Defendants made no false statements and did not act with scienter, and nothing in the Complaint shows otherwise.  This unsupported case should be dismissed without leave to replead.

**BACKGROUND[1]**

**A.    AmTrust Issues The Preferred Stock**

AmTrust is an insurance holding company that provides specialty property and casualty insurance products.  (Compl. ¶ 13.)  The Individual Defendants are directors of AmTrust, and

---

[1]    This background is based on the allegations in the Complaint (which Defendants accept as true only for purposes of this Motion), as well as the documents that the Complaint incorporates by reference.  *See, e.g.*, *Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *5 (S.D.N.Y. Mar. 10, 2017) (Failla, J.) ("[A] complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."), *aff'd*, 710 F. App'x 471 (2d Cir. 2017).

2

Defendant Zyskind has served as AmTrust's CEO and President since 2000.  (*Id.* ¶¶ 14-16.)  Between 2013 and 2016, AmTrust issued six series of preferred stock known as the Series A, B, C, D, E, and F shares (the "Preferred Stock").  (*Id.* ¶ 26.)  Apart from Series A, the issuances principally consisted of depositary shares ("ADRs"), which represent receipts for fractional interests in preferred stock.  (*Id.*)

In the prospectus supplements describing the Preferred Stock, AmTrust made forward-looking statements that these securities might be traded on the NYSE.  AmTrust stated that it "***intend[ed]*** to apply to list the [Preferred Stock] … on the New York Stock Exchange" (*id.* ¶ 29 (emphasis omitted)), and "***[i]f*** the application is approved, we expect trading to commence within 30 days following the initial issuance" (Ex. 1 at 1, 14, 31, 40 (emphasis added)).[2]  The prospectus supplements advised investors that words such as "intend" and "expect" were used to "identify forward-looking statements" and "[t]here can be no assurance that actual developments will be those anticipated by us."  (*Id.* at 4, 48.)[3]  For the specific forward-looking statement concerning the potential listing of the Preferred Stock, AmTrust warned that it "cannot assure you that the [Preferred Stock] will be approved for listing.  Even if the [Preferred Stock] is approved for listing, there may be little or no secondary market for [them]."  (*Id.* at 20.)[4]  In short, the prospect supplements contain no promise that the Preferred Stock would be listed on

---

[2]  *See also* Ex. 2 at 2, 18, 40, 49; Ex. 3 at 2, 17, 39, 48; Ex. 4 at 2, 17, 38, 47; Ex. 5 at 2, 16, 39, 48; Ex. 6 at 2, 17, 40, 49.  Citations to "Ex. __" refer to exhibits to the declaration of Kevin Reed, filed concurrently herewith.  All pin cites to exhibits reference the pagination found in the lower right corner of the pages cited.

[3]  *See also* Ex. 2 at 59; Ex. 3 at 58; Ex. 4 at 57; Ex. 5 at 59; Ex. 6 at 60.

[4]  *See also* Ex. 2 at 23; Ex. 3 at 22; Ex. 4 at 21; Ex. 5 at 22; Ex. 6 at 23.

any exchange, let alone a promise that, once listed, AmTrust would keep the Securities listed in perpetuity.[5]

**B.      AmTrust Proposes A Go-Private Transaction, Which The Common Stockholders Approve**

Before the end of 2018, AmTrust was a publicly traded company in which the Individual Defendants and their family members owned a large bloc of common shares.  (Compl. ¶¶ 3, 38.)  In 2017, partially as a result of having to restate three years of financial data, the price of AmTrust's common stock dropped by half, dipping as low as $12.45 in May 2017.  (*Id.* ¶¶ 35, 38.)  The Individual Defendants and their family attempted to stabilize the share price by investing $300 million in the company in a private placement of common stock.  (*Id.* ¶ 38.)  This sizeable investment brought the common stock holdings of the Individual Defendants and their family to more than 50%.  (*Id.*)  But by the end of the third quarter of 2017, the share price remained at just $13.46.  (*Id.* ¶ 35.)

In September 2017, Defendant Zyskind and Stone Point Capital, a private equity firm with expertise in management buyouts, began discussions about taking AmTrust private.  (*Id.* ¶¶ 19(a), 39.)  These discussions culminated with a January 9, 2018 letter from Stone Point and the Individual Defendants to the AmTrust board of directors, offering to buy the outstanding shares of AmTrust's common stock for $12.25 per share.  (*Id.* ¶ 44.)  After a campaign by activist investor Carl Icahn, this offer was raised to $14.75 per share.  (*Id.* ¶¶ 54-55, 61-62.)  Icahn agreed with this improved offer, and the advisory company Institutional Shareholder Services recommended that common stockholders approve the transaction at this price.  (*Id.*

---

[5]   The prospectus supplements further advised that the binding terms covering the Preferred Stock were contained in other documents—a certificate of designations for the Series A shares and deposit agreements for the Series B to F ADRs.  (Ex. 1 at 25; Ex. 2 at 29; Ex. 3 at 28; Ex. 4 at 27; Ex. 5 at 28; Ex. 6 at 29.)  These agreements likewise contain no promise that AmTrust would list the Preferred Stock or keep the Preferred Stock listed in perpetuity.

¶¶ 59, 63.)  On June 21, 2018, a clear majority of the unaffiliated stockholders voted to approve the go-private transaction.  (*Id.* ¶ 69.)  The transaction closed on November 29, 2018.  (*Id.* ¶ 70.)

### C.    Defendants' Statements Concerning The Preferred Stock

During 2018, Defendants made several statements concerning the future of the Preferred Stock in light of the go-private transaction.  (Compl. ¶ 66.)  These statements began in the January 9, 2018 letter proposing the transaction, where the Individual Defendants stated that "this proposal also contemplates that the outstanding series of AmTrust preferred stock will remain outstanding in accordance with their terms."  (*Id.* ¶ 66(a) (emphasis added).)  Less than two weeks later, the Individual Defendants reiterated this plan and also stated that "it is [their] current intention that," after the go-private transaction, the Preferred Stock "will continue to be listed on the New York Stock Exchange, the issuer will continue to file reports with the SEC and the Issue will continue to pay dividends on each series of preferred stock on a current basis."[6] (*Id.* ¶ 66(c) (emphasis omitted).)  But at the same time, the Individual Defendants clarified that "[i]n the future, the Issuer may take any action that is permitted by the terms of each series of preferred stock."  (*Id.* (emphasis omitted).)

Defendants repeated the statement that the Preferred Stock would remain outstanding "in accordance with their terms" on several other occasions, with the last coming on November 9, 2018, when AmTrust filed its Form 10-Q for the third quarter of 2018.  (*Id.* ¶¶ 45, 58, 66(a), (d), (g), (i)-(m).)  On two occasions, these statements were accompanied by a January 16, 2018 PowerPoint deck prepared by Deutsche Bank for the special committee of AmTrust's board considering the go-private transaction.  (*Id.* ¶ 66(i), (k); Ex. 11 at 1; Ex. 15 at 1.)  One line on one slide in this deck included a "Comment[]/area[] for clarification" stating: "[o]ngoing

---

[6]    Plaintiffs makes no allegation that AmTrust has not continued to pay dividends on the Preferred Stock on a current basis, nor could he.

disclosure and other obligations of the preferred securities." (Ex. 11 at 2; Ex. 15 at 2.)  The deck did not specify whether this was a comment or an area for clarification, nor did it explain what ongoing disclosure was referenced or what the other obligations of the preferred securities were.

Next, on three occasions between March 1 and May 4, 2018, AmTrust filed documents with the SEC containing the statement that "[e]ach share of the Company's currently outstanding preferred stock will remain outstanding and *it is expected* that they will continue to be listed on the New York Stock Exchange following the consummation of the transaction."  (Compl. ¶¶ 50, 52, 66(f), (h), (k) (emphasis added).)   Each time, AmTrust cautioned that statements of expectations were forward-looking statements protected by the Private Securities Litigation Reform Act.  (Ex. 7 at 1; Ex. 8 at 5; Ex. 14 at 5.)

AmTrust also made forward-looking statements about the Preferred Stock in the preliminary and definitive proxy statements for the vote on the go-private transaction, filed on April 9 and May 4, 2018, respectively.  (Compl. ¶¶ 67-68.)  In the section of the proxy statement title "Questions and Answers About the Special Meeting and the Merger," AmTrust stated that "each outstanding share of preferred stock of the Company will remain outstanding and will continue to be listed on the New York Stock Exchange following the merger and the reporting obligations with respect to such shares under the Exchange Act will therefore continue."  (*Id.* ¶¶ 56-57, 67-68.)   AmTrust expressly identified statements in the "Questions and Answers" section of these proxy statements as protected forward-looking statements.  (Ex. 9 at 91; Ex. 12 at 91.)

### D.    AmTrust Elects To Voluntarily Delist The Preferred Stock

On January 18, 2019, AmTrust's Board of Directors announced that it had elected to voluntarily delist the Preferred Stock.  (Compl. ¶ 73.)  The Board explained:

6

> AmTrust's decision to delist and deregister the Listed Securities was based on its determination that the administrative costs and burdens associated with maintaining the listings on the NYSE and the registration exceed the benefits given the small number of record holders and low daily trading volume. In addition, this decision was made in light of the Company's new ownership structure and the resulting changes to its longterm strategy, following the completion of AmTrust's go-private transaction on November 29, 2018 and the delisting of its common stock.

(*Id.* (emphasis omitted).)

Plaintiff—a principal of Central European Capital Partners and purchaser of all series of the Preferred Stock—immediately took action to try to stop the delisting. (*Id.* ¶ 86.) Plaintiff issued an open letter to Stone Point challenging this action. (*Id.*) Plaintiff also filed an objection to the delisting with the SEC. (*Id.*) The SEC is authorized to "postpone the effectiveness of an application to delist and/or to deregister to determine … what terms should be imposed by the Commission for the protection of investors." 17 C.F.R. § 240.12d2-2(d)(3). To facilitate this review, the SEC mandates a 10-day notice period before a delisting can take place—a period that "provides sufficient time for any interested parties to submit to the Commission any comments it has on the delisting and/or deregistration, to sell their securities, or to take any other action as permitted under state and Federal law." 70 Fed. Reg. 42,456–42,460 (July 22, 2005). Although Plaintiff and an underwriter objected to the delisting (Compl. ¶¶ 86, 88), the SEC took no action, and the delisting became effective on February 7, 2019 (*id.* ¶ 92). The Preferred Stock remains outstanding according to their terms and continues to be traded in the over-the-counter market. (*Id.* ¶ 76.) Nonetheless, Plaintiff claims he has lost $177,800 as a result of Defendants' purported violations of the Exchange Act. (*Id.* ¶ 12.)

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion to dismiss, this Court must determine if the plaintiff has stated a claim that "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'Where a

complaint pleads facts that are merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Moreover, 'the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'" *Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at \*2 (S.D.N.Y. June 8, 2016) (Failla, J.) (quoting *Iqbal*, 556 U.S. at 663, 678) (citation omitted).

In addition, "[a] claim for securities fraud must meet the heightened pleading requirements of [Rule] 9(b) and the Private Securities Litigation Reform Act of 1996 [], 15 U.S.C. § 78u-4(b), meaning that the claim must state the circumstances constituting fraud with particularity." *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 225 (S.D.N.Y. 2018) (Failla, J.) (internal quotation marks and alteration omitted). The PSLRA requires that "the complaint shall specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). As a result, "[a] plaintiff cannot base securities fraud claims on speculation and conclusory allegations." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).

## ARGUMENT

Plaintiff's first claim, for violations of Section 10(b) of the Exchange Act and Rule 10b-5, requires "'[i] a material misrepresentation or omission by the defendant; [ii] scienter; [iii] a connection between the misrepresentation or omission and the purchase or sale of a security; [iv] reliance upon the misrepresentation or omission; [v] economic loss; and [vi] loss causation.'" *Zagami*, 2016 WL 3199531, at \*3 (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)). Plaintiff's second claim, under Section 20(a) of the Exchange Act, is derivative and cannot succeed without a valid claim under Section 10(b). *See Ong*, 294 F. Supp. 3d at 226. But Plaintiff has not plausibly pleaded the elements of his Section 10(b) claim,

8

and certainly has not met the heightened standard of Rule 9(b) and the PSLRA.  All of Plaintiff's claims should, therefore, be dismissed with prejudice.

## I.    PLAINTIFF HAS NOT IDENTIFIED ANY FALSE OR MISLEADING STATEMENTS OR OMISSIONS

The *sine qua non* of a Section 10(b) claim is "a material misrepresentation or omission by the defendant."  *Zagami*, 2016 WL 3199531, at \*3.  Plaintiff's claims fail because, despite his strained interpretations of Defendants' statements, the Complaint does not allege a single material misrepresentation or omission.

### A.    All Of The Statements Plaintiff Identifies Are True, And Are Protected Forward-Looking Statements

Plaintiff's Complaint is based on five categories of alleged misstatements.  But Plaintiff has not shown that any of these statements was false when made, and in any event, they are protected forward-looking statements that cannot give rise to a Section 10(b) claim.

#### 1.    *Statements That The Preferred Stock Will Remain "Outstanding According To Its Terms"*

Plaintiff points to nine statements by AmTrust between January and November 2018 that its proposed Merger "contemplates that the outstanding series of AmTrust preferred stock will remain outstanding *in accordance with their terms*." (Compl. ¶¶ 45, 58, 66(a), (d), (g), (i)-(m).) All of these statements were true when made and are true today because the Preferred Stock remains outstanding according to its terms.  Plaintiff admits that the Preferred Stock is still traded in the over-the-counter market.  (*Id.* ¶ 76.)  And Plaintiff does not (and cannot) allege that AmTrust has breached any terms of the Preferred Stock.  In particular, Plaintiff never alleges that AmTrust's decision to delist the Preferred Stock breached any terms of those securities.

Plaintiff notes that the prospectus supplements for the Preferred Stock "stated that AmTrust '***intends*** to apply to list the depository shares representing the Series Preferred Stock on

9

the New York Stock Exchange.'"    (*Id.* ¶ 29 (emphases omitted).)    But the prospectus supplements are not part of the terms the Preferred Stock; those are found in the securities' certificates of designation and depositary agreement.  (*Supra* at 4 n.5.)  Moreover, this statement of intention is nonbinding, as confirmed by the "Special Note Regarding Forward-Looking Statements" in the offering documents, which advised investors that "[w]hen we use words such as [] 'intend' … we do so to identify forward-looking statements … [and] [t]here can be no assurance that actual developments will be those anticipated by us."  (Ex. 1 at 4, 48.)[7]  The prospectus supplements also warned investors against relying on the potential existence of a secondary market: AmTrust expressly identified the risk that "***we cannot assure you that [the Preferred Stock] will be approved for listing*** [and] [e]ven if [they] … are approved for listing, ***there may be little or no secondary market***."[8]  (*Id.* at 20 (emphases added).)[9]

Because the prospectus supplements contain no promise that the Preferred Stock will be listed, much less remain listed in perpetuity, Plaintiff also relies on the underwriting agreements entered into between AmTrust and the underwriters of the issuances.  (Compl. ¶ 27.)  Again, though, the underwriting agreements are not part of the terms of the Preferred Stock.  Plaintiff also (correctly) does not allege that he is a third-party beneficiary of these agreements.  In addition, as AmTrust showed in the now-dismissed *KBW* action (*see id.* ¶¶ 88-90), the underwriting agreements did not contain a promise to list the Preferred Stock on the NYSE in perpetuity.  *See* Mem. of Law in Support of AmTrust's Mot. to Dismiss at 19-20, 2019 WL

---

[7]  *See also* Ex. 2 at 59; Ex. 3 at 58; Ex. 4 at 57; Ex. 5 at 59; Ex. 6 at 60.

[8]   AmTrust's ability to delist the Preferred Stock is entirely consistent with federal law, which expressly allows an issuer to "withdraw … from listing and registration" a "security registered with a national securities exchange."  15 U.S.C. § 78*l*(d); *accord* NYSE Listed Company Manual § 808.00.

[9]  *See also* Ex. 2 at 23; Ex. 3 at 22; Ex. 4 at 21; Ex. 5 at 22; Ex. 6 at 23.

10

3754695 (Sup. Ct. N.Y. County Mar. 18, 2019).   In sum, the Preferred Stock remains outstanding according to its terms, and AmTrust's statements to that effect were and are true.

>2.      *Deutsche Bank Presentation*

On two occasions (April 9 and May 4, 2018) AmTrust made public a presentation by Deutsche Bank that contained one line in one slide with comments on AmTrust's statement that the Preferred Stock would remain outstanding in accordance with their terms:



(Ex. 11 at 2 (emphases added); Ex. 15 at 2 (same).)  As discussed above (at 9-11), the Preferred Stock does remain outstanding according to its terms, meaning that Deutsche Bank's slide is true.  Deutsche Bank also noted that a "Comment[]/area[] for clarification" was the "[o]ngoing disclosure and other obligations of the preferred securities."  (Ex. 11 at 2; Ex. 15 at 2.)  But the fact that Deutsche Bank raised this as an area to be clarified in the future is neither false nor misleading, nor even a statement.  Perhaps recognizing the innocuous nature of Deutsche Bank's

note, Plaintiff mischaracterizes this slide as "explicitly recogniz[ing] that [the Preferred Stock remaining outstanding] would require '[o]ngoing disclosure and other obligations of the preferred securities.'" (Compl. ¶ 66(i), (k).) The slide says no such thing, and this Court should not accept Plaintiff's misconstruction of this document, which is incorporated by reference into the Complaint. *See Wimberly v. Experian Info. Sols., Inc.*, 2019 WL 6895751, at *4 (S.D.N.Y. Dec. 18, 2019) (Failla, J.) ("[A]llegations are not assumed to be true when contradicted by documentary evidence.") (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)). Thus, even assuming that Deutsche Bank's slide can be attributed to AmTrust, that slide was true and not misleading.

3.    *Statements Regarding Defendants' "Expect[ation]" Or "Current Intention" That The Preferred Stock Will Continue To Be Listed*

Plaintiff alleges that on three occasions between March 1 and May 4, 2018, AmTrust stated that "[e]ach share of the Company's currently outstanding preferred stock will remain outstanding and ***it is expected*** that they will continue to be listed on the New York Stock Exchange following the consummation of the transaction." (Compl. ¶¶ 50, 52, 66(f), (h), (k) (emphasis added).) Plaintiff fails to plead any facts suggesting that this statement of expectation was false when made, particularly as the Preferred Stock *did* remain outstanding for a time after the go-private transaction closed.

In addition, each time AmTrust made this statement, it simultaneously cautioned investors that "[w]hen we use words such as … 'expect' … we do so to identify forward-looking statements … [and] [a]ctual results may differ materially from those expressed or implied in these statements." (Ex. 7 at 1; Ex. 8 at 5; Ex. 14 at 5.) This cautionary language means that AmTrust's statements of its expectations are protected by the PSLRA's safe harbor, which protects forward-looking statements that are either "'identified and accompanied by meaningful

12

cautionary language *or* [are] immaterial *or* the plaintiff fails to prove that [they were] made with actual knowledge that it was false or misleading.'" *Ong*, 294 F. Supp. 3d at 237 (quoting *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010)).  The PSLRA expressly defines forward-looking statements to include both "a statement of the plans and objectives of management for future operations" and "any statement of the assumptions underlying or relating to any statement" of those plans or objectives.  15 U.S.C. § 78u-5(i)(1)(B), (D).  "Moreover, the SEC has opined, and the Second Circuit has concurred, that 'the use of linguistic cues like "we expect" or "we believe," when combined with an explanatory description of the company's intention to thereby designate a statement as forward looking' satisfies safe harbor."  *Gissin v. Endres*, 739 F. Supp. 2d 488, 506-07 (S.D.N.Y. 2010) (alteration omitted) (quoting *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 769 (2d Cir. 2010)).  Because these statements were accompanied by meaningful cautionary language, and because (as shown *infra* at 16–22) the Complaint does not (and cannot) allege Defendants made these statements with actual knowledge that they were false or misleading, AmTrust's expectations concerning its future plans for the Preferred Stock falls comfortably within the PSLRA's safe harbor.  *See Maverick Fund, L.D.C. v. Comverse Tech. Inc.*, 801 F. Supp. 2d 41, 58-59 (E.D.N.Y. 2011) (holding that defendants' statements that they "'expect to become current in our filings with the SEC by the end of fiscal 2007' clearly express [their] expectations regarding a future event" and are protected by the safe harbor).

Plaintiff also relies on a January 22, 2018 statement by the Individual Defendants (not AmTrust) that "it is [their] current intention that, following completion of the proposed transaction, each series of the Issuer's preferred stock will continue to be listed on the New York Stock Exchange, the issuer will continue to file reports with the SEC and the Issue will continue to pay dividends on each series of preferred stock on a current basis."  (Compl. ¶ 66(c) (emphasis

13

omitted).)  But at the same time, the Individual Defendants warned investors that "[i]n the future, the Issuer may take *any action* that is permitted by the terms of each series of preferred stock." (*Id.* (emphases omitted).)  And AmTrust made no statements suggesting that the Preferred Stock would remain listed in perpetuity, regardless of cost—to the contrary, the prospectus supplements warned that no viable secondary market may exist for the securities.  (*Supra* at 3.) Given these cautionary statements, "when the [statement] is viewed in context, it cannot plausibly be alleged that a reasonable investor would understand defendants to have represented that there was no possibility of [AmTrust] [delisting the Preferred Stock].   Rather, the [statement] indicated only that [the Individual Defendants] had no present intention of doing so." *Jones v. Perez*, 550 F. App'x 24, 27 (2d Cir. 2013).

4.      *Other Statements Regarding The Listing Of The Preferred Stock After Consummation Of The Transaction*

Plaintiff relies on a statement in the "Questions and Answers" section of the preliminary and definitive proxy statements (published on April 9 and May 4, 2018, respectively) that "each outstanding share of preferred stock of the Company will remain outstanding and will continue to be listed on the New York Stock Exchange following the merger and the reporting obligations with respect to such shares under the Exchange Act will therefore continue."  (Compl. ¶¶ 56, 57, 67, 68.)  Once again, Plaintiff does not allege any facts suggesting that this statement was false when made, particularly as the go-private transaction by its own terms had no effect on the Preferred Stock, which remained listed for a time after the transaction closed.   AmTrust also expressly identified statements in the "Questions and Answers" section of these documents as forward-looking statements protected by the PSLRA.  (Ex. 9 at 91 ("There are forward-looking statements throughout this proxy statement, including under the headings … '*Questions and*

14

*Answers About the Special Meeting and the Merger*'….");  Ex. 12 at 91 (same).)  Therefore, these statements also cannot give rise to a Section 10(b) claim.

5.    *Statements Made After AmTrust Announced The Delisting*

Finally, Plaintiff cites statements made in a January 28, 2019 *Barron's* article and in the *KBW* litigation, which was filed on February 4, 2019.  (Compl. ¶¶ 66(b), (n), 81, 88-91.)  All of these statements became public *after* AmTrust announced on January 18, 2019 that it would be delisting the Preferred Stock.  (*Id.* ¶ 71.)  Plaintiff alleges that the article and litigation revealed statements made earlier to regulators.  (Compl. ¶¶ 66(b), (n), 81, 88-91.)  But Plaintiff does not (and cannot) allege that he was aware of these alleged private statements until they were published, and a "plaintiff cannot rely on acts of which [he] was unaware." *Arco Capital Corp. Ltd. v. Deutsche Bank AG*, 986 F. Supp. 2d 296, 306-07 (S.D.N.Y. 2013) (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta Inc.*, 552 U.S. 148, 161, 171 (2008)).  As Plaintiff could not have relied on these statements until after AmTrust announced its decision to delist the Preferred Stock, these alleged statements cannot give rise to a Section 10(b) claim.

**B.    Plaintiff Has Not Alleged Any Material Omission**

Plaintiff cannot cover up his failure to plead any material misstatement by relying on a purported omission of material fact.  "Silence, absent a duty to disclose, is not misleading under Rule 10b-5," and Plaintiff does not cite any rule or statute that would require Defendants to speak.  *Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988); *see also, e.g.*, *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015) ("'[A]n omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts.'") (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)).  Plaintiff also never specifies what information Defendants may have omitted from any of their statements concerning the Preferred Stock.  An omission-based claim cannot proceed where Plaintiff cannot

15

identify what information should have been disclosed to make the statements made not misleading. *See Honig v. Bloomberg*, 2008 WL 8181103, at *5 (S.D.N.Y. Dec. 8, 2008) (granting motion to dismiss in part because plaintiff did "not allege any specific … omissions on the part of either of the [d]efendants"); *Whitley v. Comsat Corp.*, 2001 WL 1135946, at *7 (S.D.N.Y. Sept. 25, 2001) (granting motion to dismiss in part because plaintiff's complaint "fail[ed] to identify with particularity the allegedly fraudulent … omissions, and" did not allege facts showing why any such omission was misleading).

## II.   PLAINTIFF HAS NOT PLEADED A STRONG INFERENCE OF SCIENTER

Plaintiff's claims must also be dismissed because, in addition to not identifying an actionable misstatement or omission, he has not "state[d] with particularity facts giving rise to a ***strong inference*** that the defendant[s] acted with the required state of mind." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005)) (emphasis added). This required state of mind is "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). "The facts pled must either show that the defendants had [1] the motive and opportunity to commit fraud or [2] constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Wyche v. Adv. Drainage Sys., Inc.*, 2017 WL 971805, at *10 (S.D.N.Y. Mar. 10, 2017) (Failla, J.) (internal quotation marks omitted), *aff'd*, 710 F. App'x 471 (2d Cir. 2017). And because Plaintiff alleges only forward-looking misrepresentations, he must demonstrate "actual knowledge" of the falsity of those statements—recklessness is not enough. *Slayton v. Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010) (citing 15 U.S.C. § 78u-4(b)(2)). Plaintiff has not met this high standard.

16

A.    **Plaintiff's Allegations Cannot Support A Finding Of Motive As A Matter Of Law**

Plaintiff cannot rely on the first method of establishing scienter because the Complaint is entirely devoid of allegations of motive.  Indeed, Plaintiff does not use the word "motive" anywhere in his 45-page Complaint.  Nor do the facts alleged in the Complaint support a finding that Defendants had motive to commit securities fraud.  Plaintiff appears to allege that Defendants had a desire to avoid SEC reporting requirements because of an investigation into accounting that had prompted a restatement of financials from 2013 to 2017.  (Compl. ¶¶ 35, 41-43.)  In the alternative, Defendants supposedly made misrepresentations concerning the Preferred Stock "to allay concerns of those common stock investors who also owned preferred stock and the market about the future of the preferred stock, and to encourage preferred stockholders who also held common stock to vote in favor of the Merger."  (*Id.* ¶¶ 4, 53.)  Even taking these strained allegations as true, they cannot suffice to establish motive as a matter of law.

It is well established that "[m]otives that are common to most corporate officers … do not constitute 'motive' for purposes of [the scienter] inquiry."  *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009); *see also Wyche*, 2017 WL 971805, at *10 ("It is not enough for a plaintiff to show motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation.") (internal quotation marks and alterations omitted).  This is because allowing such common motives would "force the directors of virtually every company to defend securities fraud actions every time that company effected a merger or acquisition."  *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 337-39 (S.D.N.Y. 2000) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 623 (4th Cir. 1999)).  One of these generalized motives that is "insufficient to show fraudulent motive" is the desire to "prevent the public from learning

17

of … improper acts." *In re Cross Media Mkting. Corp. Sec. Litig.*, 314 F. Supp. 2d 256, 265 (S.D.N.Y. 2004). But of course, the SEC investigation into AmTrust's accounting practices was *already* public and nothing about listing or delisting the Preferred Stock would stop the SEC's investigation or prevent the SEC from publishing in the future any findings of wrongdoing. Either way, Plaintiff cannot show motive by alleging that Defendants generally wanted to avoid public knowledge of an SEC investigation.

Courts have also held that the "desire to complete a merger … is a generalized motive that can be ascribed to any for-profit company." *Tiberius Capital, LLC v. PetroSearch Energy Corp.*, 2011 WL 1334839, at *5 (S.D.N.Y. Mar. 31, 2011), *aff'd*, 485 F. App'x 490 (2d Cir. 2012); *see also, e.g.*, *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 1998 WL 283286, at *6 n.4 (S.D.N.Y. June 1, 1998) (rejecting "[d]esire to consummate [a] corporate transaction" as too general to show motive). The impermissibly general nature of this motive does not change because the Individual Defendants owned a majority of AmTrust's common stock, after investing hundreds of millions of dollars into the company. The go-private transaction "benefitted all shareholders, including the defendants," and "the desire to achieve the most lucrative acquisition proposal can be attributed to virtually every company seeking to be acquired." *Kalnit v. Eichler*, 264 F.3d 131, 141 (2d Cir. 2001). Furthermore, "controlling shareholders typically seek to maximize their equity control over a company. Such a generalized motive 'is not sufficiently concrete for purposes of inferring scienter.'" *Elliott Assocs., L.P. v. Hayes*, 141 F. Supp. 2d 344, 359 (S.D.N.Y. 2000) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996)). In sum, all of Plaintiff's allegations hinting at motive are too general to support such a finding as a matter of law, and are not pleaded with any of the stringent particularity required by both Rule 9(b) and the PSLRA.

18

#### B. Plaintiff Offers No Circumstantial Evidence Sufficient To Demonstrate "Conscious Misbehavior"

Plaintiff also has not pleaded circumstantial evidence sufficient to raise a strong inference of conscious misbehavior on the part of Defendants. As Plaintiff has not pleaded motive to commit fraud, "'the strength of the circumstantial allegations must be correspondingly greater.'" *Wyche*, 2017 WL 971805, at *11 (quoting *Kalnit*, 264 F.3d at 142). In addition, any circumstantial allegation of scienter must be much more than simply plausible. "The inference of scienter must be 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *In re Adv. Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015) (quoting *Tellabs*, 551 U.S. at 324). Plaintiff has not met these standards.

*First*, Plaintiff cannot rely on the amount of time that passed between the allegedly false representations and AmTrust announcing its decision to delist the Preferred Stock. (Compl. ¶ 74.) "[T]emporal proximity alone does *not* raise a circumstantial inference of fraud." *Fant v. Perelman*, 1999 WL 199078, at *13 (S.D.N.Y. Apr. 9, 1999). And more than eight months passed between AmTrust's last forward-looking statement (on May 4, 2018) that the Preferred Stock would remain listed and its announcement (on January 18, 2019) that it had chosen to delist the securities. (Compl. ¶¶ 57, 71.) Courts have already held that far shorter time gaps cannot give rise to the required strong inference of scienter. *See In re Supercom Inc. Sec. Litig.*, 2018 WL 4926442, at *32 (S.D.N.Y. Oct. 10, 2018) (holding that the 10-week period between iterating belief in particular financial outlook and promulgating revised outlook does not "give[] rise to a strong inference of scienter"); *Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233, 247 (S.D.N.Y. 2015) (holding that there was no inference of scienter raised from "defendants' positive statements in August of 2013 and their recording of a sizable charge against inventory in September of 2013"); *Fant*, 1999 WL 199078, at *13 (holding that "approximately five weeks"

19

elapsing "between the challenged statements and ultimate full disclosure" is not sufficient evidence of scienter).  Plaintiff's allegation about temporal proximity, even if Plaintiff had pleaded its relevance, is thus not circumstantial evidence that Defendants lied about their intention to maintain the listing of the Preferred Stock.

*Second*, Plaintiff alleges that "Defendants manipulated the record date for the vote on the Merger" and thus "reduce[d] the number of shares that might have voted against the Merger." (Compl. ¶ 93(a).)  This allegation has nothing to do with the Preferred Stock, as only holders of common stock could vote for or against the go-private transaction.  *See Davison v. Ventrus Biosciences, Inc.*, 2014 WL 1805242, at *11 (S.D.N.Y. May 5, 2014) (rejecting allegation that had "no obvious connection to Plaintiffs' fraud allegation that Defendants wilfully [sic] lied about past results and future prospects").  Plaintiff also admits that AmTrust accommodated the purported concerns of stockholders who purchased after the record date by raising the price to $14.75 per share.  (*Id.* ¶¶ 61-62.)  And AmTrust's selection of the record date fully complied with Delaware law, which allows companies to select a record date up to 60 days before the stockholder meeting.  *See* Del. Code tit. 8, § 213(a).[10]  Plaintiff's allegation is thus not only irrelevant, it is not at least as compelling as the opposing inference that AmTrust simply selected the earliest record date permitted by Delaware law.

*Third*, Plaintiff asserts that "[p]referred stockholders holding millions of shares of preferred stock also owned common stock that was being solicited … to vote in favor of the Merger." (Compl. ¶ 93(b).)  Plaintiff claims that Defendants stated the Preferred Stock would remain listed "to allay concerns of investors … [and] encourage preferred stockholders who also held common stock to vote their common shares in favor of the Merger." (*Id.*)  Plaintiff's

---

[10]  The stockholder meeting was originally scheduled for June 4, 2018—60 days after the record date. (Ex. 12 at 4.)  This meeting was then adjourned by stockholder vote.  (Compl. ¶ 60.)

20

assertion is entirely speculative and can be disregarded for this reason alone. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 813 (2d Cir. 1996) ("Plaintiffs do not, however, enjoy a license to base claims of fraud on speculation and conclusory allegations.") (internal quotation marks omitted). Plaintiff also does not allege that the votes of these stockholders were required to "satisfy the majority-of-the-minority condition" for the go-private transaction to proceed. (*Id.* ¶ 60.) In addition, Plaintiff ignores that the statements concerning the Preferred Stock in the proxy statements were specifically identified as forward-looking statements (*supra* at 6) and that the Individual Defendants made clear in January 2018 that "[i]n the future, the Issuer may take *any action* that is permitted by the terms of each series of preferred stock." (Compl. ¶ 66(c) (emphases omitted).) "[I]t is not enough to set out facts from which, if true, a reasonable person *could* infer that [D]efendant[s] acted with the required intent." *In re Adv. Battery Techs., Inc.*, 781 F.3d at 644 (citations and internal quotation marks omitted). As opposed to a scheme to defraud common stockholders, the far more plausible reason why Defendants made statements about the Preferred Stock is that investors simply had questions about whether it would remain outstanding after the transaction closed—questions that Defendants answered truthfully. (*See* Compl. ¶ 48.) The mere fact some unknown number of holders of the Preferred Stock may also have held common stock does not make Plaintiff's speculation at least as compelling as competing inferences.

*Finally*, Plaintiff asserts that AmTrust's reasons for choosing to delist the Preferred Stock were a "contrived excuse" because the "costs [of maintaining the listing] and burdens and new ownership structure were known or had to have been known" before that choice was made. (Compl. ¶ 4; *see also id.* ¶¶ 76-80.) But AmTrust never claimed that these costs and burdens were a surprise; rather, AmTrust explained that they "exceed[ed] the benefits given the small

21

number of record holders and low daily trading volume." (*Id.* ¶ 73 (emphasis omitted).) Plaintiff does not dispute that the daily trading volume of the Preferred Stock was low—a notable concession given that Plaintiff performed an "independent investigation … [that] included … a review and analysis of … data reflecting the pricing and trading volume of AmTrust preferred shares." (*Id.* ¶ 1.) Plaintiff tries to undermine AmTrust's invocation of the small number of record shareholders, but offers nothing but speculation that there must be "thousands of persons who purchased the billion dollars of preferred stock." (*Id.* ¶ 78.) Plaintiff also criticizes AmTrust's reliance on "changes to its longterm strategy following the completion of AmTrust's go-private transaction." (*Id.* ¶ 73, 76.) But once again, Plaintiff does not allege any facts that could rebut this statement, and AmTrust expressly warned its investors that its forward-looking statements could be changed by "the effect of the announcement of the merger on our business relationships, operating results and business generally." (Ex. 12 at 91.) For all of these reasons, Plaintiff's speculative inference of fraudulent intent is not at least as compelling as the competing inference that new facts—namely, decreased trading volume, a small number of stockholders, and changed strategy—prompted AmTrust to voluntarily delist the Preferred Stock.

## III.    PLAINTIFF HAS NOT STATED A 20(A) CLAIM

This Court should also dismiss Plaintiff's claim against the Individual Defendants under Section 20(a) of the Exchange Act. This claim requires Plaintiff to allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendants, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Comms., Inc. v. Shaar Fun, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). Plaintiff has not done so.

*First*, as explained above, Plaintiff has not adequately alleged an underlying violation of Section 10(b) and Rule 10b-5. Because Plaintiff has failed to plead a Section 10(b) or Rule 10b-5 claim against AmTrust, his Section 20(a) claims must be dismissed as well. *See, e.g.*, *Zagami*, 2016 WL 3199531, at \*16.

*Second*, Plaintiff has not adequately pleaded that any Individual Defendants "culpably participated" in securities fraud. The majority of courts in this District have held that the standard for pleading culpable participation is equivalent to the 10(b) standard for pleading conscious misbehavior or recklessness, and is analyzed in the same way. *See, e.g.*, *Spec. Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438-39 (S.D.N.Y. 2014) (holding that "culpable participation" must be pleaded through "particularized facts of the *controlling person's* conscious misbehavior and recklessness," and that only a "small number of district courts" hold that "culpable participation is a less demanding standard than scienter"). Because Plaintiff has not pleaded scienter as to any Individual Defendant for the 10(b) claims, the Court must correspondingly dismiss Plaintiff's 20(a) claims. *Levy v. Maggiore*, 48 F. Supp. 3d 428, 461 (E.D.N.Y. 2014) ("Here, the lack of factual allegations that precludes a finding that the [defendants] acted with the scienter necessary to plead a § 10(b) claim also requires dismissal of the § 20(a) claim.").

## IV.    PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO REPLEAD

This Court's dismissal of Plaintiff's claims should be with prejudice. This Court has already given Plaintiff an opportunity to amend (Dkt. 13, ¶ 3), and Plaintiff declined to do so. Plaintiff has also stated that his Complaint was the product of an "independent investigation" that included a wide range of information. (Compl. ¶ 1.) Given that Plaintiff has already conducted a thorough investigation and has already declined an opportunity to amend, this Court should exercise its discretion and deny Plaintiff an opportunity to replead. *See Porat v. Lincoln Towers*

23

*Community Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam) ("A counseled plaintiff is not necessarily entitled to a remand for repleading whenever he has indicated a desire to amend his complaint, notwithstanding the failure of plaintiff's counsel to make a showing that the complaint's defects can be cured.").

## CONCLUSION

Defendants therefore respectfully request that this Court dismiss the Complaint in its entirety, with prejudice.

Dated:   January 31, 2020
         New York, New York                   */s/ Kevin S. Reed*

Michael B. Carlinsky
Kevin S. Reed
Guyon H. Knight
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Ave., 22nd Fl.
New York, NY 10010
Tel.: (212) 849-7000
Fax: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
kevinreed@quinnemanuel.com
guyonknight@quinnemanuel.com

*Attorneys for Defendants*

24