UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAN MARTÍNEK,

                    Plaintiff,

v.

AMTRUST FINANCIAL SERVICES, INC.,
BARRY D. ZYSKIND, GEORGE KARFUNKEL,
and LEAH KARFUNKEL,

                    Defendants.

No. 19-cv-8030
(Failla, J.)

# REPLY IN FURTHER SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS

QUINN EMANUEL URQUHART &
    SULLIVAN, LLP

Michael B. Carlinsky
Kevin S. Reed
Guyon H. Knight
51 Madison Ave., 22nd Fl.
New York, NY 10010
(212) 849-7000

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

I.  PLAINTIFF STILL HAS NOT SHOWN ANY MISLEADING STATEMENTS .............1

    A.  Statements Of Defendants' "Expect[ations]" Are Protected And True...................1

        1.  Plaintiff Fails To Plead These Statements Were False When Made ...........1

        2.  The Statements Are Protected Forward-Looking Statements......................2

    B.  The Proxy Statements Accurately Explained The Effect Of The Merger, And Were Not An Assurance The Preferred Stock Would Be Listed Indefinitely....................................................................................................4

    C.  Plaintiff Concedes He Did Not Rely On Alleged Statements To Regulators..........5

    D.  The Preferred Stock Terms Allow Delisting, As Confirmed By *Matlick*................6

    E.  Plaintiff Mischaracterizes The Deutsche Bank Presentation ..................................7

II. PLAINTIFF STILL HAS NOT ADEQUATELY PLEADED SCIENTER ........................7

    A.  Plaintiff's Motive Theories—Both Old And New—Lack Merit.............................7

    B.  Plaintiff Doubles Down On Temporal Proximity, Which Courts Reject ..............10

CONCLUSION.......................................................................................................................11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abuhamdan v. Blyth, Inc.*,
  9 F. Supp. 3d 175 (D. Conn. 2014) ........................................................................ 7

*In re AmTrust Fin. Servs., Inc. Stockholder Litig.*,
  2020 WL 914563 (Del. Ch. Feb. 26, 2020) ............................................................ 9

*Matana v. Merkin*,
  957 F. Supp. 2d 473 (S.D.N.Y. 2013) .................................................................... 7

*Plotkin v. IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005) ................................................................................ 10

*Anschutz Corp. v. Merrill Lynch & Co.*,
  690 F.3d 98 (2d Cir. 2012) ..................................................................................... 1

*Credit Suisse First Bos. Corp. v. ARM Fin. Grp., Inc.*,
  2001 WL 300733 (S.D.N.Y. Mar. 28, 2001) .......................................................... 3

*Edwards v. Sequoia Fund, Inc.*,
  2018 WL 6039815 (S.D.N.Y. Oct. 18, 2018), *aff'd*,
  938 F.3d 8 (2d Cir. 2019) .................................................................................... 6-7

*Elliott Assocs., L.P. v. Hayes*,
  141 F. Supp. 2d 344 (S.D.N.Y. 2000) .................................................................... 8

*Fant v. Perelman*,
  1999 WL 199078 (S.D.N.Y. Apr. 9, 1999) ........................................................... 10

*In re Gen. Elec. Co. Sec. Litig.*,
  857 F. Supp. 2d 367 (S.D.N.Y. 2012) .................................................................... 5

*In re GLG Life Tech Corp. Sec. Litig.*,
  2014 WL 464762 (S.D.N.Y. Feb. 3, 2014) ............................................................. 5

*Halperin v. eBanker USA.com, Inc.*,
  295 F.3d 352 (2d Cir. 2002) ................................................................................... 3

*Johnson v. Sequans Commc'ns S.A.*,
  2013 WL 214297 (S.D.N.Y. Jan. 17, 2013) ........................................................... 3

*Kahn v. M & F Worldwide Corp.*,
  88 A.3d 635 (Del. 2014) ......................................................................................... 9

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ............................................................................ 9

*Little Gem Life Scis. LLC v. Orphan Med., Inc.*,
  2007 WL 541677 (D. Minn. Feb. 16, 2007) ............................................. 3

*In re Loral Space & Commc'ns Ltd. Sec. Litig.*,
  2004 WL 376442 (S.D.N.Y. Feb. 27, 2004)............................................. 5

*Matlick v. AmTrust Fin. Servs., Inc.*,
  2020 WL 1294669 (Sup. Ct. N.Y. Cnty. Mar. 16, 2020) ...................... 6, 7

*Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*,
  523 F.3d 75 (1st Cir. 2008)............................................................. 10

*Moon Joo Yu v. Premiere Power LLC*,
  2015 WL 4629495 (S.D.N.Y. Aug. 4, 2015)............................................ 9

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
  779 F.3d 1036 (9th Cir. 2015) ...................................................... 6

*In re Primedia, Inc. S'holders Litig.*,
  67 A.3d 455 (Del. Ch. 2013) ......................................................... 10

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ......................................................... 3

*Rubinstein v. Gonzalez*,
  241 F. Supp. 3d 841 (N.D. Ill. 2017) ............................................. 9

*Stichting Pensioenfonds ABP v. Credit Suisse Grp. AG*,
  966 N.Y.S.2d 349 (Sup. Ct. N.Y. Cnty. 2012) ............................... 6-7

## I.    PLAINTIFF STILL HAS NOT SHOWN ANY MISLEADING STATEMENTS

As AmTrust showed in its opening brief, the Complaint alleged five categories of purported misstatements, all of which were true when made, and many of which were protected and forward-looking.  Plaintiff accepts AmTrust's framework but reorders the categories, presumably reflecting his view of their relative strength.  Plaintiff has not saved his claims by reordering them, and is unable to allege that any of AmTrust's statements were misleading or actionable.

### A.    Statements Of Defendants' "Expect[ations]" Are Protected And True

#### 1.    Plaintiff Fails To Plead These Statements Were False When Made

Plaintiff claims that Defendants' stated "expectations" were lies because Defendants allegedly never intended to maintain the listing of the Preferred Stock once the transaction closed. In order to plead falsity on that basis, Plaintiff must plead with particularity facts that support a "strong inference that the defendant[s] acted" with this "state of mind." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012) (citation omitted).  Plaintiff does not meet this standard.

With no direct evidence of Defendants' state of mind, Plaintiff asks this Court to infer that AmTrust never expected to maintain the listings because the reasons cited in January 2019 to support de-listing existed at the time Defendants disclosed their expectations that the listing would continue after the go-private transaction.  As Plaintiff puts it, "because the circumstances of the listing did not change from before the Buyout to after the Buyout, the only logical conclusion is that Defendants never expected to maintain the listing . . . ."  (Opp. at 13.)  Plaintiff cites no authority to support that proposition, likely because it is wrong.  Even if the facts supporting the delisting were knowable when Defendants made these statements, that would not create a strong inference that Defendants (i) had those facts in mind in 2018, (ii) concluded they justified delisting the Preferred Stock, (iii) decided to delist, and (iv) falsely stated that they did not expect to delist.

The far more logical inference is that, during the eight-month period between May 4, 2018 (the latest "expectations" statement) and the announcement of the delisting in January 2019, Defendants revised their business strategy and changed their mind about the desirability of continuing to list the Preferred Stock.  Indeed, the Individual Defendants disclosed this might happen:  after noting their "current intention" to continue listing the Preferred Stock, they stated that "[i]n the future, [AmTrust] may take any action that is permitted by the terms of each series of [P]referred [S]tock."  (Compl. ¶ 66(c).)  AmTrust also advised investors when it announced the go-private transaction that the new owners would reevaluate the Company's strategies with an eye on the long term.  (Ex. 7 at 2 ("As a private enterprise, we will be able to focus on long-term decisions, without the emphasis on short-term results.").)  Consistent with this, when the Company announced the delisting, it explained that "this decision was made in light of the Company's new ownership structure and the resulting changes to its long-term strategy."  (Compl. ¶ 73.)

2.      The Statements Are Protected Forward-Looking Statements

The alleged misstatements are not only true, but demonstrably forward-looking—they deal expressly with "expectations"—and the relevant documents are laden with cautionary language. Rather than address these issues, Plaintiff asserts that the PSLRA does not apply to statements made "in connection with a going private transaction."  (Opp. at 11.)  But Plaintiff's claims are not based on statements that concern the "going private" part of the transaction (*e.g.*, projected financials for the newly private entity), but solely on statements concerning the shares *that remained public*.  Plaintiff offers no authority suggesting that the PSLRA safe harbor exception was intended to apply to representations about shares that were publicly traded before and after the transaction, nor any reason that an investor should be able to consider forward-looking statements about publicly traded shares that are accompanied by cautionary language to be material in one context but not the other.

Even if Plaintiff were correct, it is of no moment because the same result obtains under the judicially created "counterpart" to the PSLRA's safe harbor, the "bespeaks caution" doctrine. *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004).[1]  "The bespeaks caution doctrine covers forward-looking statements regarding intention and expectation," *Johnson v. Sequans Commc'ns S.A.*, 2013 WL 214297, at *15 (S.D.N.Y. Jan. 17, 2013), where "it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering," *Rombach*, 355 F.3d at 173.  For example, in *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352 (2d Cir. 2002), the court found an offeror's statement that it "intend[ed] to endeavor to file registration statements with the SEC to register the [securities] for resale . . . as soon as practicable . . . ," *id.* at 355, was protected by the bespeaks caution doctrine, as the offering memoranda had sufficient cautionary language that the securities might not be registered, and a "reasonable investor therefore is put on notice that, at the very least, registration is not guaranteed and is in fact contingent on certain business developments," *id.* at 360.

Plaintiff does not dispute the adequacy of the cautionary language AmTrust included with its statements of "expectations"—nor could he.  (Opp. at 12-13.)  The Individual Defendants expressly stated that, notwithstanding their "current intention" that the Preferred Stock would continue to be listed after the merger transaction, "[i]n the future, [AmTrust] may take any action that is permitted by the terms of each series of [P]referred [S]tock."  (Compl. ¶ 66(c); *see also id.* ¶ 48 (alleging that this statement was made in response to public questions about the Preferred Stock).)  Those terms permit AmTrust to voluntarily delist the stock, as recently confirmed by a

---

[1]   The PSLRA safe harbor was "not meant to displace[] the judicial bespeaks caution doctrine," *Credit Suisse First Bos. Corp. v. ARM Fin. Grp., Inc.*, 2001 WL 300733, at *5 (S.D.N.Y. Mar. 28, 2001), which still applies even where the statute's safe harbor cannot.  *See Little Gem Life Scis. LLC v. Orphan Med., Inc.*, 2007 WL 541677, at *7 (D. Minn. Feb. 16, 2007) (holding that bespeaks caution doctrine could apply to a go-private transaction despite PSLRA exception).

New York court.  *See infra*, Section I.D.  Similarly, each time AmTrust spoke of its expectation that the Preferred Stock would remain listed after the transaction, it cautioned investors that "[w]hen we use words such as . . . 'expect' . . . we do so to identify forward-looking statements," which "include the plans and objectives of management for future operations."  (Ex. 7 at 3; Ex. 8 at 5; Ex. 14 at 5.)  AmTrust also warned that "[a]ctual results may differ materially from those expressed or implied in these statements." (*Id.*)  Accordingly, as a matter of law, the "expectation" statements were appropriately cautioned forward-looking statements.

**B.    The Proxy Statements Accurately Explained The Effect Of The Merger, And Were Not An Assurance The Preferred Stock Would Be Listed Indefinitely**

Plaintiff's allegations of falsity as to statements that the Preferred Stock "will" be listed rely upon ripping those statements from their context and upon the facially wrong assertion that such statements are an "unqualified assurance" that the listing would continue.  (Opp. at 14.)  In context, the statement that "each outstanding share of preferred stock of the Company will remain outstanding and will continue to be listed on the New York Stock Exchange following the merger" was a response to the question, "What effects will *the merger* have on AmTrust Financial?".  (Ex. 9 at 27 (emphasis added); Ex. 12 at 26-27.)  The question, and thus the answer, address what would happen to AmTrust if the proposed transaction were approved.  The answer truthfully stated that approval would have no effect on the Preferred Stock.  Contrary to Plaintiff's claim, the statement is not a representation about what Defendants might do in regards to Preferred Stock after the transaction—much less a promise to continue listing it if that did not make sense in light of changes in, *e.g.*, the Company's condition or new ownership structure.

Even if these statements could be construed as discussing Defendants' plans for the Preferred Stock, they cannot be "*unqualified* assurances" because they are expressly *qualified* by cautionary language.  (Opp. at 14 (emphasis added).)  Each proxy statement specifically noted that

4

it contained forward-looking statements in its Questions and Answers section that "can be identified by the fact that they do not relate strictly to historical or current facts" and "contain[] the word[] . . . 'will' . . . in conjunction with a discussion of future . . . events . . . ."  (Ex. 9 at 91; Ex. 12 at 91.)  This description perfectly fits the statements in the proxies' Question and Answer section that the Preferred Stock "will continue to be listed . . . following the merger."[2]  Moreover, the proxy statements had to be read in light of Defendants' prior caution that, notwithstanding their "current intention" that the Preferred Stock would continue to be listed after the merger, "[i]n the future, [AmTrust] may take any action that is permitted by the terms of each series of [P]referred [S]tock."  (Compl. ¶ 66(c).)  Plaintiff's *ipse dixit* assertion that this caution was abandoned because it was not expressly reiterated in the proxies is incorrect.  *See In re GLG Life Tech Corp. Sec. Litig.*, 2014 WL 464762, at *8 (S.D.N.Y. Feb. 3, 2014) (holding statements concerning future relationship with counterparty not misleading given others that projections "did not assume additional purchases"); *see also In re Loral Space & Commc'ns Ltd. Sec. Litig.*, 2004 WL 376442, at *10 (S.D.N.Y. Feb. 27, 2004) (holding earlier "warnings and disclosures" "necessarily tempered the defendants' optimistic projections of future [] subscribers").

### C.    Plaintiff Concedes He Did Not Rely On Alleged Statements To Regulators

AmTrust established that Plaintiff was not even aware of AmTrust's alleged statements to insurance regulators until after AmTrust announced that it would voluntarily delist the Preferred Stock.  (Mem. at 15.)  Plaintiff *does not dispute* this fact, and his concession means that these alleged statements cannot form the basis of Plaintiff's claims.  (*Id.*)  While Plaintiff claims that

---

[2]    Plaintiff misconstrues *In re General Electric Co. Securities Litigation*, 857 F. Supp. 2d 367 (S.D.N.Y. 2012) (cited by Opp. at 14-15).  That court agreed that a statement that shareholders could "count on a great dividend, $1.24 board approved at the board meeting last Friday" was a "misrepresentation[] of present facts" that could amount to a guarantee.  *Id.* at 387-88.  By contrast, AmTrust's forward-looking statements concerning the Preferred Stock were not made simultaneously with any representations on current or past actions by the Company's board.

AmTrust's consistent statements were evidence that they were misleading (Opp. at 16-17), Plaintiff overlooks the much simpler and more compelling explanation: AmTrust's statements were consistent because they were true when made. Again, the fact that AmTrust reached a different decision months later, after the go-private transaction closed, and with a new ownership structure, does not show anything other than that circumstances and strategies can change.

### D.        The Preferred Stock Terms Allow Delisting, As Confirmed By *Matlick*

Most of the representations Plaintiff claims were misleading were statements that AmTrust "contemplates" that the Preferred Stock "will remain outstanding in accordance with their terms." (Mem. at 9-11.) These statements are true because the "terms" of the Preferred Stock do not include any promise that the securities would be listed or remain listed. (*Id.*) A New York judge recently confirmed that the documents containing the terms—the Certificates of Designation and Deposit Agreements—did not make any such promise. *See Matlick v. AmTrust Fin. Servs., Inc.*, 2020 WL 1294669, at *9 (Sup. Ct. N.Y. Cnty. Mar. 16, 2020).

Plaintiff ignores the relevant contractual documents and relies entirely on statements made in the prospectus supplements and underwriting agreements. (Opp. at 17-19.) These arguments do not salvage Plaintiff's claims. *First*, neither the prospectus supplements nor the underwriting agreements are relevant because, as the prospectus supplements made clear, the terms of the Preferred Stock were contained *only* in the Certificate of Designations and Deposit Agreements. (Mem. at 4 n.5, 10.) The prospectus supplements (and anything incorporated into them) do not create separate contractual relationships because "[a] prospectus, or a prospectus supplement, is indeed not a contract."[3] *Stichting Pensioenfonds ABP v. Credit Suisse Grp. AG*, 966 N.Y.S.2d 349

---

[3] Plaintiff's cases are not to the contrary. In *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036 (9th Cir. 2015), the investment objectives listed in the prospectus had previously been approved by the shareholders, who were the plaintiffs in the action. *See id.* at 1051-53; *see also Edwards v. Sequoia Fund, Inc.*, 2018 WL 6039815, at *3-5 (S.D.N.Y. Oct. 18,

(Sup. Ct. N.Y. Cnty. 2012). *Second*, even if the prospectus supplements did set forth the terms of the Preferred Stock it would not change the analysis because (as the *Matlick* court recently held) "[t]he prospectuses and prospectus supplements . . . contain no promise to continue listing the securities." *Matlick*, 2020 WL 1294669, at *10; Mem. at 9-10.

### E.      Plaintiff Mischaracterizes The Deutsche Bank Presentation

The Deutsche Bank presentation contains a single line indicating the proposed transaction "contemplates" that the Preferred Stock "will remain outstanding in accordance with their terms." (Mem. at 11.) This language is not actionable for the reasons discussed above, *supra* Section I.D, and because, *right next to that statement*, the same document indicates that various aspects of this concept are unresolved. *See Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 192 (D. Conn. 2014) ("[T]he phrase 'growth at ViSalus' is too vague to induce reasonable reliance by an investor."). Plaintiff's only response is to misconstrue the slide, asserting that Deutsche Bank's "Comment[]/area[] for clarification" (Ex. 11 at 4)—*i.e.* the list of unresolved issues with this proposition—was somehow an affirmative "statement" that the terms of the Preferred Stock included listing the securities. (Opp. at 19.) This Court is not required to credit an interpretation that is contradicted by documentary evidence. (Mem. at 11.)

## II.      PLAINTIFF STILL HAS NOT ADEQUATELY PLEADED SCIENTER

### A.      Plaintiff's Motive Theories—Both Old And New—Lack Merit

In his opposition, Plaintiff attempts to spin two separate motive theories. First, that Defendants were motivated to conclude the go-private transaction to squeeze out minority stockholders when AmTrust common stock was undervalued. Second, that Defendants were

---

2018) (distinguishing *Northstar*), *aff'd*, 938 F.3d 8 (2d Cir. 2019). And in *Matana v. Merkin*, 957 F. Supp. 2d 473 (S.D.N.Y. 2013), the contracts at issue incorporated the prospectus by reference. *See id.* at 495. Here, the Prospectus Supplements expressly disavow that anything other than the governing documents contain the relevant terms. (Mem. at 4 n.5, 10.)

motivated to take the Company private to extinguish derivative suits against them.

Each of these theories has specific flaws, but they also suffer from a common fatal flaw: Both assume that Defendants believed they needed the Preferred Stock holders to vote their common shares for the merger to obtain the required majority of the minority of the common shares, such that Defendants would have been motivated to lie to them to secure approval. But Plaintiff fails to allege that the Preferred Stock holders held a material amount of common stock or that Defendants believed that.[4] Plaintiff's only answer to this—that Defendants' delay of the vote showed they understood "every bit of stockholder support mattered" (Opp. at 23)—misses the mark. Not only is it pure speculation, but it is illogical, as all of Defendants' allegedly fraudulent statements concerning expectations and its statements in the proxies came *before* it was apparent that shareholder support for the transaction was lacking. (*See* Compl. ¶ 66(a)-(k) (listing statements); *id.* ¶¶ 59-60 (alleging that lack of shareholder support became clear after May 25, 2018 ISS report).) Moreover, Plaintiff does not, presumably because he cannot, allege that Preferred Stock holders raised any concerns about the future listing of their shares, such as might have caused Defendants to believe it necessary to lie about that in order to secure their votes. The only investor concerns described in the Complaint related to the price offered to common stockholders, which Defendants addressed by raising the price 9.3 percent. (*Id.* ¶ 61.)

Even if Plaintiff could overcome this problem, each of his theories has at least one additional flaw. As pointed out in Defendants' opening memorandum, the desire to complete a transaction is not a sufficiently particularized allegation of motive to plead scienter.[5] (Mem. at

---

[4]  Nor can that be assumed. The Preferred Stock was targeted to investors seeking fixed income and a coupon, while the common stock was appropriate for growth investors. There is no basis to assume that holders of the Preferred Stock would hold a large amount of the common stock.

[5]  Plaintiff argues (Opp. at 22) this case is not like *Elliott Associates, L.P. v. Hayes*, 141 F. Supp. 2d 344 (S.D.N.Y. 2000), *aff'd*, 26 F. App'x 83 (2d Cir. 2002), where the defendants "sought to

8

18.)  Plaintiff claims that Defendants here had a unique motive because they wanted to complete the transaction at a discount price.  However, Plaintiff has no explanation for why a majority of the minority shareholders would have approved a transaction that did not give them fair value for their shares.  Indeed, the Complaint acknowledges that both noted activist investor Carl Icahn and the watchdog Institutional Investor Services deemed the final price fair.  (Compl. ¶¶ 62-63.)

Plaintiff's second theory is that the Individual Defendants had a personal motive to squelch two derivative actions against some directors for entirely unrelated transactions.  (Opp. at 21.) Plaintiff relies on a recent decision by the Delaware Court of Chancery that those derivative actions prevented Defendants from establishing the independence necessary to invoke the business judgment rule against claims alleging that they breached their fiduciary duties in connection with approving the merger.  *See In re AmTrust Fin. Servs., Inc. Stockholder Litig.*, 2020 WL 914563, at *10-12 (Del. Ch. Feb. 26, 2020).  But unlike in the business judgment rule context—where the burden is on *defendants* to show that this lenient rule applies, *see Kahn v. M & F Worldwide Corp.*, 88 A.3d 635, 642 (Del. 2014); *In re AmTrust*, 2020 WL 914563, at *12 n.116—here the burden is on *Plaintiff* to meet the heightened pleading standard for a fraud claim under the PSLRA and Rule 9(b).  Even if allegations of potential individual liability could defeat the business judgment rule, "the avoidance of personal liability motive is too speculative and conclusory to support scienter." *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001).[6]  If such general allegations could show

---

retain their equity control over [the company] while raising much needed capital." *Id.* at 359.  But that is exactly what Plaintiff alleges happened here:  the Individual Defendants sought to retain their control over AmTrust by taking it private, and tried to do so at an optimal price, thereby retaining as much capital as possible to devote to future operations of the Company.

[6]   By contrast, the defendant in *Moon Joo Yu v. Premiere Power LLC*, 2015 WL 4629495 (S.D.N.Y. Aug. 4, 2015) (cited by Opp. at 20), had an individual motive to raise money to personally pay a settlement in a chain of schemes that resembled a Ponzi scheme. *See id.* at *9. The court in *Rubinstein v. Gonzalez*, 241 F. Supp. 3d 841 (N.D. Ill. 2017) (cited by Opp. at 20), did *not* find the plaintiff established motive, but only that he alleged recklessness. *See id.* at 856.

motive, it would incentivize plaintiffs' lawyers to file derivative actions followed up by a securities fraud claim, with the former serving as motive in the latter.[7]

### B.    Plaintiff Doubles Down On Temporal Proximity, Which Courts Reject

Plaintiff fails to rebut AmTrust's demonstration that the Complaint lacks circumstantial evidence of conscious misbehavior.  In fact, Plaintiff continues to focus on temporal proximity (Opp. at 23-24), while ignoring that more than eight months passed between AmTrust's proxies (which contained the statements Plaintiff focuses on above all others) and AmTrust's decision to delist the Preferred Stock.  Plaintiff also ignores the law confirming that "temporal proximity alone does *not* raise a circumstantial inference of fraud."  *Fant v. Perelman*, 1999 WL 199078, at *13 (S.D.N.Y. Apr. 9, 1999).   Instead, Plaintiff relies on out-of-circuit cases that do not fit the allegations here.  In *Mississippi Public Employees' Retirement System v. Boston Scientific Corp.*, 523 F.3d 75 (1st Cir. 2008) (cited by Opp. at 24), the court considered temporal proximity as just *one week* passed between allegedly misleading statements and the revelation of contradictory facts. *See id.* at 91.  And in *Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005) (cited by Opp. at 24), the court did not examine temporal proximity in the context of scienter, but in the context of analyzing whether the statements at issue were misleading.  *See id.* at 698.  Plaintiff also tries to tack on unrelated allegations of supposed improprieties with private placements of common stock and the setting of the record date of the shareholder meeting.  (Opp. at 23-25.)  But Plaintiff still does not explain the connection between these unrelated events and the Preferred Stock at issue. Such scattered allegations do not establish a strong inference of scienter.

---

[7]    Plaintiff's new theory also fails as a matter of fact, as the derivative claims supposedly extinguished have been repackaged as claims asserting that the directors did not obtain fair value of the Company's litigation assets, pursuant to *In re Primedia, Inc. Shareholders Litigation*, 67 A.3d 455 (Del. Ch. 2013).  *See* Am. Verified Consolidated Class Action Compl., *In re AmTrust Fin. Servs., Inc. Stockholder Litig.*, 2019 WL 2184931, ¶¶ 388, 449-54 (Del. Ch. May 8, 2019).

## CONCLUSION

Defendants request that the Complaint be dismissed in full and with prejudice.

Dated:   April 3, 2020
       New York, New York

*/s/ Kevin S. Reed*

Michael B. Carlinsky
Kevin S. Reed
Guyon H. Knight
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Ave., 22nd Fl.
New York, NY 10010
Tel.: (212) 849-7000
Fax: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
kevinreed@quinnemanuel.com
guyonknight@quinnemanuel.com

*Attorneys for Defendants*

11