UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAN MARTÍNEK,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>AMTRUST FINANCIAL SERVICES, INC.,<br>BARRY D. ZYSKIND, GEORGE KARFUNKEL,<br>and LEAH KARFUNKEL,<br><br>　　　　　　　　Defendants. | No. 19-cv-8030<br>(Failla, J.) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S SPOLIATION MOTION**

QUINN EMANUEL URQUHART &
　SULLIVAN, LLP

Michael B. Carlinsky
Kevin S. Reed
51 Madison Ave., 22nd Fl.
New York, NY 10010
(212) 849-7000

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION.................................................................................................................. 1

ARGUMENT........................................................................................................................ 3

I.     PLAINTIFF HAS NOT SHOWN THAT MS. COOPERBERG HAD A DUTY
       TO PRESERVE HER NOTEBOOKS .............................................................. 3

II.    NO PRESERVATION OBLIGATION AROSE BEFORE 2019 ................................... 6

III.   PLAINTIFF HAS NOT SHOWN THAT MS. COOPERBERG'S NOTEBOOKS
       WERE RELEVANT TO HIS CLAIMS.......................................................... 9

IV.   NO ADVERSE INFERENCE IS APPROPRIATE ....................................................... 12

CONCLUSION.................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ali v. Dainese USA, Inc.*,
   2021 WL 5042850 (S.D.N.Y. Oct 29, 2021) .................................................................. 9, 13

*De Espana v. Am. Bureau of Shipping*,
   No. 03 CIV.3573(LTS)RLE, 2007 WL 1686327, at *8 (S.D.N.Y. June 6, 2007),
   *objections overruled sub nom. Reino de Espana v. Am. Bureau of Shipping, Inc.*, No.
   03 CIV.3573(LTS)(RLE, 2008 WL 3851957 (S.D.N.Y. Aug. 18, 2008) .............................. 14

*In re: Gen. Motors LLC Ignition Switch Litig.*,
   No. 14-MD-2543(JMF), 2015 WL 9480315 (S.D.N.Y. Dec. 29, 2015) ................................. 9

*Kronisch v. United States*,
   150 F.3d 112 (2d Cir. 1998) ....................................................................................3, 9, 15

*R.F.M.A.S., Inc. v. So*,
   271 F.R.D. 13 (S.D.N.Y. 2010) ...............................................................................3, 7, 13

*Reino de Espana v. Am. Bureau of Shipping, Inc.*,
   No. 03 CIV.3573(LTS)(RLE), 2008 WL 3851957 (S.D.N.Y. Aug. 18, 2008)....................... 14

*Rhoda v. Rhoda*,
   2017 WL 4712419 (S.D.N.Y. Oct. 3, 2017) ...................................................................... 14

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ................................................................................... 4, 7

Defendant AmTrust Financial Services, Inc. ("AmTrust") respectfully submits this memorandum in opposition to Plaintiff's motion for an adverse inference against AmTrust based on alleged spoliation of evidence.

## INTRODUCTION

Plaintiff brought this securities fraud case on the theory that Defendants misled investors by hiding a secret plan to delist AmTrust's preferred securities as part of an effort to secure approval of a buyout transaction to take the company private. With fact discovery now concluded, Plaintiff has not adduced any testimonial or documentary evidence to support that theory. Instead, the evidence has revealed that all of Defendants' alleged misstatements were true when made; there was no secret plan to delist AmTrust's preferred securities; and there was no fraud.

Faced with that harsh reality, Plaintiff has thrown a Hail Mary in the form of this spoliation motion, asking the Court to declare that handwritten notebooks discarded by AmTrust employee Chaya Cooperberg would have revealed the secret delisting plan Plaintiff was unable to find in discovery and that, in fact, did not exist. There are myriad reasons the Court should reject this request.

*First*, a court may not make a spoliation finding unless the allegedly spoliating party violated a duty to preserve the evidence in question, and Plaintiff here cannot make that showing. The duty to preserve extends only to potentially relevant evidence, and Plaintiff – who made no effort whatsoever to investigate the contents of Ms. Cooperberg's discarded notes – has no basis to argue that the notes were relevant to this or any other litigation.

*Second*, and relatedly, parties are only required to preserve evidence they know to be relevant to actual or potential litigation, but Plaintiff here is unable to show that AmTrust or Ms. Cooperberg knew or should have known that any of her documents were relevant to any

1

litigation arising prior to 2019. Though Plaintiff identifies a number of cases in which AmTrust was involved in and after 2016, he fails to demonstrate that Ms. Cooperberg had any involvement in or connection to those cases and, accordingly, the existence of those cases cannot be a basis to conclude that Ms. Cooperberg was obligated to preserve her notebooks or any other documents. If Ms. Cooperberg ever came under an obligation to preserve documents (and Plaintiff has not shown that she did), it was not before early 2019, when AmTrust decided to delist its preferred securities.

*Third,* in addition to establishing the violation of a duty to preserve, a party seeking spoliation sanctions must also show that the missing evidence would have supported its claims. Plaintiff, not having developed any evidence regarding the contents of Ms. Cooperberg's notebooks, is unable to meet that burden. He attempts to do so by portraying an email Ms. Cooperberg wrote to herself as a smoking gun admission that the secret delisting plan existed and then speculating that the plan would also likely have been referenced in her handwritten notes. This falls flat, however, when one realizes that the purported smoking gun, when properly read, is more like a wet noodle. It does not discuss any plan at all but only states the unremarkable and undisputed fact that the Individual Defendants' initial disclosure of their proposal to acquire AmTrust's common stock did not disclose anything about whether the AmTrust's preferred stock would remain listed.

*Fourth*, even if Plaintiff could show that Ms. Cooperberg's longstanding practice of discarding her notebooks when she filled them constituted spoliation, he still would not be entitled to an adverse inference. None of the factors courts weigh in deciding whether to impose that sanction supports it here:

- AmTrust did not engage in severe or widespread discovery noncompliance; it has produced voluminous emails, text messages and other documents from all agreed

2

upon custodians, and the only thing Plaintiff complains was not produced was Ms. Cooperberg's notebooks;

- There was no highly culpable or venal behavior.  There is no evidence that Ms. Cooperberg sought to deprive Plaintiff of evidence by following her longstanding practice of discarding notebooks as she filled them, and there is no evidence that AmTrust was aware that Ms. Cooperberg followed this practice; and

- Plaintiff has made no showing that he has been materially prejudiced by not having access to Ms. Cooperberg's notebooks.  He made no effort to investigate what was in them and so cannot claim to have been deprived of evidence that would have helped him.  Moreover, because the only notes Ms. Cooperberg could possibly have been obligated to preserve would have taken during a time when Ms. Cooperberg was not involved in the events relating to this case, there is no likelihood her notes would have been helpful to Plaintiff.

What AmTrust told the Court when Plaintiff first proposed this motion remains true now that he has brought it:  Plaintiff's request for a spoliation finding and an adverse inference instruction is based on nothing more than stacked speculation. Plaintiff speculates that Mrs. Cooperberg's notebooks contained notes about the matters at issue in this case, and he then further speculates that such hypothetical notes would have supported his claims. There are no facts to support any of it.  Having come to the end of fact discovery without adducing evidence sufficient to prove his claims, Plaintiff has filed this application as a tactical maneuver in the hope that the Court will allow a jury to assume what he has been unable to prove. Respectfully, the Court should refuse that request.

## **ARGUMENT**

### I.    **PLAINTIFF HAS NOT SHOWN THAT MS. COOPERBERG HAD A DUTY TO PRESERVE HER NOTEBOOKS**

Plaintiff correctly acknowledges that before a court can make a spoliation finding, it "must first determine that the allegedly spoliating party had a duty to preserve the evidence at issue." Mem. at 5 (quoting *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 23 (S.D.N.Y. 2010)); *see also Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) ("In order for an adverse inference

3

to arise from the destruction of evidence, the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed."). Plaintiff also correctly concedes that the duty to preserve extends only to what a party knows, or reasonably should know, is relevant to litigation or likely to be sought in discovery. Mem. at 5-6 (citing cases). What Plaintiff fails to do is demonstrate that Ms. Cooperberg had a duty to preserve her notebooks under these undisputed standards. This is dispositive, as Plaintiff has the burden of proof on this issue. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

Plaintiff cannot satisfy his burden on this point because the record contains no evidence about what the notebooks contained. The entirety of the record with respect to the contents of the notebooks shows only that Ms. Cooperberg used notebooks in the course of her work and discarded them as they filled up. *See* Ex. A to Decl. of Adam Blander, Cooperberg Dep. Tr. 18:2-18:4 (Dkt. 75-1) ("Cooperberg Dep. Tr."). There is no evidence concerning, *inter alia*, Ms. Cooperberg's habits with respect to when and about what she would take notes, whether her habits in respect of using her notebooks were the same as her habits in respect of sending emails to herself, or whether the notes in her notebooks were substantive or merely to-do lists and other ephemera. In the absence of such evidence, Plaintiff has no basis to claim, much less establish, that Ms. Cooperberg knew or should have known the notebooks were relevant to, or likely to be sought through discovery in, any litigation.

Plaintiff's memorandum contains almost six full pages of text under the subheading "Ms. Cooperberg Had a Duty to Preserve Her Professional Notebooks," but none of it is devoted to marshalling evidence that the notebooks were relevant to, or likely to be sought through discovery, in any litigation (again, because there is no relevance). Plaintiff instead tries to whistle past this issue by blithely asserting that "[i]t cannot be reasonably disputed that the

4

notebooks used by a senior AmTrust officer to take notes of business matters and investor communications are the types of documents that are required to be preserved." Mem. at 5.  That, however, is just an impermissible effort to assume the existence of the necessary evidence; there is no actual proof that Ms. Cooperberg's notebooks contained substantive notes about business matters or investor communications.  Indeed, while Plaintiff devotes two and a half pages quoting investor communications sent to Ms. Cooperberg, he cites not one shred of evidence that Ms. Cooperberg took notes related to those communications or any other investor communication.  And, to be sure, he does not cite Ms. Cooperberg's repeated testimony that her practice was simply to forward investor communications directly to the AmTrust executives she thought should be aware of them.  Cooperberg Dep. Tr. 91:3-8, 141:13-20; 179:17-180:3.  He also does not cite Ms. Cooperberg's testimony that she abides by document retention notices (*id*. at 177:25-178:3), which undermines any claim that her notebooks fell within any preservation obligation Ms. Cooperberg ever had.

It also bears noting (pun intended) that the absence of an evidentiary record regarding the contents of Ms. Cooperberg's notebooks is a consequence of Plaintiff's counsel's repeated failure to develop the record.  Ms. Cooperberg's testimony regarding her notebooks occurred approximately 20 minutes into her October 7, 2021 deposition.  After being told at that point that Ms. Cooperberg uses and discards notebooks, counsel made no inquiry into Ms. Cooperberg's notetaking habits, nor did he otherwise delve into the issue of what might be in the notebooks or whether they were likely to contain any notes relevant to this (or any other) litigation.  *Id*. at 17:5-18:21.  Even after counsel asked Ms. Cooperberg whether "AmTrust has an internal policy forbidding officers from discarding hard-copy documents that are related to the business," and Ms. Cooperberg gave an answer indicating that she did not consider her notebooks to fall within

such a policy ("My notebooks are just my notes"), counsel elected not to follow up. *Id.* at 18:16-21.  Counsel did return to the subject of the notebooks near the end of the deposition, after a lunch break.  His questions at that point, however, concerned whether Ms. Cooperberg had been aware of prior litigations in which AmTrust had been involved, and he made no effort to determine whether Ms. Cooperberg's notebooks contained anything relevant to those litigations—nor did he otherwise delve into their contents. *Id.* at 176:23-178:15.

Because of a childcare issue, Mr. Cooperberg's deposition adjourned roughly an hour early on October 7, 2021 and was scheduled to resume on October 19.  During the intervening 12 days, Plaintiff's counsel had ample time to consider the issue of Ms. Cooperberg's notebooks. Indeed, on October 11, 2021, Plaintiff's counsel emailed AmTrust's counsel that they were "disturbed" to learn that Ms. Cooperberg had not retained her notebooks and demanded that AmTrust provide assurances with respect to the preservation of other custodians' hard copy documents. Declaration of Kevin S. Reed ("Reed Decl.") ¶ 3, Ex. 1.  Counsel's email, however, did not seek any information about the contents of Ms. Cooperberg's notebooks, and when her deposition resumed on October 19, counsel asked no questions about the notebooks.  Given the thoroughness and competence of Plaintiff's highly experienced counsel, this was almost certainly not an oversight.  Much more likely is that counsel made a tactical decision not to develop the record, fearing they would not like the evidence that would be adduced and preferring to preserve their ability to argue from innuendo.  Regardless, the bottom line is that Plaintiff has no evidence from which he can argue that Ms. Cooperberg's notebooks were relevant to any litigation such that she was required to preserve them.

## II.    NO PRESERVATION OBLIGATION AROSE BEFORE 2019

Even if one assumes for argument's sake, in the absence of any evidence, that Ms. Cooperberg's notebooks were of a character that could make them subject to a duty of

6

preservation, Plaintiff has not come forward with any basis upon which the Court could find that such a duty attached prior to 2019.

Plaintiff argues in the first instance that Ms. Cooperberg had a duty of preservation going back to 2016 because of AmTrust's involvement in a variety of litigations dating back to that year. Mem. at 5-7. In making this argument, though, Plaintiff does not even try to demonstrate that Ms. Cooperberg had any involvement in the conduct at issue in the litigations pre-dating 2019 or that her notebooks were for some other reason likely to contain information relevant to those litigations. Plaintiff appears to proceed instead from the premise that every time a corporation is sued, every executive incurs a duty to preserve every document in his or her possession. But that, of course, is not the law. *See, e.g., Zubulake*, 220 F.R.D. at 218 (explaining that "the duty to preserve extends to those employees likely to have relevant information—the 'key players' in the case," and "a litigant is under no duty to keep or retain every document in its possession," as the duty is to "preserve what it knows, or reasonably should know, is relevant in the action" (cleaned up)).

As noted above, a duty of preservation attaches only with respect to material that one knows or reasonably should know is potentially relevant to pending or anticipated litigation, *id*; *R.F.M.A.S.*, 271 F.R.D. at 23, and that well-established rule dooms Plaintiff's attempt to saddle Ms. Cooperberg with a preservation obligation prior to 2019. The first pre-2019 case Plaintiff cites, *Cambridge Ret. Sys. V. DeCarlo*, involved allegations that company directors had usurped a corporate opportunity. The second and third, *In re AmTrust Financial Services, Inc. Securities Litigation* and *In re AmTrust Financial Securities, Inc. Deriv. Litig.,* alleged securities fraud relating to AmTrust's financial reporting. The fourth, *In re AmTrust Financial Services, Inc. Stockholder Litigation*, alleged breaches of fiduciary duties by the company's directors and

7

officers in connection with the going private transaction.  Plaintiff also references a SEC investigation into the company's accounting practices and public filings relating to the same.

During Ms. Cooperberg's deposition, counsel limited his questions regarding these litigations to whether Ms. Cooperberg was aware of them (some she was; some she was not) and made no effort to establish that Ms. Cooperberg was likely to have had information relevant to them, such that she became subject to a preservation obligation.  Cooperberg Dep. Tr. 177:3-178:15.  Once again, the likelihood is that counsel's failure to ask those question was intentional, because he knew he would not like the answers.  There is simply no reason to infer that Ms. Cooperberg, whose responsibilities at the relevant time were limited to corporate communications and investor relations (*id*. at 44:24-45:10), would have been involved in or had documents relevant to the allegedly defective financial reporting or to the fiduciary duty breaches allegedly committed by other AmTrust officers and directors that underlay the litigations Plaintiff cites.  Accordingly, those litigations would not have triggered any duty of preservation applicable to her or to her notebooks.

Plaintiff next appears to argue that a duty of preservation attached to Ms. Cooperberg at the beginning of 2018, when investors began contacting her to ask about the implications of the proposed buyout transaction for AmTrust's preferred securities.  Mem. at 7-10.  It is unclear why Plaintiff believes this is so.  The mere fact that investors directed questions to Ms. Cooperberg has no significance; it was her job as an investor relations person to field such questions.  Additionally, none of the communications cited by Plaintiff that occurred before the announcement of the delisting on January 18, 2019 threatened litigation.  The communications prior to that point merely posed questions about AmTrust's future plans for the preferred securities.  Mem. at 7-9.  There is no logical reason to conclude that such questions signaled

anything to Ms. Cooperberg other than investor concern about a delisting or gave her reason to anticipate litigation, unless one presumes that Ms. Cooperberg knew about a secret plan to delist those securities.  And, to be clear, Ms. Cooperberg did not know of any such plan (nor was there any such plan).  She testified in her deposition that she was unaware the company was considering delisting the preferred securities until late 2018 and did not know that the company had decided to delist those securities until at or near the time the decision was made in early 2019.  Cooperberg Dep. Tr. 132:7-133:8.

Accordingly, even if one sets aside Plaintiff's failure to adduce any evidence suggesting that Ms. Cooperberg was ever under an obligation to preserve her notebooks, it remains the case that Plaintiff has not shown that any duty to preserve them attached prior to 2019.

## III.    PLAINTIFF HAS NOT SHOWN THAT MS. COOPERBERG'S NOTEBOOKS WERE RELEVANT TO HIS CLAIMS

Plaintiff acknowledges that to obtain a sanction for spoliation, he must show that "'the destroyed evidence was relevant to the party's claim or defense, such that a reasonable trier of fact could infer that it would support that claim or defense.'" *Ali v. Dainese USA, Inc.*, 2021 WL 5042850, at *15 (S.D.N.Y. Oct 29, 2021) (Failla, J. (quoting *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 9480315, at *2 (S.D.N.Y. Dec. 29, 2015))); *see also Kronisch,* 150 F.3d at 127 ("[B]efore we permit the drawing of an adverse inference, we require some showing indicating that the destroyed evidence would have been relevant to the contested issue.").  Perfect proof is not required, but the complaining party must adduce at least some extrinsic evidence from which a jury could reasonably conclude that the missing material would have helped him or her before a spoliation finding can be made. *See Kronisch*, 150 F.3d at 128 ("[T]he prejudiced party may be permitted an inference in his favor so long as he has

9

produced some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files.").

Plaintiff here has completely failed to do that. As detailed above, after learning of Ms. Cooperberg's practice of discarding her notebooks as they filled up, Plaintiff made no effort to develop evidence about what the notebooks contained, despite having repeated opportunities to do so over a span of nearly two weeks. *See supra* at 3-4. His evidence on that point is thus limited to the bare fact that Ms. Cooperberg took notes. He has no idea whatsoever whether any of her notes were even tangentially relevant to this case, much less whether any of her notes supported (or further undermined) his claims in any fashion. On these questions, Plaintiff can do no more than nakedly speculate.

In an effort to add heft to his speculation, Plaintiff draws the Court's attention to an electronic note Ms. Cooperberg wrote herself on January 18, 2018, which reads, "In the offer letter in the 13D filed by the buyer group do not disclose any plans to delist the preferred stock or any material changes to the dividend policy." Ex. X to Decl. of Adam Blander (Dkt. 75-1). According to Plaintiff, this note is a smoking gun in which Ms. Cooperberg "states matter-of-factly that any plans to delist the preferred stock should be omitted from an upcoming disclosure to investors," specifically a January 22, 2018 amendment to a Schedule 13D in which the Individual Defendants disclosed their "current intention" that the preferred securities would remain listed following the closing of the buyout transaction. Mem. at 14. From this, Plaintiff leaps to a conclusion that Ms. Cooperberg's notebooks would have contained similar supposedly incriminating material.

Putting aside the tenuous logic of that inference (there is no evidence Ms. Cooperberg used her notebooks and her email interchangeably), the more fundamental problem with

10

Plaintiff's argument is that it rests on a gross misreading of the supposed smoking gun.  Contrary to Plaintiff's interpretation, Ms. Cooperberg's January 18, 2018 note is *not* a forward-looking direction to avoid disclosing a secret delisting plan in the upcoming January 22, 2018 disclosure. It is a backward-looking and undeniably true statement that the "offer letter in the 13D filed by the buyer group" *on January 10, 2018* did not disclose any plans to delist the preferred stock or any material changes to the dividend policy for those securities.  Reed Decl. ¶ 4, Ex. 2, Amendment No. 13 to Schedule 13D.  Ms. Cooperberg testified that the buyer group's January 10, 2018 filing, which announced the proposed buyout of AmTrust's common stock, prompted inquiries from holders of the preferred securities as to how those would be treated in the buyout (Cooperberg Dep. Tr. 56:2-5), and it is likely that her January 18 note to herself concerned how she should respond to those inquiries, *i.e.*, by reminding investors that the offer letter did not disclose any plans to change the listing or dividend policy for the securities.  Additionally, aside from the fact that the face of the January 18 note shows it was about the Schedule 13D amendment filed on January 10, other evidence corroborates that it was *not* an instruction from Ms. Cooperberg to herself about the January 22 filing.  In particular, the evidence shows that Ms. Cooperberg did not participate in drafting the January 22 filing and did not even learn of it until January 21, 2018, three days *after* she wrote the January 18 note to herself.  *See* Cooperberg Dep. Tr. 96:14-22; Reed Decl. ¶ 5, Ex. 3 and ¶ 6, Ex. 4.

Plaintiff might have learned that his interpretation of the January 18 note was erroneous if his counsel had questioned Ms. Cooperberg about it.  But his counsel once again failed to make the necessary inquiries, again likely not wanting to hear the answers.  The entirety of counsel's questioning on the document is set forth below:

> Q.    Ms. Cooperberg, does this appear to be an email or a draft of an
>       email from your Outlook folder dated January 18, 2018?

11

> A.    It does.
>
> Q.    And the document states, "In the offer letter in the 13D filed by the buyer group[] do not disclose any plans to delist the preferred stock or any material changes to the dividend policy." Do you see that?
>
> A.    I do.

Cooperberg Dep. Tr. 83:22-84:7. The document in question had been produced to Plaintiff on April 9, 2021, almost six months to the day before Ms. Cooperberg's October 7, 2021 deposition. Reed Decl. ¶ 7. Counsel thus had more than ample time to formulate questions for Ms. Cooperberg about the meaning of the document but chose not to do so.

Plaintiff's last argument on relevance is that Ms. Cooperberg's notebooks must have contained relevant materials because she had been deluged with investor inquiries after the announcement of the buyout transaction. Mem. at 14-15. This is a non-sequitur. The mere fact that Ms. Cooperberg received investor inquiries about the preferred securities is not proof that she made notes about those inquiries. Rather, her practice was to forward those inquiries on to those to whom they were relevant, and, contrary to Plaintiff's unsupported assertion, she testified that she could not recall discussing those communications with anyone. Cooperberg Dep. Tr. 141:25-142:19.

Plaintiff thus cannot carry his burden to show that Ms. Cooperberg's notebooks were relevant to his claims.

## IV.    NO ADVERSE INFERENCE IS APPROPRIATE

For the reasons discussed above, Plaintiff has not carried his burden to show that he is entitled to a spoliation finding, so no sanction of any kind is warranted or permissible. Even if Plaintiff had established a basis for the Court to impose a sanction, however, the severe sanction of an adverse inference would not be appropriate.

12

As this Court has explained, "[a]ny sanction that a court chooses to impose must be designed to: [i] deter parties from engaging in spoliation; [ii] place the risk of an erroneous judgment on the party who wrongfully created the risk; and [iii] restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.  [I]t is well accepted that a court should always impose the least harsh sanction that can provide an adequate remedy."  *Ali*, 2021 WL 5042850, at \*16 (internal citations omitted).  With these principles in mind, "how severe a sanction is warranted will depend on the extent of the discovered party's non-compliance with discovery obligations, the degree of that party's culpability, and the extent to which the non-compliance prejudiced the other parties."  *R.F.M.A.S.*, 271 F.R.D at 24.

Here, the extent of any discovery non-compliance by AmTrust is minimal.  Indeed, other than Ms. Cooperberg's notebooks, AmTrust produced tens of thousands of documents from 18 custodians.  Plaintiff has not alleged any other instance of AmTrust failing to produce materials it was required to produce.  *See* Mem. at 16.  Even as to Ms. Cooperberg, any failure with respect to the preservation of her notebooks was an isolated incident, as her relevant emails and text messages were preserved and produced in this case.

There has also been no showing of a high degree of culpability.  As recounted above, Ms. Cooperberg testified that it is her habit to comply with document retention notices and company document retention policies.  Cooperberg Dep. Tr. 177:25-178:3.  Her belief that her notebooks did not fall within the scope of her retention obligations, if mistaken, was at worst an innocent mistake.  There is no evidence to suggest that Ms. Cooperberg sought to deprive Plaintiff of relevant information.  To the contrary, the evidence is that her practice of discarding her notebooks as they filled up long predated the events underlying this case, and she retained all

13

relevant material she possessed in electronic form. There has also been no showing of culpability on the part of AmTrust, which sent the appropriate document retention notice in this case and is not alleged to have been aware of Ms. Cooperberg's practice of discarding her full notebooks.

With respect to prejudice, for the reasons discussed above, Plaintiff has failed to establish any. Moreover, even if one assumes the existence of some theoretical prejudice resulting from Ms. Cooperberg discarding her notebooks, the severity of that prejudice, or lack thereof, can only be baselessly guessed at because Plaintiff passed up repeated opportunities to develop evidence regarding what the notebooks might have contained. During two separate deposition sessions, Plaintiff's counsel chose not to, or at a minimum failed to, ask Ms. Cooperberg whether she ever made a handwritten note that was relevant to this case. Plaintiff's counsel also chose or failed to ask more general questions about her notetaking habits that might have shown whether there was any likelihood that relevant notes ever existed. In similar circumstances—*i.e.*, where a complaining party's own failures contributed to its inability to quantify any prejudice from spoliation—courts have declined to issue an adverse instruction. *See, e.g.*, *Rhoda v. Rhoda*, 2017 WL 4712419, at *4 (S.D.N.Y. Oct. 3, 2017); *De Espana v. Am. Bureau of Shipping*, No. 03 CIV.3573(LTS)RLE, 2007 WL 1686327, at *8 (S.D.N.Y. June 6, 2007), *objections overruled sub nom. Reino de Espana v. Am. Bureau of Shipping, Inc.*, No. 03 CIV.3573(LTS)(RLE, 2008 WL 3851957 (S.D.N.Y. Aug. 18, 2008).

On the issue of prejudice, it is also important to recall that Plaintiff has not shown that any duty Ms. Cooperberg had to preserve her notebooks attached prior to 2019. Given that Ms. Cooperberg discarded her notebooks approximately every two months, this means that the only possible spoliation was limited to notes taken in and after November 2018. All of the alleged

14

misstatements set forth in the Complaint occurred months prior to that time. The only relevant events occurring in and after November 2018 related to the AmTrust's decision to delist its preferred securities. Ms. Cooperberg was not involved in those events. She testified that she did not participate in that decision-making process and only learned of the decision at or near the time it was made. Cooperberg Dep. Tr. 132:7-14, 133:4-8. Moreover, Plaintiff deposed and received documents from the people who were responsible for that decision. Thus, even if there was a basis to make a spoliation finding here, and even if the Court were to ignore that Plaintiff adduced no evidence that he suffered any amount of prejudice on account of spoliation, there would still not be any basis to find that Plaintiff had suffered anything more than minimal prejudice.

In view of the above, it would not be appropriate to award any adverse inference in this case. The adverse inferences proposed by Plaintiff, moreover, would be particularly inappropriate and unfair. The first proposal—an inference that "[t]he notebooks, if preserved, would have included evidence adverse to Defendants"—would be an unwarranted gift to Plaintiff, as there is simply no basis to believe that is true. The second proposal—an inference that "[t]he notebooks, if preserved, would have included instructions not to disclose Defendants' plans to delist the preferred stock"—has the same problem; additionally it would relieve Plaintiff of the need to prove a central and highly disputed premise of his case—that Defendants had an undisclosed plan to delist the preferred securities—for which there is no other evidence. Thus, rather than putting Plaintiff in the same position he would have been absent spoliation, which is the point of an adverse inference, *see Kronisch*, 150 F.3d at 126, Plaintiff's proposal would unjustifiably put him in far better position and inflict severe and unfair prejudice on AmTrust.

15

Either proposed inference would also unfairly tar and prejudice the Individual Defendants who are not alleged to be responsible for the alleged spoliation.

Accordingly, no adverse inference is appropriate in this case.

## CONCLUSION

Plaintiff's motion for a finding of spoliation and an adverse inference should be denied.


Dated:  February 4, 2022
        New York, New York                    */s/ Kevin S. Reed*
                                              _____

                                              Michael B. Carlinsky
                                              Kevin S. Reed
                                              QUINN EMANUEL URQUHART &
                                                  SULLIVAN, LLP
                                              51 Madison Ave., 22nd Fl.
                                              New York, NY 10010
                                              Tel.: (212) 849-7000
                                              Fax: (212) 849-7100
                                              michaelcarlinsky@quinnemanuel.com
                                              kevinreed@quinnemanuel.com

                                              *Attorneys for Defendants*

16