UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JAN MARTÍNEK, | ) ) ) | No. 19-cv-8030-KPF |
| Plaintiff, | ) ) | (Failla, J.) |
| v. | ) ) | |
| AMTRUST FINANCIAL SERVICES, INC., BARRY D. ZYSKIND, GEORGE KARFUNKEL, AND LEAH KARFUNKEL, | ) ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF
LEAD PLAINTIFF'S SPOLIATION MOTION**

**WOLF POPPER LLP**
Carl L. Stine
Patricia I. Avery
Adam J. Blander
Radha Raghavan
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600
cstine@wolfpopper.com

*Attorneys for Class Representative Jan Martínek and the Class*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT....................................................................................................................2

    I.     COOPERBERG HAD A DUTY TO PRESERVE HER NOTEBOOKS...............2

    II.    COOPERBERG'S PRESERVATION OBLIGATION AROSE *BEFORE* 2019 ...3

    III.   COOPERBERG'S NOTEBOOKS ARE RELEVANT TO PLAINTIFF'S

           CLAIMS ...................................................................................................5

    IV.   AN ADVERSE INFERENCE IS THE APPROPRIATE REMEDY .....................7

CONCLUSION ...............................................................................................................9

## TABLE OF AUTHORITIES

**Cases**

*Frazier v. Bed Bath & Beyond Inc.,*
Civ. No. 2:10-05398 (WJM), 2013 WL 1845499 (D.N.J. Apr. 30, 2013) .................................9

*John Wiley & Sons, Inc. v. Book Dog Books, LLC,*
13cv816, 2016 WL 11556548  (S.D.N.Y. Apr. 12, 2016)...........................................................8

*R.F.M.A.S., Inc. v. So,*
271 F.R.D. 13 (S.D.N.Y. 2010) ................................................................................................8

*Sekisui Am. Corp. v. Hart,*
945 F. Supp. 2d 494 (S.D.N.Y. 2013)........................................................................................9

*Tchatat v. O'Hara*,
249 F. Supp. 3d 701 (S.D.N.Y. 2017), *objections overruled*, No. 14 Civ. 2385 (LGS), 2017
WL 3172715 (S.D.N.Y. July 25, 2017), *aff'd* 795 F. App'x 34 (2d Cir. 2019)..........................9

**PRELIMINARY STATEMENT**

Lead Plaintiff and Class Representative, Jan Martínek ("Plaintiff"), submits this reply in further support of his motion for a finding of spoliation against Defendant AmTrust Financial Services, Inc. ("AmTrust").

When the most senior investor relations officer of a Fortune 500 company that is the target of various securities proceedings destroys her professional notes, there should be consequences. That is precisely what occurred when Chaya Cooperberg discarded her notebooks, depriving Plaintiff of any hard-copy documents from this important custodian. Thus, an order permitting the trier of fact to infer that the destroyed notebooks would have been adverse to AmTrust strikes the right balance, as it will prevent AmTrust from benefitting from its own culpability. In its opposition brief ("Opp."), AmTrust acknowledges that Cooperberg was under a preservation obligation during at least some of the relevant time period when she was destroying her notebooks, but claims that there is insufficient evidence to demonstrate that the notebooks contained relevant evidence. As discussed herein, AmTrust's argument ignores the appropriate common-sense inferences developed from *the existing record* establishing that the destroyed documents contained relevant evidence. Moreover, in one important instance, AmTrust's argument is grounded in an interpretation of evidence from Cooperberg that its own counsel rejected earlier in the litigation. The Court should grant the Motion.[1]

---

[1] Terms not defined herein have the same meaning as in Plaintiff's opening brief ("OB", Dkt. No. 77).

In an attempt to prejudice this Court, AmTrust cannot resist characterizing this Motion as a "Hail Mary" attempt to salvage Plaintiff's fraud claims, for which he has "adduced [no] testimonial or documentary evidence" during discovery. Opp. at 1. While this statement has no bearing on the merits of this Motion, Plaintiff simply objects, states that this contention is meritless, and Plaintiff will otherwise not take the bait.

## ARGUMENT

### I.  COOPERBERG HAD A DUTY TO PRESERVE HER NOTEBOOKS

AmTrust denies that Cooperberg had a duty to preserve her notebooks because "the record contains no evidence about what [they] contained." Opp. at 4.  There is such evidence. Specifically, Cooperberg testified that she "takes notes regarding [her] professional matters in a notebook." Ex. A at 17:22-25.  It is true that counsel did not question Cooperberg in the manner AmTrust has suggested.  For example, counsel did not ask Cooperberg "whether the notes in her notebooks were substantive or merely to-do lists and other ephemera." Opp. at 4.  But that is besides the point: whether or not the notebooks contained "substantive" notes rather than less formal ones is a meaningless distinction and not a judgment call any corporate officer could or should make in determining whether to destroy professional documents.  Certainly, there is no exception to the rules of discovery for informal notes or ephemera.  Ms. Cooperberg was obligated to preserve her professional notebooks, just like she had an obligation to preserve all her business emails, not only the purportedly "substantive" ones.  AmTrust admitted as much in its document retention policy, when it admonished Cooperberg to err on the side of inclusion in determining relevancy, and specifically singled out notes and writings as documents to be retained.  Ex. W at 3.  AmTrust also cites to testimony showing that Cooperberg would *sometimes* forward important investor communications to others, Opp. at 5, but that testimony in no way suggests that such forwarding was to the exclusion of any note-taking.  AmTrust also relies on Cooperberg's claim that she "abides by document retention notices," *id.*, but Plaintiff respectfully submits that such self-serving testimony (even if sincere) has been disproven by her conduct, in which she destroyed notebooks even after issuance of a formal litigation hold in February 2019.

The Opp., at 6, speculates that it is "likely" that Plaintiff "made a tactical decision not to

develop the record [regarding the contents of the notebooks], fearing they would not like the evidence that would be adduced and preferring to preserve their ability to argue from innuendo." This is simply not true. Lead Counsel was understandably focused on the substance of his fraud claims at Cooperberg's deposition, which lasted the full seven hours. By contrast, shoring up favorable testimony for a potential spoliation motion was not counsel's focus, and the transcript evinces no attempt (or desire) from counsel to play "gotcha." While Plaintiff will not speculate as to defense counsel's motives, he notes that they could have, but declined to submit a declaration from Cooperberg attempting to rebut any alleged "innuendo" raised in the Motion regarding the contents of the notebooks. The Court should recall that defense counsel suggested at the pre-motion conference that it was prepared to submit such a statement from Ms. Cooperberg if Plaintiff made a formal spoliation motion, *see* Dkt. No. 72 at 15:11-16, but, upon further reflection since the conference, counsel appears to have chosen a different path. Similarly, defense counsel, having already been notified by Lead Counsel of the potential spoliation issue (Reed Decl. ¶ 3, Ex.1), could have sought to elicit clarifying testimony from Cooperberg once Lead Counsel concluded his questioning (as defense counsel did for other depositions) but, again, declined to.

## II.   COOPERBERG'S PRESERVATION OBLIGATION AROSE *BEFORE* 2019

Stopping short of outright admitting a duty to preserve, AmTrust (as it must) recognizes that Ms. Cooperberg's document retention obligations became more acute once the delisting was announced, in January 2019. Opp. at 1-2, 6-7. In fact, her preservation duties arose earlier. As previously noted in the OB at 11, while the only document retention notice AmTrust produced is the one dated February 14, 2019, the notice specifically refers to *prior* notices, purportedly also sent to Ms. Cooperberg, related to litigation commenced by common stockholders on May 31, 2018 and June 4, 2018 alleging breaches of fiduciary duty arising from the Buyout (the "Buyout

litigation"). Ex. W at 2. The Opp. does not dispute these facts. The implication is that Ms. Cooperberg was under a formal preservation duty—arising from AmTrust's instructions—since at least June 2018.

While Plaintiff is not aware of the contents of the formal litigation holds issued in connection with litigations or investigations predating the Buyout litigation and whether Cooperberg received them, that absence of such documents in the record does not exonerate AmTrust or Cooperberg. That is because these other proceedings (except, potentially the *Cambridge* derivative action) all directly concerned the adequacy of AmTrust's public disclosures to investors. It is inferable that a company's highest-ranking investor relations officer would have materials related to these disclosures giving rise to litigation, or at the very least would have an obligation to retain her professional records until counsel advised her otherwise. AmTrust claims that Plaintiff is proceeding "from the premise that every time a corporation is sued, every executive incurs a duty to preserve every document in his or her possession." Opp. at 7. Not so. Corporations may be sued often, but they are less frequently sued or investigated—repeatedly—for securities fraud, and when they are, their investor relations department always becomes a focal point of inquiry.[2] It is not surprising that AmTrust identified Cooperberg as a document custodian when the parties were negotiating a search protocol.

AmTrust also claims that the flurry of communications between Cooperberg and investors did not trigger a preservation duty, because "none of the communications cited by Plaintiff that occurred before the announcement of the delisting on January 18, 2019 threatened litigation." Opp. at 8. Because Cooperberg already had a preservation duty, as discussed already, whether or

---

[2] The suggestion that Cooperberg had no involvement in the conduct giving rise to these earlier litigations (i.e., she was not the specific executive who was alleged to be "cooking the books" or self-dealing) misses the mark as it was also AmTrust's statements to investors describing this alleged misconduct that were at issue.

4

not these investor communications, in and of themselves, triggered a preservation duty, need not be addressed by the Court.  But it bears noting that litigation was foreseeable from these communications well in advance of January 18, 2019.[3]  Moreover, AmTrust acknowledges that Cooperberg was aware of the delisting—at the latest—by "late 2018."  Opp. at 9 (citing to Ex. A at 132:7-133:8).  Given Cooperberg's many communications with investors, who articulated their fears of a delisting (OB 7-9), she would have known that a delisting would have been met with litigation, which is precisely what occurred.

## III.    COOPERBERG'S NOTEBOOKS ARE RELEVANT TO PLAINTIFF'S CLAIMS

AmTrust acknowledges that the party moving for a spoliation finding need not come forth with "perfect proof" that the document he was deprived of would have been relevant to his claims. Opp. at 9; *see also* OB at 14 (citing authority noting that a strict standard of proof regarding the likely contents of the destroyed documents would contravene the prophylactic and punitive purposes of an adverse inference).  Here, Cooperberg testified that she took notes concerning AmTrust throughout the time period reflected in Plaintiff's RFPs, and that she took enough notes to fill up a notebook every two months.  Also, one of Ms. Cooperberg's primary responsibilities (if not her primary responsibility) before AmTrust went private was investor relations.[4]  The reasonable inference—if not the only inference—is that these many destroyed notebooks contained writings regarding the preferred stock or writings otherwise responsive to Plaintiff's RFPs.  The

---

[3] *See, e.g.,* Ex. G (Sept. 27, 2018 email) (investor noting the preferred stock price drop as "very unusual" and that he "NEVER saw such a situation.  Your clients – retail investors – are losing millions of dollars); Ex. J (Nov. 15, 2018 email) ("[A]bsence of official information about privatization details (which is, I believe, your direct responsibility) creates UNCERTAINTY and, as a result, investors are losing big"); Ex. L (Dec. 18, 2018) ("Preferred stock holders are supposed to be treated better than common and I feel like just the opposite has occurred.  Your silence regarding this particular part of your company has been very damaging to us who have supported AmTrust over the years. Maybe that's intentional, but I can tell you the unrest may cause you more problems if you don't address them now.").

[4] Her other responsibilities (which overlap with investor relations) were marketing and communications.

volume of communications directed at AmTrust's investor relations department regarding the preferred stock during this time period supports this inference.

Moreover, Plaintiff has brought forth admittedly circumstantial but nonetheless compelling evidence showing that documentation bearing on Plaintiff's claims has been destroyed. Specifically, Plaintiff has shown that when Cooperberg drafted *electronic* notes to herself, they were indisputably relevant to this Action. More specifically, in a January 18, 2018 Outlook note, Cooperberg states, in reference to the upcoming public statement to be issued four days later and which would begin the Class Period, that "[i]n the offer letter in the 13D filed by the buyer group do not disclose any plans to delist the preferred stock or any material changes to the dividend policy." OB at 13 (citing Ex. X).

AmTrust downplays this note, suggesting that the note is referring to an earlier Form 13D, filed on January 10, 2018, and is thus a "backward-looking" statement, Opp. at 11. While AmTrust does not spell this out (because doing so would doom its argument), it is implying that the note really means as follows:

> ~~In~~ the offer letter in the 13D filed by the buyer group ~~do~~ did not disclose any plans to delist the preferred stock or any material changes to the dividend policy.

This makes absolutely no sense, as proficient English speakers, even in notes, are not prone to substituting "do" with "did." AmTrust would also need to explain why the first word ("In") was mistakenly included in Cooperberg's notes. Moreover, this exceedingly convenient and illogical interpretation is of recent vintage, and *directly contradicts* what defense counsel repeatedly said at the pre-motion conference, where he told this Court that the note was a forward-looking "instruction" as to what the "subsequent" Form 13D "should say."[5] Lacking from the Opp. is any

---

[5] *See* Dkt. No. 72 at 17:24-18:6 ("Your Honor, that's an instruction as to what the -- should say based on what she's been told about what the intentions are. It also says do not disclose any plan - first of all, it doesn't say 'do not disclose the plan,' 'do not disclose a plan.' This is saying this is what the 13D

declaration from Ms. Cooperberg agreeing with defense counsel's new reading of the note. Thus, the Court should reject counsel's surmise that the note "likely" (Opp. at 11) refers to past, and not future filings.[6]

AmTrust also argues that Cooperberg "did not participate in drafting the January 22 filing" but that is not entirely true. While the language of the filing was proposed by an attorney, the attorney sent this language *to Cooperberg* with the note that "[w]e wanted to confirm that you think such a statement will be satisfactory to quell the uncertainty of the preferred stockholders" and that "[i]f you have any suggestions as to further clarifying language, please call me on my cell…". Ex. 4 to Reed Declaration. Other documents, aside from this email show Cooperberg communicating with other AmTrust individuals about the need for a public statement to reassure investors. *See, e.g.,* Ex. E (January 18, 2018 email from Cooperberg).

## IV.   AN ADVERSE INFERENCE IS THE APPROPRIATE REMEDY

AmTrust contends that an adverse inference should not issue because Plaintiff has not made a showing of a "high degree of culpability" and has not demonstrated that Cooperberg "sought to deprive Plaintiff of relevant information."[7]   But, as defense counsel conceded, Plaintiff does not need to show that Cooperberg or AmTrust engaged in a high degree of culpability. Instead, the standard under Second Circuit precedent is "a low bar and that even negligence can be a culpable

---

should say: Do not disclose any plans to delist the preferred stock or any material changes to the dividend policy, because there were no such things."); *id.* at 19:14-20 ("this is simply a note saying this subsequent filing, which is going to disclose our intentions with respect to the preferred stock, should not say anything about any plan to delist them or anything about any plan to change the dividend policy, because there are no such plans. So it should simply say we have no plans"). It bears noting that defense counsel had just spoken with Cooperberg, in order to prepare for the conference. *Id.* at 15:14-16.

[6] Obviously, even if the Court gave some credence to defense counsel's fantastical new reading of the note (it should not), what that would mean is that there would be two differing interpretations of a note bearing on central issues in this case. In other words, the document is still relevant to Plaintiff's fraud claim, which is the standard when evaluating a spoliation motion, even if the Court determines that the document is not as helpful to Plaintiff as he is claiming (and again, Plaintiff submits that the note means exactly what it says).

[7] Opp. at 13. AmTrust says Cooperberg's conduct was "at worst an innocent mistake." *Id.*

state of mind." Dkt. No. 72 at 24:16-17 (quoting defense counsel); *see also* OB at 10, 15 (citing authority showing that negligence is the standard regarding the destruction of non-ESI documents, and that a showing of intent is not needed). For the reasons already stated herein and in the OB, the destruction by Ms. Cooperberg of her professional notebooks, coupled with the facts (among others) i) that she was the highest-ranking investor relations officer at AmTrust with extensive prior experience in investor relations and had an admitted understanding of the significance and importance of document preservation policies, and ii) that she knew that AmTrust was a repeat defendant in investor and securities fraud proceedings, clearly constitutes negligence (if not bad faith).[8] Defense counsel also claims that Plaintiff has not shown "culpability on the part of AmTrust, which sent the appropriate document retention notice in this case," (Opp. at 14), but, as discussed in the OB at 11 and unrefuted in the Opp., the discovery record simply shows that a retention notice was drafted and directed at Cooperberg in February of 2019. There is no indication that she received the notice or signed its acknowledgment. Accordingly, the failure to implement the stated retention policy easily meets the culpability threshold for AmTrust, a large, sophisticated Fortune 500 company.[9]

The Opp., at 14-15, also states that an adverse inference is too harsh because Ms. Cooperberg only had a preservation obligation beginning in January 2019, and given her practice of discarding notebooks every two months, "the only possible spoliation was limited to notes taken in and after November 2018" which is after the alleged false statements were issued during the Class Period, and thus Plaintiff has only suffered "minimal prejudice." Even assuming for the

---

[8] *See John Wiley & Sons, Inc. v. Book Dog Books, LLC,* 2016 WL 11556548, at *3 (S.D.N.Y. Apr. 12, 2016) ("[T]he culpable state of mind factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently.") (citations omitted).

[9] *R.F.M.A.S., Inc. v. So,* 271 F.R.D. 13, 35 (S.D.N.Y. 2010) ("Spoliation by a party that has failed to implement a litigation-hold policy, even if unintentional, is not merely negligent, but grossly negligent or reckless.")

sake of argument that Cooperberg's preservation obligations began in January 2019, this contention ignores the fact that in virtually all securities fraud actions, the time period around a stock drop is a period rich in responsive documents and communications, as it is during this time when individuals are assessing what occurred during the class period, and whether investors were misled. For example, it is not surprising that "in and after November 2018," AmTrust was once again overwhelmed with communications from preferred stockholders, this time accusing it of lying to them.[10] Whether Cooperberg drafted hard-copy notes to herself assessing the merit of these accusations is an inquiry Plaintiff cannot conduct given the destruction of her notebooks.[11]

### CONCLUSION

For the reasons discussed above and in the OB, the Court should 1) find that AmTrust spoliated evidence, 2) issue an adverse inference to be utilized at the summary judgment stage and at trial, and 3) order other and further relief as this Court deems justified.[12]

---

[10] *See, e.g.,* Ex. J (Nov. 15, 2018 email) ("You told me by phone that they will not be delisted); Exs. O, P. S, T, U (emails from investors to Cooperberg in January and February 2019 accusing AmTrust of going against its word).

[11] The Opp., at 15, asserts that Plaintiff's proposed adverse inference instruction is an "unwarranted gift," because "it would relieve Plaintiff of the need to prove a central and highly disputed premise of the case." This misses the mark because an adverse inference is just that: an inference. It may be accepted by the trier of fact, or rejected. Thus, at trial, the parties will still need to persuade the jury to credit their respective accounts of the events, and whether the missing evidence would have been beneficial to Plaintiff. *See Sekisui Am. Corp. v. Hart,* 945 F. Supp. 2d 494, 510 (S.D.N.Y. 2013) (instruction to jury is that "you may presume, *if you so choose*, that such lost evidence would have been favorable to the Harts") (emphasis added). The Opp.'s contention, at 16, that an adverse inference would also "unfairly tar" the Individual Defendants is not well-taken given the Individual Defendants' control over AmTrust (as admitted in AmTrust's SEC filings). Defendant Zyskind was AmTrust's CEO, to whom Cooperberg reported. The buck must stop somewhere.

[12] While Plaintiff believes he has met the requisite showing for a spoliation finding, to the extent the Court is not persuaded, he respectfully submits that the Court reserve judgment until a fuller record is developed, when Ms. Cooperberg testifies, again, at trial. *See Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 711 (S.D.N.Y. 2017), *objections overruled*, 2017 WL 3172715 (S.D.N.Y. July 25, 2017), *aff'd* 795 F. App'x 34 (2d Cir. 2019) (denying spoliation motion but noting that "the question of whether a sanction will issue would have to await trial" and citing, among other supporting authority, to *Frazier v. Bed Bath & Beyond Inc.,* 2013 WL 1845499, at *7 (D.N.J. Apr. 30, 2013), which denied a spoliation motion without prejudice, with the court "willing to revisit the issue at trial").

DATED: February 18, 2022                    Respectfully submitted,

                                        **WOLF POPPER LLP**

                               By:  _/s/ Adam. J. Blander_

                                    Carl L. Stine
                                    Patricia I. Avery
                                    Adam J. Blander
                                    Radha Raghavan
                                    845 Third Avenue, 12th Floor
                                    New York, New York 10022
                                    (212) 759-4600

                                    *Attorneys for Class Representative*
                                    *Jan Martínek and the Class*

10