UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JAN MARTÍNEK, | ) | |
| | ) | Case No. 19-cv-8030-KPF |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| AMTRUST FINANCIAL SERVICES, INC., | ) | Hon. Katherine Polk Failla |
| BARRY D. ZYSKIND, GEORGE | ) | |
| KARFUNKEL, AND LEAH KARFUNKEL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF NOTICE TO THE CERTIFIED CLASS

**WOLF POPPER LLP**
Carl L. Stine
Patricia I. Avery
Adam J. Blander
Radha Raghavan
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600
cstine@wolfpopper.com

*Attorneys for Class Representative Jan Martínek and the Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

I.      INTRODUCTION............................................................................................... 1

II.     OVERVIEW OF THE ACTION ........................................................................ 2

III.    TERMS OF THE SETTLEMENT...................................................................... 5

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED................ 7

        A.      Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ........... 9

        B.      The Proposed Settlement Was Negotiated at Arm's Length ................................ 10

        C.      Relief Provided for the Class Is Adequate ............................................................ 10

        D.      The Proposed Method For Distributing Relief Is Effective................................. 12

        E.      The Anticipated Attorneys' Fees and Expenses Are Reasonable........................ 14

        F.      Equitable Treatment of Class Members Relative to One Another ....................... 16

        G.      The *Grinnell* Factors Are Also Met......................................................................17

                1.      The Complexity, Expense and Likely Duration of the Litigation Supports Approval of the Settlement ....................................................... 17

                2.      The Reaction of the Class to the Settlement ............................................ 18

                3.      The Stage of the Proceedings................................................................... 18

                4.      The Risk of Establishing Liability and Damages .................................... 18

                5.      The Costs and Risks of Maintaining the Class Action Through Trial...... 18

                6.      The Ability of Defendants to Withstand a Greater Judgment................... 19

                7.      The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation..................................... 19

        V.      THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA REQUIREMENTS ........................................... 21

        VI.     PROPOSED SCHEDULE FOR FINAL APPROVAL....................................... 22

        VII.    CONCLUSION................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) *aff'd* 818 F.2d 145 (2d Cir. 1987) ................................... 20

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ............................................................................................... 10

*In re Bear Stearns*,
909 F. Supp. 2d at 259 (S.D.N.Y. 2012) ............................................................................ 19

*City of Providence v. Aéropostale, Inc.*,
2014 U.S. Dist. LEXIS 64517  (S.D.N.Y. May 9, 2014),
*aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) .............................. 11, 14

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ............................................................................................................ 19

*In re Credit Default Swaps Antitrust Litig.*,
13md2476 (DLC), 2016 U.S. Dist. LEXIS 54587 (S.D.N.Y. April 26, 2016) ....................... 13

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001) ............................................................................................... 10

*Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ................................................................................................ 8

*In re Deutsche Bank AG Sec. Litig.,*
Master File No. 1:09-cv-01714-GHW-RWL, 2020 U.S. Dist. LEXIS 103134
(S.D.N.Y. June 11, 2020) ................................................................................................... 14

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
Master File No. 05 Civ. 10240 (CM),
2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ........................................................ 7

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ....................... 20

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
Master File No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702
(S.D.N.Y. Nov. 8, 2010) ..................................................................................................... 19

*Lea v. Tal Educ. Group*,
No. 18-CV-5480 (KHP), 2021 U.S. Dist. LEXIS 229314 (S.D.N.Y. Nov. 30, 2021) ............ 16

*Moukengeshcaie v. Eltman*,
No. 14 CV 7539 (MKB) (CLP), 2020 U.S. Dist. LEXIS 71018  (E.D.N.Y. Apr. 21, 2020) .. 16

*Oleniak v. Time Warner Cable*,
Civil Action No. 12-CV-3971 (KPF), 2013 U.S. Dist. LEXIS 207945
(S.D.N.Y. December 17, 2013)..................................................................................... 7

*Pantelyat v. Bank of Am., N.A.*,
16-cv-8964 (AJN), 2019 U.S. Dist. LEXIS 15714 (S.D.N.Y. Jan. 31, 2019) ......................... 11

*In re PPDAI Grp. Inc. Sec. Litig.*,
18-CV-6716 (TAM), 2022 U.S. Dist. LEXIS 11427 (E.D.N.Y. Jan. 21, 2022)...................... 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................... 8

*In re Prudential Secs. Ltd. Pshps. Litig.*,
164 F.R.D. 362 (S.D.N.Y Feb. 1, 1996) ...................................................................... 21

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) .................................................................................. 8

*In re Vitamin C Antitrust Litig.*,
No. 06-MD-1738 (BMC) (JO), 2012 U.S. Dist. LEXIS 152275  (E.D.N.Y. Oct. 23, 2012) .. 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)......................................................................................... 7

*In re Warner Chilcott Ltd. Sec. Litig.*,
06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840 (S.D.N.Y. Nov. 20, 2008).................. 18

## Statutes

15 U.S.C. § 78j.................................................................................................................. 2
15 U.S.C. § 78t.................................................................................................................. 2
15 U.S.C. § 78u................................................................................................................ 22
28 U.S.C. § 1715............................................................................................................... 5

## Rules and Regulations

Fed. R. Civ. P. 23(c) ................................................................................................. 18, 21
Fed. R. Civ. P. 23(e) ................................................................................................ passim
Local Civ. R. 23.1 ..................................................................................................... 15
SEC Rule 10b-5 (17 C.F.R. § 240.10b-5)...................................................................... 2

Other Authorities

Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022),
available at www.nera.com/publications/archive/2022/recent-trends-in-securities-class-actionlitigation--2021-full-y.html ........................................................................................... 20

Securities Class Action Settlements - 2021 Review and Analysis  (Cornerstone Research 2022),
available at www.cornerstone.com/wpcontent/uploads/2022/03/........................................... 20

## I.    <u>INTRODUCTION</u>

Lead Plaintiff, Jan Martínek ("Lead Plaintiff"), on his own behalf and on behalf of the Class,[1] respectfully submits this memorandum of law in support of his motion for preliminary approval of the proposed Settlement of the above captioned Action, as described in the Stipulation and Agreement of Settlement dated June 22, 2022 (the "Stipulation").  Defendants have been provided with a draft of Lead Plaintiff's motion papers, as required under the Stipulation, and do not oppose this motion or the Proposed Order Granting Preliminary Approval Pursuant to Fed. R. Civ. P. 23 and Permitting Notice to the Class ("Proposed Order") submitted herewith.

Lead Plaintiff has reached a proposed class action settlement with AmTrust Financial Services, Inc., Barry D. Zyskind, George Karfunkel, and Leah Karfunkel ("Defendants"), which, if approved, will resolve all claims alleged against Defendants in exchange for a cash payment of $13,000,000 for the benefit of the Class.  The Settlement (as set forth in the Stipulation) is a product of good-faith and arm's-length negotiations between and among highly experienced counsel, following extensive fact and expert discovery, and facilitated by a well-respected mediator.  The Settlement, which represents an unusually significant proportion of maximum provable aggregate damages in a securities fraud class action, is a favorable outcome in light of the substantial risks and costs attendant to continued litigation and the immediate economic benefits to Class Members. Lead Plaintiff, therefore, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of the Proposed Order, which will: (i) preliminarily approve the proposed class action Settlement; (ii) approve the form, content and manner of providing notice of the Settlement to the Class; and (iii) set a schedule for final approval of the Settlement.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation of Settlement dated June 22, 2022 ("Stipulation"), previously filed at ECF No. 91-1 which is attached as Exhibit A to the Declaration of Adam J. Blander ("Decl."), submitted herewith.  Unless otherwise noted, all references to "¶ ___ " are to the Stipulation.  Unless otherwise noted, internal citations and quotation marks are omitted.

## II.　OVERVIEW OF THE ACTION

On August 28, 2019, Lead Plaintiff, through his counsel Wolf Popper LLP ("Wolf Popper"), filed his Class Action Complaint (the "Complaint") alleging that Defendants violated Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j and 78t) and SEC Rule 10b-5. ECF No. 5. Specifically, it was alleged that, throughout the Class Period (January 22, 2018, through January 18, 2019, both dates inclusive), Defendants made materially false and misleading statements regarding whether AmTrust's Preferred Stock (defined below) would remain listed on the New York Stock Exchange following the closing of a transaction whereby the common shares of AmTrust, which were then publicly traded, would be taken private. The Complaint further alleged that Defendants' alleged misrepresentations caused the price of the Preferred Stock to be inflated during the Class Period and to decline when the alleged truth emerged, resulting in financial losses to those who purchased or acquired the Preferred Stock at inflated prices. *Id.*

On November 18, 2019, the Court entered an Order appointing Mr. Martínek as Lead Plaintiff and Wolf Popper LLP as Lead Counsel in this Action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). ECF No. 23.

On January 31, 2020, Defendants served papers in support of their Motion to Dismiss the Complaint. ECF Nos. 27-29. On March 13, 2020, Lead Plaintiff served his memorandum of law in opposition to Defendants' motion (ECF No. 30) and, on April 3, 2020, Defendants served their reply memorandum of law. ECF No. 31. Under the PSLRA, discovery was stayed during the pendency of Defendants' motion.

On August 14, 2020, the Court issued an Opinion and Order denying Defendants' motion to dismiss. ECF No. 34.

On September 4, 2020, Defendants filed their Answer to the Complaint. ECF No. 35.

2

In September 2020, the parties commenced vigorous and extensive discovery in the Action, including interrogatories, document requests, requests for admission, production of more than 200,400 pages of documents by Defendants and third parties affiliated with Defendants,[2] and production of over 3,300 pages of documents from Lead Plaintiff to Defendants.  Lead Counsel and Defendants' Counsel also held exhaustive discussions through letters, emails, and numerous telephonic meet and confer conferences about discovery requests, responses and objections to the requests, and various other discovery issues (several of which were submitted to the Court for resolution).  Between October 7, 2021, and December 1, 2021, Lead Plaintiff deposed the following nine fact witnesses:

- James Carey, Managing Director of Stone Point Capital LLC (AmTrust's private equity partner),
- Chaya Cooperberg, Chief People and Communication Officer, and AmTrust's most senior investor relations officer during the Class Period,
- Donald DeCarlo, AmTrust director and Chairman of AmTrust's Audit Committee during the Class Period,
- Evan Greenstein, Senior Vice President and Treasurer of AmTrust during the Class Period,
- Catherine Miller, SVP Governance and Regulatory Counsel of AmTrust during the Class Period,
- Zachary Wolf, Deputy CFO and Executive Vice President of Strategic Development during the Class Period,
- Defendant George Karfunkel, director and alleged controlling shareholder of AmTrust,
- Adam Karkowsky, Chief Financial Officer of AmTrust during the Class Period, and
- Defendant Barry Zyskind, Chairman, CEO and alleged controlling shareholder of AmTrust.

Fact discovery closed on December 3, 2021.

---

[2] The third parties produced documents pursuant to subpoenas served by Lead Plaintiff.  Lead Plaintiff also obtained documents produced by the SEC in response to a Freedom of Information Act request, and documents produced by the New York State Department of Financial Services in response to a Freedom of Information Law request. ¶ F.

In early 2021, the parties agreed to engage in private mediation in an attempt to resolve the Action.  In advance of the mediation, the parties exchanged mediation statements.  A mediation session before Robert Meyer was held on April 1, 2021.  Mr. Meyer, who is affiliated with JAMS, is an experienced trial lawyer, and has more than a dozen years of experience mediating complex business disputes, including many securities fraud class actions.  While the parties engaged in good-faith negotiations, they were unable to agree to settlement terms that day.  ¶ M.

On March 15, 2021, Lead Plaintiff filed his motion for class certification supported by an expert report on market efficiency from Professor Steven P. Feinstein.  ECF Nos. 43-45.  In connection with the motion, Defendants deposed Lead Plaintiff on April 15, 2021.  On April 30, 2021, Defendants opposed the motion and also filed a rebuttal expert report by their expert, Dr. Alok Khare.  ECF Nos. 48-49.  On June 1, 2021, Lead Plaintiff filed reply papers in further support of the motion, which included a rebuttal report from Professor Feinstein.  ECF No. 51-52.

On December 14, 2021, the parties appeared before the Court for a status conference and for a pre-motion conference related to two anticipated discovery motions to be brought by Lead Plaintiff, which resulted, among other things, in Lead Plaintiff filing a formal motion related to one of the discovery issues, which the parties fully briefed and which was fully submitted as of the date of the Stipulation.  ECF Nos. 74-79, 81-84.

In an Opinion and Order dated February 3, 2022 (ECF No. 80, the "Class Certification Order"), the Court granted the class certification motion and certified as a class:

> All persons who purchased Series A preferred stock of AmTrust Financial Services, Inc. ("AmTrust"), or AmTrust's Depositary Shares Representing 1/40th of a share of either AmTrust's Series B, C, D, E or F preferred stock [the "Preferred Stock"] on the open market on a U.S. stock exchange from January 22, 2018, to January 18, 2019, inclusive   excluding present and former executive officers of AmTrust and any parent, subsidiary, or affiliate of AmTrust, Barry D. Zyskind, George Karfunkel, and Leah Karfunkel and their

4

immediate family members (collectively, the "Excluded Persons") and the legal representatives, heirs, successors, or assigns of any such Excluded Person.

As part of the Order, the Court also appointed Lead Plaintiff and Lead Counsel as Class Representative and Class Counsel, respectively. *Id.* at 51.

Following the Class Certification Order, expert discovery commenced.  Initial expert reports were exchanged on March 7, 2022, wherein Lead Plaintiff served a report addressing damages by Professor Feinstein and wherein Defendants served a report addressing damages by Dr. Khare and a report addressing certain securities issues by Paul Mottola.  Rebuttal reports from Professor Feinstein and Dr. Khare were exchanged On April 6, 2022.  ¶ L.

As the foregoing shows, each side amassed substantial factual and expert discovery bearing on their respective claims and defenses and, given the advanced stage of the Action, the parties and their counsel were well-positioned to evaluate the merits and costs of continued litigation.

Armed with this knowledge, in early 2022, the parties agreed to resume mediation through Mr. Meyer and exchanged supplemental mediation statements addressing developments during discovery.  After weeks of continued arms-length negotiations with the assistance of Mr. Meyer, Mr. Meyer issued a double-blind mediator's proposal that the Action be settled for $13,000,000 in cash, which the parties accepted on April 19, 2022.  ¶ N.  The parties executed the Stipulation on June 22, 2022, and filed it with the Court the following day.  ECF 91-1.[3]

## III.    TERMS OF THE SETTLEMENT

This Settlement requires Defendants to pay, or cause to be paid, $13,000,000 in cash to the Escrow Account.  ¶¶ 1(oo), 7.  Once Taxes, Notice and Administrative Costs, Court-awarded Litigation Expenses, Court-awarded Attorneys' Fees, Court-approved Plaintiff Service Award,

---

[3] On July 12, 2022, Defendants' Counsel advised the Court that, on July 5, 2022, they served the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 et seq., pursuant to the Stipulation.  ECF 93.

and any other Court-approved costs or fees are deducted from the Settlement Fund, the remaining balance (*i.e.*, the Net Settlement Fund) will be distributed to Authorized Claimants pursuant to the Stipulation and Plan of Allocation. ¶ 10.  There will be no reversion to Defendants of any portion of the Settlement Fund.  ¶ 14.  In exchange, Lead Plaintiff and each Class Member will be deemed to have fully, finally, and forever waived, compromised, settled, released, resolved, relinquished, waived, and discharged any and all Released Plaintiff's Claims against Defendants and the other Defendants' Releasees, and will be forever barred and enjoined from prosecuting any and all Released Plaintiff's Claims against any of the Defendants' Releasees.  ¶ 4.[4]

The Stipulation also reflects that A.B. Data will be retained as the Claims Administrator subject to the Court's approval.[5]  According to the Stipulation, the Claims Administrator will, under Lead Counsel's supervision, disseminate notice to Class Members, and administer the Settlement, including but not limited to the process of receiving, reviewing, and approving or denying Claims and requests for exclusion (i.e., "opt outs") from the Class and the Settlement. ¶ 19.  The details of the Notice and Settlement administration are discussed below.

The Stipulation provides that the Settlement may be terminated within thirty days of this Court's refusal to preliminarily approve or finally approve of the Settlement or enter the Judgment anticipated under the Settlement, or within thirty days of the date upon which such a judgment is

---

[4] While the definition of "Released Claims" is typical of other securities class action settlements, it also includes exclusions ensuring that other pending or potential actions are not affected. *See* ¶ 1 (jj) (excluding claims "asserted in any ERISA or derivative action"; "of any person or entity who or which submits a request for exclusion that is accepted by the Court"; "arising from the purchase or sale of AmTrust's subordinated notes"; and "asserted in the dismissed consolidated putative class action styled *In re AmTrust Financial Services, Inc. Securities Litigation*, No. 1:17-cv-01545-LAK (S.D.N.Y.), on appeal as of the date of this Stipulation," among other exclusions).

[5] Lead Plaintiff selected A.B. Data after soliciting and evaluating proposals from multiple vendors.  A.B. Data has significant experience administering complex class action settlements, including securities fraud settlements. *See, e.g., In re Facebook Inc. IPO Securities Litigation*, Case No. 12-md-02389 (S.D.N.Y.) ($35 million settlement); *In re Allergan Generic Drug Pricing Securities Litigation*, Case No. 2:16-cv-09449 (CLW) (D.N.J.) ($130 million settlement); *In re GSE Bonds Antitrust Litigation*, Case No. 1:19-cv-01704 (S.D.N.Y.) ($387 million settlement). Moreover, in May 2022, A.B. Data was named a top Class Action Claims Administrator in the United States in *The National Law Journal's* "Best of" awards.

modified or reversed in any material respect on appeal. ¶ 36. Further, if valid opt-outs exceed the threshold provided in a confidential supplemental agreement executed contemporaneously with the Stipulation, Defendants have the right to terminate the Settlement. ¶ 37.

The Stipulation also anticipates that Lead Counsel will request attorneys' fees, reimbursement of litigation expenses, and request a Plaintiff Service Award for Lead Plaintiff ("Lead Counsel's Requests"), however such awards are not a condition or material term of the Settlement, nor are such Requests the subject of any agreement between the parties. ¶¶ 16-17.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

Strong judicial policy favors settlement of class actions in the Second Circuit. *See Oleniak v. Time Warner Cable*, Civil Action No. 12-CV-3971 (KPF), 2013 U.S. Dist. LEXIS 207945, at *13 (S.D.N.Y. December 17, 2013) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848, at *18 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). There is a "presumption of fairness, adequacy and reasonableness [that] may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116. Moreover, Courts have recognized that, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Oleniak*, 2013 U.S. Dist. LEXIS 207945 at *13 (citing *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Master File No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007)).

Rule 23(e) sets forth the procedures for the judicial approval of class action settlements. A motion for preliminary approval of the settlement is the first step, whereby the parties need only "provide the court with information sufficient to enable it to determine whether to give notice of

7

the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A).  Giving notice of such a settlement to the class is justified through "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019) (The preliminary approval process is governed by a "likelihood standard," requiring the Court to assess whether the parties have shown that "the court will likely be able to grant final approval and certify the class.").  The second factor is not applicable here because the Court has already certified the Class. ECF No. 80.

Rule 23(e)(2) lists the following criteria for evaluating the adequacy of a settlement:

> the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In addition to these factors, the Second Circuit also considers the factors set forth in *Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974).  *Payment Card*, 330 F.R.D. at 29.[6]  In undertaking this review, "a full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval." *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006).

---

[6] The *Grinnell* factors are:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.*

8

As discussed below, the proposed Settlement readily satisfies Rule 23(e)(2) and the *Grinnell* factors. Accordingly, it is respectfully submitted that the Settlement should be preliminary approved, and that Notice be sent to the Class in advance of the Settlement Hearing.

### A.  **Lead Plaintiff and Lead Counsel Have Adequately Represented the Class**

Lead Plaintiff and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently and vigorously prosecuting the Action for approximately three years. Before, and over the course of the Action, Lead Counsel, with the input and consultation of Lead Plaintiff (an experienced investor who heads an investment fund) carefully evaluated and developed a deep understanding of the strengths and weaknesses of their claims and Defendants' defenses. Lead Counsel, among other things: (a) investigated potential claims against Defendants before filing the Complaint; (b) prepared the Complaint and successfully opposed Defendants' motion to dismiss; (c) conducted extensive discovery, including (i) serving document requests, interrogatories, requests for admission, and third-party subpoenas (ii) meeting and conferring with Defendants and third parties on the scope of production, (iii) obtaining production of over 200,400 pages of written discovery, (iv) meeting and conferring with Defendants regarding various discovery disputes, several of which were submitted to the Court for resolution, (v) taking depositions of nine fact witnesses including various high-ranking executives and directors at AmTrust, including Defendants Zyskind and George Karfunkel, (vi) retaining experts to opine on market efficiency, damages, loss causation, and certain other issues, which included serving four expert reports by Steven P. Feinstein and analyzing Defendants' expert reports; (d) prepared and submitted mediation papers (for two separate mediation sessions) and analyzed and responded to Defendants' own mediation papers; and (e) engaged in two mediation sessions and follow-up settlement communications with Defendants, with the help of an experienced mediator. And, Lead

Plaintiff and Lead Counsel have no interests antagonistic to the Class. Lead Plaintiff and Lead Counsel are undoubtedly adequate representatives, as recognized by Defendants when they declined to contest adequacy in their opposition to class certification, and as recognized by the Court. *See* Class Certification Order at 17 ("Here, both Plaintiff and his counsel are adequate representatives of the proposed class.").

Accordingly, Lead Plaintiff respectfully submits that the Court should find that Rule 23(e)(2)(A)'s adequacy of representation prong has been met.

### B.    The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires that a proposed settlement be procedurally adequate *i.e.*, negotiated at arm's length. A settlement that has been negotiated at arm's length has been well-recognized to be fair and reasonable. *See, e.g., In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Use of a mediator further supports a finding that a settlement was negotiated at arm's length. *See D'Amato*, 236 F.3d at 85 (a "mediator's involvement" during negotiations "helps to ensure that the proceedings were free of collusion and undue pressure").

As discussed earlier, the mediation process was overseen by a highly experienced mediator. Counsel to both parties prepared and presented the mediator with two rounds of comprehensive submissions concerning their respective views on the strengths and weaknesses of the litigation, first in early 2021 and later in early 2022 upon the close of fact discovery. Further, the settlement was the result of a double-blind mediator's proposal that the parties accepted.

### C.    Relief Provided for the Class Is Adequate

In assessing a settlement for preliminary approval, courts consider "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and

weaknesses of the case." *City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, *26 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A court need only determine whether the settlement falls within a range of reasonableness that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Pantelyat v. Bank of Am., N.A.*, 16-cv-8964 (AJN), 2019 U.S. Dist. LEXIS 15714, *22 (S.D.N.Y. Jan. 31, 2019).

The $13,000,000 recovery presents an excellent result for the Class and is well within the range of possible approval, as it provides Class Members, whose claims have been pending since early 2019, with a prompt and substantial tangible recovery. The $13 million Settlement Amount represents i) approximately 32% of the Class's alleged maximum estimated aggregate damages as calculated by Lead Plaintiff's damages expert using a traditional "one-day drop" model (approximately $40.9 million), or ii) approximately 27% of maximum aggregated damages under the expert's more aggressive two-day drop model, with the second day offset by a bounce-back in stock price on the third day after the corrective disclosure (approximately $47.4 million). Importantly, these percentages assume, arguendo, (i) Lead Plaintiff was able to prove every aspect of his claims on liability, (ii) Lead Plaintiff's damages model was accepted by the jury in full, and (iii) after a judgment in favor Lead Plaintiff and the Class, all damaged Class Members filed claims on all shares purchased during the Class Period and all such Claims were approved, regardless of any challenges from Defendants with respect to specific Claims (e.g., arguments that claimed losses were inflated or non-existent due to a Claimant's sale of Preferred Stock during the Class Period, or other legal defenses uncovered during the claims process). Defendants strenuously contested not only liability, but also among other things, Lead Plaintiff's loss causation and damages theories. Moreover, any judgment after trials and appeals would be subject to a claims

11

process, which itself could be contested by Defendants (as described above), if the case was not settled. If not for the Settlement, there was a significant risk that there could be no recovery or an aggregate recovery to the Class significantly less than $13 million. And, as further described below, the $13 million risk-free Settlement represents an unusually significant percentage of the range of potential provable damages in a securities fraud class action.

As the benefits conferred on the Class by the Settlement outweigh the risks, delay, and considerable costs of further litigation, including summary judgment and pre-trial motions, trial, appeals, and any contested claims process, the relief provided by the Settlement is adequate and supports preliminary approval.

### D.    The Proposed Method For Distributing Relief Is Effective

The Notice plan, Plan of Allocation, and the claims administration process are effective. As discussed below, the Notice plan includes a Postcard Notice to be mailed to potential Class Members, a Summary Notice to be published on a national wire service, and a Settlement Website where the Notice (a.k.a., the "Longform Notice") and Claim Form can be downloaded. ¶ 20.

The Settlement will be effectuated with the assistance of the Claims Administrator, who will employ a well-established protocol for the processing of securities claims. Class Members will submit, in paper or electronic form, a Claim, in accordance with the instructions for those submissions and supported by designated or acceptable documents that demonstrate a Claimant's loss. *Id.* ¶ 26 (a). All Claims must be submitted by the date set by the Court in the Proposed Order and specified in the Postcard Notice, Summary Notice, and Longform Notice. *Id.* ¶ 26 (b).[7] Based on the information provided by Claimants, the Claims Administrator will determine the extent, if any, to which each Claim will be allowed. *Id.* ¶ 26 (c). Before rejecting a Claim in whole or in

---

[7] Proposed drafts of the class notice documents are attached as exhibits to the Stipulation.

part, the Claims Administrator will communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim submitted. *Id.* ¶ 26 (d). Any claim disputes that cannot be resolved will be presented to the Court for resolution. *Id.* ¶ 26 (e).

The Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund as described in the Plan of Allocation. *Id.* ¶ 22. The Plan of Allocation (set forth on page 4 of the Notice) was developed in consultation with both the Plaintiff's damages expert and the Claims Administrator and is based on Lead Plaintiff's damages expert's estimated amount of alleged artificial inflation in the per-share prices of Preferred Stock that was caused by Defendants' allegedly false or misleading statements or omissions. In calculating the estimated artificial inflation allegedly caused by those statements or omissions, Plaintiff's damages consultant considered the price changes in Preferred Stock in reaction to the public disclosures that corrected the alleged misrepresentations and omissions, and considered whether any of the price changes were attributable to non-fraud related information.[8] The Plan also takes into account whether, and to what extent, Claimants sold Preferred Stock during the time period Plaintiff alleges that the price of Preferred Stock was inflated. Thus, the Plan of Allocation, which adopts a procedure to equitably distribute the Net Settlement Fund on a *pro rata basis*, is fair, reasonable and adequate. *See e.g.*, *In re Credit Default Swaps Antitrust Litig.*, 13md2476 (DLC), 2016 U.S. Dist. LEXIS 54587, at *13-14 (S.D.N.Y. April 26, 2016) (approving plan that estimated price inflation caused by the defendants' conduct and calculated "each claimant's recovery based on its pro rata share of the available Settlement Funds in relation to the recoveries to which all claimants who have submitted a valid claim are entitled").

---

[8] The damages expert estimated losses per share for each series of Preferred Stock as follows: Series A: $5.15; Series B: $5.32; Series C: $6.39; Series D: $5.26; Series E: $6.06; Series F: $5.16.

After the Settlement reaches its Effective Date and completion of the Claims Administrator's work calculating the Authorized Claimants' claims, Lead Plaintiff will move this Court for a Class Distribution Order: a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account. ¶ 28. If there is any balance remaining in the Net Settlement Fund six months after the initial distribution, the Claims Administrator will, if feasible and economical, redistribute that balance among Authorized Claimants who have cashed their initial distributions, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund. Otherwise, the balance will be distributed to a non-sectarian 501(c)(3) organization to be recommended by Lead Counsel and approved by the Court. ¶ 14.

**E.     The Anticipated Attorneys' Fees and Expenses Are Reasonable**

As set forth in the Notice, Lead Counsel will ask the Court to award attorneys' fees of up to $4,332,900 (33.33% of the Settlement Fund), plus reimbursement of costs and expenses of up to $460,000 for their work litigating the case and negotiating the Settlement. Should Counsel ultimately make this request, it would be reasonable and in line with other recent fee awards in the Second Circuit. *See, e.g., In re PPDAI Grp. Inc. Sec. Litig.*, 18-CV-6716 (TAM), 2022 U.S. Dist. LEXIS 11427 (E.D.N.Y. Jan. 21, 2022) (awarding 33.33% of $9 million recovery, plus expenses); *In re Deutsche Bank AG Sec. Litig.,* Master File No. 1:09-cv-01714-GHW-RWL*,* 2020 U.S. Dist. LEXIS 103134, at *6-7 (S.D.N.Y. June 11, 2020) (awarding one-third of $18.5 million recovery, plus expenses); *Providence*, 2014 U.S. Dist. LEXIS 64517, at *2-3 (awarding 33% of $15 million recovery, plus expenses).

14

Lead Counsel also advises the Court of the existence of a fee-sharing agreement between Lead Counsel and Martin Kofroň, an attorney at law registered with the Czech Bar, whereby Mr. Kofroň will be paid 10% of any net fees awarded to Lead Counsel.  *See* Local Civ. R. 23.1 (requiring fee applicants in class actions "to disclose any fee sharing agreements with anyone").[9] The agreement was reached before the filing of this Action, and with the knowledge and approval of Lead Plaintiff.  Before the filing of this Action, Mr. Kofroň, who is a former managing attorney at KPMG, assisted Lead Plaintiff (a Czech national) in understanding potential legal processes and remedies under U.S. law arising from AmTrust's decision to delist the Preferred Stock, and since the filing of the Action, has maintained communication with Lead Counsel and Lead Plaintiff regarding its subject matter.  Without Mr. Kofroň's involvement, there would be no case, and no recovery for the Class.[10]

Lead Counsel will also seek a Plaintiff Service Award payment of up to $15,000 to be paid to the Lead Plaintiff for his service on behalf of the Class and for his reasonable costs and expenses relating the representation of the Class.  As will be described more fully at the time of Lead Counsel's Requests, Mr. Martínek's work on behalf of the Class has been exemplary and has

---

[9] Mr. Kofroň's firm's website is https://www.mk-ak.cz/.

[10] Due to an oversight, the answer to Question 15 of the draft Longform Notice attached to the Stipulation ("How will the lawyers be paid?"), omitted information related to Mr. Kofroň, information that Lead Counsel, consistent with the Local Rule, wishes to include in the Notice, a revised version of which is attached herein, and which reflects as follows:

> Lead Counsel will ask the Court to award attorneys' fees from the Settlement Fund in an amount not to exceed $4,332,900.00 (i.e., 33.33% of the Settlement Fund) and reimbursement of costs and expenses of up to $460,000.00 for their work litigating the case and negotiating the Settlement, plus interest on such fees and expenses at the same rate as earned by the Settlement Fund).  ***While the only anticipated application for attorneys' fees is the one to be made by Lead Counsel, Lead Counsel has entered into a fee-sharing agreement with Martin Kofroň, an attorney at law registered with the Czech Bar, whereby Mr. Kofroň will be paid 10% of any net fees awarded to Lead Counsel.***

Ex. B to Decl. (Addition reflected in italics).  Relatedly, Paragraph 4(c) of the proposed Order originally attached to the Stipulation had directed that the Longform Notice be "substantially in in the form" as attached to the Stipulation.  However, in light of the proposed change to the Notice, the Proposed Order has been revised to clarify that the Notice to be approved is the revised one.  Defendants' counsel do not object to these revisions.

15

benefitted the litigation.  A $15,000 award would also be reasonable and in line with service awards granted in the Second Circuit.  *See e.g., Moukengeshcaie v. Eltman*, No. 14 CV 7539 (MKB) (CLP), 2020 U.S. Dist. LEXIS 71018, *19-20 (E.D.N.Y. Apr. 21, 2020) (approving plaintiff award of $15,000 in a $633,500 settlement); *Lea v. Tal Educ. Group*, No. 18-CV-5480 (KHP), 2021 U.S. Dist. LEXIS 229314, *39-40 (S.D.N.Y. Nov. 30, 2021) (approving award of $15,000 between two lead plaintiffs in $7.5 million settlement).

As noted earlier, the Court's ultimate rulings on Lead Counsel's Requests are not a condition or material term of the Settlement, nor are the Requests the subject of any agreement among the parties. ¶¶ 16-17.

### F.    Equitable Treatment of Class Members Relative to One Another

The Court also considers whether "the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D).

In this case, the Settlement Agreement's release language (*see* ¶¶ 1(l),1(bb), 1(hh), 1(ii), 1(jj), 1(kk), 1(ll), 1(uu)) treats all Class Members equitably relative to one another.  Subject to Court approval, all Class Members will be giving Defendants an identical release.  Further, the Plan of Allocation, set forth in the Notice, treats all Class Members equitably based on the timing of their acquisitions and sales of Preferred Stock, and gives specific attention to the series of Preferred Stock purchased or sold by a Claimant, given Plaintiff's damages expert's opinion that losses per share differed across each series.  *See* n. 8, *supra*.  The Plan describes how the Net Settlement Fund will be allocated equitably among Authorized Claimants on a *pro rata* basis. Therefore, this factor weighs in favor of preliminary approval.

16

### G.  The *Grinnell* Factors Are Also Met

#### 1.  The Complexity, Expense and Likely Duration of the Litigation Supports Approval of the Settlement

The proposed Settlement reflects the inherent risks, costs and delay associated with this complex class action.  Given the risks of continued litigation and the time and expense that would be incurred to prosecute the case through trial and appeals, the Settlement Amount is a meaningful recovery that is in the Class's best interests.

Though Lead Plaintiff and Lead Counsel believe they could have succeeded in establishing each of the elements of their alleged claims, Lead Plaintiff would be required to prove all elements of his claims to prevail, while Defendants would need to only succeed on one defense to potentially defeat the entire action.  Thus, there is no guarantee that Lead Plaintiff and the Class would prevail, and even if they did, how the Court's rulings on any motion for summary judgment and complex expert testimony matters would affect alleged damages, or how the case might be presented to a jury. Even if Lead Plaintiff succeeded at summary judgment and trial, Defendants would almost certainly file an appeal, which could further extend the lawsuit for years, and risk reversal.

Here, Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged in the Litigation.  Defendants also have denied and continue to deny that Lead Plaintiff or Class Members have suffered damage or were otherwise harmed by the conduct alleged in the Litigation.

As noted, the Settlement is reasonable and is well within the range of possible approval, representing approximately 32% or 27% of the Class's alleged maximum estimated aggregate damages (depending on the model used by Lead Plaintiff's expert).  The risks and complexities in prosecuting this securities fraud action through trial and appeals and in any contested claims process, as described above, underscore the desirability of this Settlement.

17

### 2.    The Reaction of the Class to the Settlement

The Class's reaction is generally not considered prior to disseminating notice.  *See In re Warner Chilcott Ltd. Sec. Litig.*, 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840, at *5 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this [*Grinnell*] factor is premature.").  Lead Plaintiff notes he has actively participated throughout the prosecution of the case and believes the Settlement is in the best interests of the Class.

### 3.    The Stage of the Proceedings

As already noted, at the time the Settlement was reached, all fact discovery was complete and comprehensive expert discovery was nearly complete, with only expert depositions remaining. The resultant accumulation of information permitted Lead Plaintiff and Lead Counsel to knowledgably evaluate the merits of their case, and the Settlement.

### 4.    The Risk of Establishing Liability and Damages

While Lead Plaintiff and Lead Counsel believe that Lead Plaintiff would have been successful in defeating any summary judgment motion made by Defendants and would be successful at trial, there was a risk that Defendants would be partially or fully successful at summary judgment or at trial in proving that the alleged false statements were not materially misleading or were not made with the requisite scienter.  There was also a risk that Defendants would be successful in proving that the Class was not damaged or that damages were significantly less than what was claimed, or that Defendants would appeal any unfavorable decisions.

### 5.    The Costs and Risks of Maintaining the Class Action Through Trial

Defendants vigorously opposed Lead Plaintiff's class certification motion, but the Court ruled in favor of the Lead Plaintiff and certified the Class.  Lead Counsel therefore believes that maintaining class action status through trial was likely.  However, under Rule 23(c)(1), a class certification order may be altered or amended at any time before a decision on the merits, meaning

18

that Defendants could have moved to decertify the Class or shorten the Class Period up until a jury verdict. Moreover, Defendants could have contested class certification on appeal. *See e.g., Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) (reversing class certification order).

### 6. The Ability of Defendants to Withstand a Greater Judgment

Courts also consider the defendants' ability to withstand a greater judgment. However, this factor does not undermine the reasonableness of a settlement, when all other factors weigh in favor of it. *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 U.S. Dist. LEXIS 152275, at *19 (E.D.N.Y. Oct. 23, 2012) ("[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement."). Therefore, while Lead Plaintiff believes that Defendants could withstand a greater judgment, the Court should preliminarily approve the Settlement given all other factors.

### 7. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

"In analyzing the size of the settlement compared to the best possible recovery and in view of the attendant risks, the issue for the Court is not whether the Settlement represents the best possible recovery, but how the Settlement relates to the strengths and weaknesses of the case." *In re Flag Telecom Holdings Ltd. Sec. Litig.*, Master File No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *57 (S.D.N.Y. Nov. 8, 2010). The Court only need determine the "range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Bear Stearns*, 909 F. Supp. 2d at 259, 269 (S.D.N.Y. 2012).

As noted, the $13 million Settlement Amount represents either approximately 32% or 27% of the Class's alleged maximum estimated aggregate damages, as calculated by Lead Plaintiff's

damages expert, depending on the model used.  This is an excellent result for the Class given that a recent report from National Economic Research Associates, Inc. ("NERA") identified the median percentage recovery in settlements of class actions during the period of December 2012 through December 2021 involving aggregate investor losses between $20 million to $49 to be **5.2%.**  *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* at 23, Figure 21 (NERA Jan. 25, 2022), available at www.nera.com/publications/archive/2022/recent-trends-in-securities-class-actionlitigation--2021-full-y.html.  NERA also noted that in 2021, the median settlement value for all securities class actions (excluding merger objection cases, settlements of over $1 billion, and settlements for $0 to the class) was $8 million.  *Id.* at 20, Figure 20.

Similarly, according to Cornerstone Research, in 2021, the median settlement of a securities class action was $8.3 million and the median settlement as a percentage of estimated damages in Rule 10b-5 class actions involving damages between $25 and $74 million was **7.2%.** *See* Securities Class Action Settlements - 2021 Review and Analysis at 4 and 6, Figure 5 (Cornerstone Research 2022), available at www.cornerstone.com/wpcontent/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-andAnalysis.pdf.    The same figure for settlements between 2012 to 2020 was **7.3%.  Id.**

Accordingly, given the case's uncertainties and the likelihood of it dragging on for an indefinite number of years, a recovery of 32% or 27% of Plaintiff's best-case damages (depending on the model) is well within the range of reasonableness.  *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668, *16 (S.D.N.Y. Nov. 9, 2015) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984) *aff'd* 818 F.2d 145 (2d Cir. 1987)  ("The fact that the settlement amount may equal but a fraction of potential

20

recovery does not render the settlement inadequate. Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.").

Accordingly, it is respectfully submitted that this factor favors preliminary approval.

## V.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA REQUIREMENTS

Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1)(b) (noting that the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal"). In order to satisfy due process, the notice must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Secs. Ltd. Pshps. Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y Feb. 1, 1996).

Here, as reflected in the Proposed Order, Lead Counsel proposes to provide Class Members notice through: (i) mailing of the Postcard Notice to potential Class Members at the addresses set forth in the records provided or caused to be provided by AmTrust, or who otherwise may be identified through further reasonable effort; (ii) publication of the Summary Notice over a national wire service; and (iii) a Settlement Website, from which copies of the Longform Notice, Claim Form and Postcard Notice, as well as the Stipulation, the Complaint, the Court's Opinion and Order denying Defendants' motion to dismiss the Complaint, the Class Certification Order, and a copy of the Court's Preliminary Approval Order can be downloaded or viewed.

The proposed Postcard Notice and Summary Notice contain summaries of the terms of the Settlement and instructions for submitting a Claim Form or an objection to the Settlement, and will direct Class Members to the Settlement Website and the Notice for further information. The

21

Longform Notice and Proof of Claim form will also be available by mail or email to Class Members upon request to the Claims Administrator.

The proposed Longform Notice provides more detailed information concerning the Settlement, including: (a) the formula used to calculate payments to Class Members, and a description of the proposed Plan of Allocation; (b) instructions, requirements, and deadlines for objections to, or requests to opt out of, the Settlement, including that objections and opt-out requests must be mailed to a specified address and received by a specified deadline; (c) Class Members' right to appear at the Settlement Hearing in person or through an attorney, and the requirements to do so; and (d) other information required by the PSLRA, including (i) the average per share amount of the Settlement Fund expected to be distributed to the Class, (ii) the amount of attorneys' fees and expenses to be requested and a brief explanation supporting the fees and costs sought; (iii) contact information for Lead Counsel; and (iv) "a brief statement explaining the reasons why the parties are proposing the settlement." *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Accordingly, the proposed notice plan satisfies Rule 23, the PSLRA, and due process.

## VI.    <u>PROPOSED SCHEDULE FOR FINAL APPROVAL</u>

Lead Plaintiff respectfully submits the following schedule for the Court's review and approval, which summarizes certain important deadlines to be identified in the Proposed Order:

| Event | Date |
|---|---|
| Last day to mail Postcard Notice and publish the Notice, Claim Form and Postcard Notice on the Settlement Website ("Notice Date") | 20 business days after entry of the Preliminary Approval Order.  Proposed Order ¶¶ 4(b)-(c) |
| Last day to publish Summary Notice | 10 business days after the Notice Date. Proposed Order ¶¶ 4(d) |
| Last day for filing and serving opening papers in support of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's Requests | Filed and served no later than 35 calendar days before the Settlement Hearing.  Proposed Order ¶ 25 |
| Last day for to file exclusion requests or objections | 21 calendar days before the Settlement Hearing.  Proposed Order ¶¶ 11, 14 |

| Event | Date |
|---|---|
| Last day for reply papers in response to the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's Requests | Filed and served no later than 7 calendar days before the Settlement Hearing. Proposed Order ¶ 25 |
| Settlement Hearing | Set by the Court under Fed. R. Civ. P. 23(e)(2), but in order to provide sufficient notice to the Class, no earlier than 90 calendar days after entry of the Preliminary Approval Order. |
| Last Day for Class Members to submit a Claim Form | 120 calendar days after the Notice Date. Proposed Order ¶ 8 |

## VII.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the Motion and issue an Order in the form proposed herein.

Dated: July 14, 2022

Respectfully submitted,

**WOLF POPPER LLP**

By: *Adam J. Blander*
Carl L. Stine
Patricia I. Avery
Adam J. Blander
Radha Raghavan
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600

*Attorneys for Class Representative
Jan Martínek and the Class*

23