**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JAN MARTÍNEK,<br><br>                    Plaintiff,<br><br>v.<br><br>AMTRUST FINANCIAL SERVICES, INC.,<br>BARRY D. ZYSKIND, GEORGE KARFUNKEL,<br>and LEAH KARFUNKEL,<br>                    Defendants. | **Case No. 19 Civ. 8030 (KPF)** |

### NOTICE OF PROPOSED CLASS ACTION SETTLEMENT[1]

**If you purchased AmTrust Financial Services Inc. ("AmTrust") preferred stock on a U.S. open market between January 22, 2018, and January 18, 2019, inclusive (the "Class Period"), and are not otherwise excluded from the Class (see Question 6 below) you could receive a payment from a class action settlement.**

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- This Longform Notice of Proposed Class Action Settlement ("Notice") is given pursuant to an order issued by the United States District Court for Southern District of New York (the "Court").  This Notice is informing you of the proposed settlement of the above-captioned class action lawsuit (the "Litigation") for $13,000,000.00 in cash (the "Settlement") and the hearing (the "Settlement Hearing") to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, as set forth in the Stipulation by and between Lead Plaintiff Jan Martínek ("Lead Plaintiff") and the Class (defined herein), on the one hand, and AmTrust, and Individual Defendants Barry D. Zyskind, George Karfunkel, and Leah Karfunkel (collectively with AmTrust,  "Defendants"), on the other hand.

- The Settlement resolves a lawsuit in which Lead Plaintiff alleged alleges that Defendants committed securities fraud in connection with statements related to whether AmTrust's Series A preferred stock or AmTrust's Depositary Shares Representing 1/40th of a share of either AmTrust's Series B, C, D, E or F preferred stock (hereinafter, the "Preferred Stock") would continue to be listed on the New York Stock Exchange ("NYSE") following the Individual Defendants' purchase of all of AmTrust's common stock that they did not already own, and that the Class suffered losses as a result.  Defendants expressly deny all charges of wrongdoing or liability.

- This Notice is intended to inform you of the proposed Settlement and what steps you may take in relation to it.  This Notice is NOT an expression of any opinion by the Court as to the merits of the claims or defenses asserted in the Litigation or that Defendants engaged in any wrongdoing.

- Based on Lead Plaintiff's damages expert's estimate of the number of shares of Preferred Stock purchased or acquired during the Class Period that may have been affected by the conduct at issue in the Action, and assuming that **all** Class Members elect to participate in the Settlement, the estimated average recovery (before the deduction of any Court-approved fees, expenses, costs, or other awards as described in this Notice) is $1.38, $1.48, $1.68, $1.49, $1.61, and $1.42 per affected share of Class A, Class B, Class C, Class D, Class E and Class F Preferred Stock.  Class Members should note, however, that the foregoing average recoveries per share are only estimates. Some Class Members may recover more or less than these estimated amounts depending on, among other factors, when and at what prices they purchased/acquired or sold their stock, and the total number and value of valid Proof of Claim Forms submitted. Distributions to Class Members will be made based on the Plan of Allocation set forth below or such other plan of allocation as may be ordered by the Court.

- The Parties disagree on both liability and damages and do not agree on the amount of damages per security, if any, that would be recoverable if Lead Plaintiff were to prevail in the Litigation.  Defendants deny that the Class has suffered any damages.

- Lead Counsel have litigated this matter on a contingent basis and advanced all costs and expenses incurred on behalf of the Class. They will ask the Court for attorneys' fees up to $4,332,900.00 (33.33% of the Settlement Fund) and reimbursement of costs and expenses of up to $460,000.00 for their work litigating the case and negotiating the Settlement, and a Plaintiff Service Award (described below) of up to $15,000 (collectively, "Lead Counsel's Requests").  If approved, these amounts will be deducted from the $13,000,000.00 Settlement Amount. Assuming Lead Counsel makes the requests in the amounts reflected above, and assuming Counsel requests the maximum amounts reflected above and the Court grants these requests in full, the estimated net average recovery

---

[1] This Notice incorporates by reference the definitions in the Stipulation of Settlement dated June __, 2022 (the "Stipulation"), available on the Settlement Website. All capitalized terms used, but not defined herein, shall have the same meaning as in the Stipulation.

from the Settlement would be $0.87, $0.93, $1.06, $0.94, $1.01, and $0.89 per affected share of Class A, Class B, Class C, Class D, Class E and Class F Preferred Stock (assuming claims are submitted on behalf of **all** shares).

- The Court has not yet approved the Settlement.  Payments will be made only if the Court approves the Settlement and after any appeals are resolved.  Please be patient.

- **Your legal rights are affected whether you act or don't act.  Read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A PROOF OF CLAIM FORM, <u>POSTMARKED</u> NO LATER THAN _____, 2022** | You must submit a Proof of Claim Form (synonymous with "Claim Form"), either by mail or online, pursuant to the instructions below, to receive a payment under the Settlement. If you submit a Claim Form and supporting documentation, the Claims Administrator – A.B. Data, Ltd. – will determine if you are entitled to a payment under the Settlement. |
| **OBJECT TO THE SETTLEMENT OR ANY RELATED ASPECT, TO BE <u>RECEIVED</u> NO LATER THAN _____, 2022** | If you do not like the proposed Settlement, the Plan of Allocation, or any of Lead Counsel's Requests, you may write to the Court and explain why. Even if you object to the Settlement, you can still submit a Claim Form as long as you do not opt out. You must submit a Claim Form if you want money from the Settlement Fund. |
| **SUBMIT A REQUEST FOR EXCLUSION, TO BE <u>RECEIVED</u> NO LATER THAN _____, 2022** | If you exclude yourself (i.e. "opt out") from this case, you will not get any of the benefits of the Settlement (i.e., no money from the Settlement Fund). But you will retain the right to sue Defendants on your own, at your own expense, relating to the statements they made during the Class Period. |
| **GO TO THE HEARING** | You may ask to speak in Court about the fairness of the Settlement, the Plan of Allocation, or any of Lead Counsel's Requests. |
| **DO NOTHING** | If you do nothing, you will not get any money from the Settlement Fund, AND you give up all your rights to sue Defendants on your own about the legal issues in this case. |

For more information, please 1) visit the Settlement Website at www.AmTrustPreferredStockLitigation.com; 2) or contact the Claims Administrator at AmTrust Preferred Stock Litigation, c/o A.B. Data, Ltd., P.O. Box [NUMBER] Milwaukee, WI  53217 or at [PHONE] (Toll Free) or at info@AmTrustPreferredStockLitigation.com; 3) or contact Lead Counsel, Carl L. Stine of Wolf Popper LLP at 845 Third Avenue, New York, New York 10022 or at (212) 759-4600).

## BASIC INFORMATION

### 1. Why did I get this Settlement Notice package?

You or someone in your family may have purchased or otherwise acquired AmTrust Preferred Stock during the Class Period.  The Court directed that this Notice be sent to Class Members because they have a right to know about a proposed Settlement of this class action lawsuit, and about all of their options, before the Court decides whether to approve the Settlement and Lead Counsel's Requests.  If the Court approves the Settlement and any appeals are resolved, the court-approved Claims Administrator will make the payments that the Settlement allows.

### 2. What is this lawsuit about?

This is a class action against Defendants for alleged violations of federal securities laws, specifically Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j and 78t) and SEC Rule 10b-5.

The Court in charge of the case is the United States District Court for the Southern District of New York, and the case is titled *Jan Martínek, v. AmTrust Financial Services Inc., et al.,* Case No. 19 Civ. 8030 (KPF) (the "Litigation").  The Litigation is overseen by the United States District Judge Katherine Polk Failla.

On November 18, 2019, the Court appointed Jan Martínek as "Lead Plaintiff" under the Private Securities Litigation Reform Act of 1995.

Lead Plaintiff's Class Action Complaint (the "Complaint"), filed on August 28, 2019 alleged, among other things, that during the period between January 22, 2018 and January 18, 2019, both dates inclusive (the "Class Period"), Defendants made materially false and misleading

statements or omissions related to whether AmTrust's Preferred Stock would remain listed on the NYSE following the closing of a transaction whereby AmTrust, the common shares of which were then publicly traded, would be taken private by the Individual Defendants. The Complaint further alleged that Defendants' alleged misrepresentations caused the prices of Preferred Stock to be inflated during the Class Period and to decline when the alleged truth emerged on January 18, 2019, resulting in financial losses to those who purchased or acquired the preferred securities at the inflated prices. Lead Plaintiff sought to recover money and other relief for the Class.

On August 14, 2020, the Court issued an Opinion and Order denying Defendants' motion to dismiss the Complaint. On February 3, 2022, the Court issued an Opinion and Order granting Lead Plaintiff's motion to certify this Litigation as a class action. (See Question 5 below).

Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged in the Litigation. Defendants also have denied and continue to deny the allegations that Lead Plaintiff or Class Members have suffered damages.

The Court has not decided whether Defendants or Lead Plaintiff are correct. By ordering that this Notice be issued, the Court is not suggesting that Lead Plaintiff would win or lose this case.

## 3. Why is this a class action?

In a class action, one or more people called "Class Representatives" (in this case, Jan Martínek) sue on behalf of people who have similar claims. All persons (which means both natural persons and entities) with similar claims are called a "class" or "class members." Bringing a case, such as this one, as a class action allows the collective adjudication of many similar claims that might be economically too small to bring in individual actions. One Court resolves the issues for all class members, except for those who exclude themselves from the class. The Court certified the Class in this Litigation on February 3, 2022 (See Question 5 below).

## 4. Why is there a Settlement?

The Court did not decide in favor of Lead Plaintiff or Defendants. Instead, the lawyers for both sides have negotiated a Settlement that they believe is in the best interests of their respective clients, following the close of extensive fact discovery (including the deposition of Lead Plaintiff and depositions of nine witnesses affiliated with AmTrust, including Defendant Zyskind and Defendant George Karfunkel), and during the pendency of expert discovery, with the aid of a professional mediator. The Settlement allows both sides to avoid the risks and cost of lengthy and uncertain litigation, trial, and appeals, and permits Class Members to participate in the proposed Settlement, and sooner than if the case had proceeded through trial and appeals.

**Lead Plaintiff's and Lead Counsel's Reasons for Settlement:** In order to succeed at trial, Lead Plaintiff would have to prove, among other things, all essential elements of a violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j and 78t) and SEC Rule 10b-5 with respect to the false statements or omissions, including that (a) the alleged false statements or omissions were materially false or misleading; (b) Defendants acted with actual knowledge or recklessness (*i.e.* scienter) as to the falsity or misleading nature of the statements; and (c) Plaintiff and other Class Members suffered loss and were damaged as a result of Defendants' alleged conduct.

Lead Plaintiff and Lead Counsel anticipate that Defendants would seek to prove that Defendants did not violate any provision of the Exchange Act, including because the alleged statements or omissions were not materially false or misleading, Defendants did not act with the required scienter, and that their allegedly misleading statements or omissions did not cause Class Members damages (or that damages were significantly less than those claimed by Lead Plaintiff and his damages expert).

Lead Plaintiff and Lead Counsel believe that Lead Plaintiff would be successful in defeating any summary judgment motion made by Defendants and would be successful at trial. However, there is a risk that Defendants would be partially or fully successful at summary judgment or at trial in proving that the false statements or omissions were not materially false or misleading or were not made with the requisite scienter, that Defendants would be successful in proving that the Class was not damaged or that damages were significantly less than what Lead Plaintiff claims, or that Defendants would appeal any decisions in favor of Lead Plaintiff to the Second Circuit Court of Appeals, inviting further delay and risk in this litigation. Moreover, Lead Plaintiff and Lead Counsel recognizes the time, expense, and resources that a protracted trial would require, the uncertain outcome and the risk of any litigation, especially in complex actions such as this, and the inherent problems of proof under and possible defenses to the securities law violations asserted in the Litigation. Accordingly, and as explained below, Lead Plaintiff and Lead Counsel think that the Settlement is best for all Class Members.

**Defendants' Denial of Wrongdoing and Liability**: Defendants are entering into this Settlement solely to avoid the burden, inconvenience, and expense associated with continuing the Litigation. Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, and/or omissions alleged in the Litigation. Defendants also have denied and continue to deny the allegations that Lead Plaintiff or Class Members have suffered damage or were otherwise harmed by the conduct alleged in the Litigation. Defendants have asserted and continue to assert that, at all times, they acted in good faith and in a manner reasonably believed to be in accordance with all applicable rules, regulations and laws. Accordingly, the Settlement may not be construed as an admission of any wrongdoing by Defendants.

## WHO IS PART OF THE SETTLEMENT?

## 5. How do I know if I am a Class Member and part of the Settlement?

On February 3, 2022, the Court issued an order granting Lead Plaintiff's motion for class certification, and, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, entered an order certifying the following plaintiff class (the "Class"):

> All persons who purchased Series A preferred stock of AmTrust Financial Services, Inc. ("AmTrust"), or AmTrust's Depositary Shares Representing 1/40th of a share of either AmTrust's Series B, C, D, E or F preferred stock on the open market on a U.S. stock exchange from January 22, 2018, to January 18, 2019, inclusive, excluding present and former executive officers of AmTrust and any parent, subsidiary, or affiliate of AmTrust, Barry D. Zyskind, George Karfunkel, and Leah Karfunkel and their immediate family members (collectively, the "Excluded Persons") and the legal representatives, heirs, successors, or assigns of any such Excluded Person.

If one of the mutual funds in which you are invested purchased or otherwise acquired AmTrust Preferred Stock during the Class Period, that does not make you a Class Member. Contact your broker to see if you fall within the definition of a Class Member.

If you **sold** but did not purchase or otherwise acquire Preferred Stock during the Class Period, you are not a Class Member. You are a Class Member only if you purchased Preferred Stock on a U.S. open market during the Class Period.

**The Class definition does not include purchases of AmTrust common stock or subordinated notes.**

| **6. Are there exceptions to being included?** |
| --- |

Yes. Excluded from the Class and the Settlement are the Excluded Persons defined in the previous question. Also excluded from the Class and the Settlement are those persons who timely and validly request exclusion ("opt out") from the Class in accordance with the instructions provided in this Notice and set forth by the Court.

| **7. What if I am still not sure if I am included?** |
| --- |

If you are still not sure whether you are included, you can ask for free help. You can contact the Claims Administrator or Lead Counsel at the information provided on p. 2.

## WHAT ARE THE SETTLEMENT BENEFITS?

| **8. What does the Settlement provide?** |
| --- |

Defendants have agreed to pay, or cause to be paid, $13,000,000 in cash (the "Settlement Amount"). The Settlement Amount, plus interest earned from the date it is established (the "Settlement Fund"), less costs, fees, expenses, and awards (the "Net Settlement Fund"), will be divided among all eligible Class Members who send in valid and timely Proof of Claim Forms ("Authorized Claimants"). Costs, fees, expenses and awards include Court-approved attorneys' fees and Litigation Expenses, certain Notice and Administration Costs, including the costs of printing and mailing the notice documents to the Class, and the costs of claims administration; Taxes; and the Plaintiff Service Award.

In return, the Parties have agreed to dismiss the Litigation and Lead Plaintiff and all Class Members who do not exclude themselves from the Class agree to release, relinquish, all "Released Plaintiff's Claims" against Defendants and "Defendants' Releasees," whether or not Class Members submit timely and valid Proof of Claim Forms. Further information related to these definitions and the releases provided for in the Settlement—which you are strongly encouraged to read carefully—is available at Question 13 below and in the Stipulation, available on the Settlement Website.

## PLAN OF ALLOCATION

| **9. How will the Settlement be allocated among Class Members?** |
| --- |

If the Settlement becomes Effective, the Net Settlement Fund will be distributed to the Class according to a plan of allocation to be approved by the Court. As discussed above, the Settlement provides $13,000,000 in cash for the benefit of the Class. The Settlement Fund, after deduction of Court-approved fees, expenses, costs, taxes or awards, is the "Net Settlement Fund." If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible Authorized Claimants—i.e., members of the Class who timely submit valid Proof of Claim and Release forms that are accepted for payment by the Court—in accordance with the plan of allocation proposed in the paragraphs immediately below (the "Plan of Allocation" or "Plan") or such other plan of allocation as the Court may approve. The Court may approve this proposed Plan of Allocation, or modify it, without additional notice to the Class. Any order modifying the Plan of Allocation will be posted on www.AmTrustPreferredStockLitigation.com.

The objective of the Plan of Allocation is to distribute the Settlement proceeds equitably among those Class Members who allegedly suffered economic losses as a proximate result of the alleged wrongdoing. The Plan of Allocation is not a formal damage analysis and the calculations made in accordance with the Plan of Allocation are not equivalent to what Class Members would have recovered after a trial. Nor are the calculations in accordance with the Plan of Allocation estimates of the amounts that will be paid to Authorized Claimants under the Settlement. The computations under the Plan of Allocation are only a method to weigh, in a fair and equitable manner, the claims of Authorized Claimants against one another for the purpose of making *pro rata* allocations of the Net Settlement Fund.

The Plan of Allocation was developed based on Lead Plaintiff's damages consultant's estimated amount of alleged artificial inflation in the per

share prices of Preferred Stock that was caused by Defendants' allegedly false or misleading statements or omissions. In calculating the estimated artificial inflation allegedly caused by those statements or omissions, Plaintiff's damages consultant considered the price changes in Preferred Stock in reaction to the public disclosures that allegedly corrected the alleged misrepresentations and omissions, and considered whether any of the price changes were attributable to non-fraud related information.

In this case, Lead Plaintiff alleges that Defendants' allegedly false statements or omissions during the period from January 22, 2018, through and including January 18, 2019, had the effect of artificially inflating the price of Preferred Stock.[2]

In order to have a "Recognized Loss" under the Plan of Allocation, shares of Preferred Stock must have been purchased or otherwise acquired during the Class Period and not sold before January 18, 2019.

Based on the formulas stated below, a "Recognized Loss Amount" will be calculated for each purchase or acquisition of Preferred Stock on a U.S. open market during the Class Period that is listed on the Proof of Claim and Release form and for which adequate documentation is provided. Such "Recognized Loss Amounts" will be calculated separately for each series of Preferred Stock and then aggregated across all of an Authorized Claimant's purchases or acquisitions of all series of Preferred Stock during the Class Period to determine the total "Recognized Loss" for each Authorized Claimant.

Under Lead Plaintiff's theory of the case, any Class member who was a net seller during the Class Period of shares in any individual series of Preferred Stock (regardless of when those shares were purchased), avoided a loss on those net shares by selling those net shares during the Class Period at an inflated price, before the release of the allegedly corrective information at the end of the Class Period. Thus, any loss avoided with respect to any series of Preferred Stock will be offset against that Class member's Recognized Loss Amount on any other series of Preferred Stock on which that Class member has a Recognized Loss Amount, in calculating that Class members' Recognized Loss Amount. The offset shall be equal to the net shares sold during the Class Period with respect to each series of Preferred Stock multiplied by the lesser of (i) the inflation per share with respect to that series of Preferred Stock (set forth in footnote or 2) the sale price of those shares per share minus the 90-day average trading price of that series of Preferred Stock starting on January 22, 2019 (*see* footnote 3)

The Recognized Loss Amount with respect to each individual series of Preferred Stock shall be calculated as follows: Preferred Stock purchased or otherwise acquired between January 22, 2018 and January 18, 2019 with respect to each series of Preferred Stock, and:

(a)     Sold during the Class Period (January 22, 2018 through January 18, 2019), inclusive, the Recognized Loss Amount per share is zero.

(b)     Held at the end of trading on January 18, 2019, and sold during the 90-day trading period after the end of the Class Period (which begins on January 22, 2019, the first trading day after January 18, 2019), the Recognized Loss Amount is that number of net shares purchased during the Class Period with respect to each series of Preferred Stock multiplied by the lesser of:

   a.   The inflation per share with respect to each series of Preferred Stock (set forth in footnote 3)[3]; or

   b.   the difference between the purchase or acquisition price per share and the mean per-share closing price of that series of Preferred Stock between the first trading day after the end of the Class Period through the date of sale of that series of Preferred Stock, as found in Table A, which is available on the Settlement Website.[4]

(c)     Held through April 18, 2019 (the last day of the 90-day period after the Class Period), the Recognized Loss Amount shall be the lesser of:

   a.   The inflation per share with respect to each series of Preferred Stock (set forth in footnote 3); or

   b.   the difference between the purchase or acquisition price per share and the average closing price of that series of Preferred Stock between January 22, 2019 and April 18, 2019, as found in Table A (*see* footnote 3).

The Plan of Allocation also includes the following provisions:

---

[2] Any transactions in Preferred Stock executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.

[3] The damages consultant estimated losses per share for each series of Preferred Stock as follows:

Series A: $5.15; Series B: $5.32; Series C: $6.39; Series D: $5.26; Series E: $6.06; Series F: $5.16.

[4] Under Section 21(D)(e)(1) of the Exchange Act, "in any private action arising under this Act in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market. [However,] "if the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security." Consistent with the requirements of the statute, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Preferred Stock during the 90-day look-back period. The mean (average) closing price during this 90-day look-back period is shown in Table A.

1. There shall be no Recognized Loss Amount attributed to any Preferred Stock purchased on a foreign (non-U.S.) exchange.

2. The calculation of Recognized Loss shall be made separately with respect to each series of Preferred Stock and then aggregated for each Class member.

3. Purchases or acquisitions and sales of Preferred Stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance, or operation of law of Preferred Stock during the Class Period shall not be deemed a purchase, acquisition, or sale of Preferred Stock for the calculation of a Recognized Loss Amount, unless (i) the donor or decedent purchased or otherwise acquired such shares of Preferred Stock during the Class Period; (ii) no Proof of Claim and Release form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of Preferred Stock; and (iii) it is specifically so provided in the instrument of gift or assignment.

4. The following matching principle will be applied if you have both purchases/acquisitions and sales of Preferred Stock during the Class Period. If a Class Member made multiple purchases, acquisitions, or sales of a series of Preferred Stock during or after the Class Period, the Preferred Stock sold will be matched, in chronological order, against the first Preferred Stock of that series purchased or acquired during the Class Period regardless of the order of the transaction (First-in, First-Out, or "FIFO"). Thus, a share sold during the Class Period may be matched against a subsequent share purchased during the Class Period. Based on Lead Plaintiff's theory of the case, both transactions would have been effectuated at an inflation price, and the order of the transactions is irrelevant to its economic consequences. Shares purchased prior to the Class Period and held as of the beginning of the Class Period shall not be considered in the Recognized Loss calculation other than with respect to the calculation of net shares sold during the Class Period.

5. Class Members who do not submit a valid and timely Proof of Claim and Release form will not share in the Settlement proceeds, but will nevertheless be bound by the Settlement, the Final Judgment or Alternative Judgment (if applicable) of the Court dismissing this Litigation, and the Releases provided therein.

6. If you did not incur a Recognized Loss as defined in the Plan of Allocation, you will not receive a cash distribution from the Net Settlement Fund, but you will be bound by all determinations and judgments of the Court in connection with the Settlement, including being barred from asserting any of the Released Claims against the Released Defendants' Parties.

7. If the sum total of Recognized Losses of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive their *pro rata* share of the Net Settlement Fund. The *pro rata* share shall be the Authorized Claimant's Recognized Loss divided by the total of the Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Given the costs of distribution, the Net Settlement Fund will be allocated among all Authorized Claimants whose Distribution Amount (defined below) is $10.00 or greater. Consequently, no cash payment will be made on a claim where the potential distribution amount is less than $10.00.

8. If the Net Settlement Fund exceeds the sum total amount of the Recognized Losses of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund shall be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

## 10. How much will my payment be?

If you are entitled to a payment, your share of the Net Settlement Fund will depend on the number of Authorized Claimants. Payments will be calculated on a *pro rata* basis, meaning that the Net Settlement Fund will be divided among the Authorized Claimants and distributed accordingly (the "Distribution Amount") after the deadline for submission of Proof of Claim Forms has passed.

To the extent that any amount of the Net Settlement Fund remains after the Claims Administrator has caused distributions to be made to all Authorized Claimants, whether by reason of uncashed distributions or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distributions, any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be redistributed to Authorized Claimants who have cashed their initial distributions, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund, if Lead Counsel, in consultation with the Claims Administrator, determines that additional redistributions, after deduction of any additional fees and expenses that would be incurred with respect to such redistribution, would be cost effective. If it is determined by Lead Counsel that the redistribution of funds remaining in the Net Settlement Fund is not cost effective, the remaining balance in the Net Settlement Fund shall be contributed to non-sectarian, not-for-profit 501(c)(3) organization to be recommended by Lead Counsel and approved by the Court.

## HOW CAN YOU RECEIVE A PAYMENT?

## 11. How can I get a payment?

To qualify for a payment, you must be an eligible Class Member and either mail in or submit online a valid and timely Proof of Claim Form. You may download a Proof of Claim Form from the Settlement Website, www.AmTrustPreferredStockLitigation.com or by contacting the Claims Administrator at the contact information on page 2 of this Notice. Read the instructions carefully, fill out the Proof of Claim Form, include all the documents the form asks for, sign it, and mail it so it is **postmarked no later than _____, 2022 or submit it online no later than [same date]**, to the Claims Administrator (address provided on page 2). Any Class Member who fails to submit a Proof of Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund (unless by order of the Court the deadline is extended or such Class Member's Proof of Claim Form is accepted), but otherwise shall be bound by all of the terms of the

Stipulation and the Final Judgment or Alternative Judgment (if applicable), including the Releases therein, and will be permanently barred and enjoined from asserting any of the Released Claims against any of the Released Defendants' Parties. **You cannot submit your Proof of Claim Form by telephone, fax, or email.**

## 12. When would I get my payment?

The Court will hold a hearing on _____, 2022, to decide whether to approve the Settlement. The Court may change the date and time of the Settlement Hearing without notice or hold the Settlement Hearing by telephonic or video conference. Any change to the Settlement Hearing will be posted on the Settlement Website. Please check the Settlement Website before attending to be sure that the date and/or time has not changed. If the Settlement is approved, the Claims Administrator will complete the administration process and determine how much each Authorized Claimant is entitled to receive. Lead Counsel will then seek permission from the Court to distribute the Net Settlement Fund on a *pro rata* basis to Authorized Claimants. This is necessarily a long process.

## 13. What am I giving up as a Class Member?

Unless you exclude yourself, you are a Class Member. That means that you may receive your *pro rata* share of the Net Settlement Fund if you fill out and submit a valid Proof of Claim Form. However, regardless of whether you submit a valid Proof of Claim Form, upon the Effective Date of the Settlement (defined in the Stipulation) you will release all "Released Claims." Pertinent definitions from the Stipulation related to the Released Claims, which you are encouraged to read carefully, are repeated below:

"Defendants' Releasees" means Defendants and, as applicable, their current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, trustees, trusts, employees, Immediate Family Members, insurers, reinsurers, and attorneys, in their capacities as such.

"Plaintiff's Releasees" means Lead Plaintiff and all other Class Members, and, as applicable, their respective current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, trustees, trusts, employees, Immediate Family Members, insurers, reinsurers, and attorneys, in their capacities as such.

"Released Claims" means all Released Defendants' Claims and all Released Plaintiff's Claims.

"Released Defendants' Claims" means all claims (including Unknown Claims), debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, sums of money due, judgments, suits, amounts, matters, issues and charges of any kind whatsoever (including, but not limited to, any claims for interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, amounts, or liabilities whatsoever), whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen, whether arising under federal or state statutory or common law or any other law, rule, or regulation, whether foreign or domestic, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in the Action. Released Defendants' Claims do not cover, include, or release any of the following claims: (i) claims relating to the enforcement of the Settlement; or (ii) claims against any person or entity who or which submits a request for exclusion from the Class that is accepted by the Court ("Excluded Defendants' Claims").

"Released Plaintiff's Claims" means all claims (including Unknown Claims), debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, sums of money due, judgments, suits, amounts, matters, issues and charges of any kind whatsoever (including, but not limited to, any claims for interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, amounts, or liabilities whatsoever), whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen, whether individual or class in nature, whether arising under federal or state statutory or common law or any other law, rule, or regulation, whether foreign or domestic, that: (i) Lead Plaintiff or any other member of the Class (A) asserted in the Complaint or (B) could have asserted in the Action or in any other action or in any other forum that arise out of, are based upon, are related to, or are in consequence of any of the facts, allegations, transactions, matters, events, disclosures, non-disclosures, occurrences, representations, statements, acts or omissions, or failures to act that were involved, set forth, or referred to in the Complaint, or that otherwise would have been barred by res judicata had the Action been fully litigated to a final judgment and (ii) relate to the purchase or sale of Preferred Stock during the Class Period. For the avoidance of doubt, Released Plaintiff's Claims do not cover, include, or release any claim, relief, damages, compensation, demands, suits, actions, injuries, losses, costs, expenses, and/or causes of action (i) asserted in any ERISA or derivative action; (ii) relating to the enforcement of the Settlement; (iii) of any person or entity who or which submits a request for exclusion that is accepted by the Court ("Excluded Plaintiff's Claims"); (iv) arising from the purchase or sale of AmTrust's subordinated notes; (v) asserted in the dismissed consolidated putative class action styled *In re AmTrust Financial Services, Inc. Securities Litigation,* No. 1:17-cv-01545-LAK (S.D.N.Y.), on appeal as of the date of the Stipulation; (vi) asserted in the now-settled consolidated action styled *In re AmTrust Financial Services, Inc. Appraisal and Stockholder Litigation*, Consolidated C.A. No. 2018-0396-AGB (Del. Ch.).

"Releasee(s)" means each and any of the Defendants' Releasees and each and any of the Plaintiff's Releasees.

"Releases" means the releases set forth in ¶¶ 4-5 of this Stipulation.

"Unknown Claims" means any Released Plaintiff's Claims that Lead Plaintiff or any other Class Member does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Defendants' Claims that any Defendant does not know or

suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiff and Defendants shall expressly waive, and each of the other Class Members shall be deemed to have waived, and by operation of the Judgment or the Alternate Judgment, if applicable, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law that is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Lead Plaintiff and Defendants acknowledge, and each of the other Class Members shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

## THE LAWYERS REPRESENTING YOU

### 14. Do I have a lawyer in this case?

The Court appointed the law firm of Wolf Popper LLP as "Lead Counsel" to represent all Class Members. You will **not** be separately charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 15. How will the lawyers be paid?

Lead Counsel will ask the Court to award attorneys' fees from the Settlement Fund in an amount not to exceed $4,332,900.00 (i.e., 33.33% of the Settlement Fund) and reimbursement of costs and expenses of up to $460,000.00 for their work litigating the case and negotiating the Settlement, plus interest on such fees and expenses at the same rate as earned by the Settlement Fund). While the only anticipated application for attorneys' fees is the one to be made by Lead Counsel, Lead Counsel has entered into a fee-sharing agreement with Martin Kofroň, an attorney at law registered with the Czech Bar, whereby Mr. Kofroň will be paid 10% of any net fees awarded to Lead Counsel.

The Attorneys' Fees and Expenses requested will be the only payment to Lead Counsel for their efforts in achieving the Settlement and for their risk in undertaking this representation on a wholly contingent basis. To date, Lead Counsel have not been paid for their services in conducting this Litigation on behalf of Lead Plaintiff and the Class or for their substantial out-of-pocket expenses. The fees and expenses requested will compensate Lead Counsel for their work in obtaining the Settlement Amount for the Class. The Court may, however, award less than this amount. In that case, the difference will remain in the Net Settlement Fund. Lead Counsel will also seek a Plaintiff Service Award payment of up to $15,000 to be paid to Lead Plaintiff for his service on behalf of the Class and for his reasonable costs and expenses (including lost wages) relating to the representation of the Class.

## OPTING OUT OR OBJECTING TO THE SETTLEMENT

### 16. How do I tell the Court that I do not like the proposed Settlement or any of Lead Counsel's Requests?

If you are a Class Member, you can object to the Settlement or any of its terms, the proposed Plan of Allocation, the request by Lead Counsel for an award of fees and reimbursement of expenses, or the request for a Plaintiff Service Award. You may write to the Court setting out your objections. You may give reasons why you think the Court should not approve any or all of the Settlement terms or arrangements and submit any documentation you believe is appropriate. The Court will only consider your views if you file a proper objection within the deadline identified and according to the following procedures.

To object, you must send a signed letter or other court submission stating that you object to the proposed Settlement in *Jan Martínek, v. AmTrust Financial Services Inc., et al.,* Case No. 19 Civ. 8030 (KPF). You must include your name, mailing address, daytime telephone number, email address, and signature. The objection must be signed under penalty of perjury personally by the objecting Class Member. In addition, your objection must be accompanied by documentation showing the date(s), price(s) and number(s) of shares of all purchases, acquisitions, and sales of any series of Preferred Stock you made between **January 22, 2018 and April 18, 2019**, inclusive. Further, your objection should state the reasons why you object to the Settlement and be accompanied by any legal support or evidence that you wish the Court to consider. Your objection must be filed with the Court at the following address so that it is **received on or before _____, 2022**: Clerk of the Court, United States District Court, Southern District of New York, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY 10007.

Copies of any such objections or other court submissions must also be mailed by first-class mail to:

Carl Stine, Esq., Wolf Popper LLP, 845 Third Avenue, New York, NY 10022 (Lead Counsel)

Michael Carlinsky, Esq., Quinn Emanuel Urquhart & Sullivan, LLP, Madison Avenue, New York, NY 10010 (Defendants' Counsel)

### 17. How do I opt out of the Class?

If you wish to "opt out," i.e., exclude yourself from the Class and the Settlement, you must mail your request for exclusion to the Claims Administrator so that it is received no later than _____ at the following address: AmTrust Preferred Stock Litigation, EXCLUSIONS, c/o A.B. Data, Ltd., P.O. Box _____, Milwaukee, WI 53217. You bear the risk of delivery of the request. Your request must clearly state the

name, address, and telephone number of the Class Member seeking exclusion, that the Class Member requests to be excluded from the Class, and must be signed by the Class Member. All persons requesting exclusion also must state: the date(s), price(s), and number(s) of shares of Preferred Stock they purchased and sold between **January 22, 2018 and April 18, 2019**, inclusive. Requests for exclusion must comply with these requirements in order to be valid and effective. If you opt out, you **cannot** receive any payment from the Settlement and you also **cannot** object to the proposed Settlement, because it does not affect you.

If you properly exclude yourself from the Class, you will not be bound by any judgment in this Litigation, but you will also not be entitled to share in any recovery. If you properly request exclusion, it will be for you to decide whether to pursue any individual lawsuit, claim, or remedy that you may have, at your own expense. However, claims for violations of the Exchange Act, such as those claims alleged by Lead Plaintiff in the Complaint, must be brought no later than the earlier of (1) two years after the discovery of the facts constituting the violation (the statute of limitations), or (2) five years after such violation (the statute of repose). While the time to bring a lawsuit under the statute of limitations may be stayed under certain circumstances, such as a pending class action litigation, the statute of response deadline cannot be stayed. If you wish to exclude yourself from the Class and intend to pursue an individual lawsuit, you should consult your own attorney concerning the impact of the statute of limitations or statute of repose on your claims before you submit a request for exclusion. If you exclude yourself and a court determines the statute of limitations or statute of repose have expired, you will not be able to bring your own individual lawsuit. Lead Plaintiff, Lead Counsel and Defendants and their counsel give no opinion on whether the statute of limitations or statute of repose have expired or whether those persons who exclude themselves from the Class may timely bring individual litigations.

Defendants have the right to terminate the Settlement if valid opt-out requests are received from person entitled to be members of the Class in an amount that exceeds an agreed-to threshold by Lead Plaintiff and Defendants.

## THE COURT'S SETTLEMENT HEARING

### 18. When and where will the Court decide whether to approve the proposed Settlement?

The Court will hold a Settlement Hearing at _____ on _____, 2022, before the Honorable Katherine Polk Failla in Courtroom ____ of the United States District Court for the Southern District of New York, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY, 10017. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. At the Settlement Hearing, the Court also will consider the proposed Plan of Allocation, and Lead Counsel's Requests. The Court will take into consideration any written objections and will listen to Class Members who have asked to speak at the hearing. The Court may change the date and time of the Settlement Hearing without notice or hold the Settlement Hearing by telephonic or video conference, however any change to the Settlement Hearing will be posted on the Settlement Website. Please check the Settlement Website before attending to be sure that the date and/or time has not changed.

### 19. Do I have to come to the hearing?

No. Lead Counsel will answer questions the Court may have, but you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you filed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but attendance is not mandatory. Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.

### 20. May I speak at the hearing?

If you object to the Settlement, you may ask the Court for permission to speak at the Settlement Hearing. To do so, you must indicate in writing that it is your "Intention to Appear in *Jan Martínek, v. AmTrust Financial Services Inc., et al.,* Case No. 19 Civ. 8030 (KPF)" Class Members who object and desire to present evidence at the Settlement Hearing must include in their written objections the identity of any witnesses they propose to call to testify and any exhibits they intend to offer into evidence. You cannot speak at the hearing if you excluded yourself from the Class or if you fail to provide a written objection and notice of your intention to speak at the Settlement Hearing by the deadline identified.

## IF YOU DO NOTHING

### 21. What happens if I do nothing at all?

If you do nothing, you will get no money from this Settlement and, unless you excluded yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants or Defendants' Releasees about the claims being released in the Settlement. All Class Members who do not submit valid and timely Proof of Claim Forms shall be forever barred from receiving any payments from the Settlement, but will in all other respects be subject to and bound by the provisions of the Stipulation and any Final Judgment or Alternative Judgment (if applicable) entered, including the releases set forth above.

## GETTING MORE INFORMATION

### 22. Are there more details about the proposed Settlement?

This Notice summarizes the proposed Settlement. More details are in the Stipulation. You may obtain a copy of the Stipulation, and other

documents and information related to the Settlement by visiting the settlement website www.AmTrustPreferredStockLitigation.com.  You may also contact the Claims Administrator or Lead Counsel using the contact information identified on p.2.  The pleadings and other court filings in the Litigation are available for inspection during regular business hours at the Office of the Clerk of the United States District Court for the Southern District of New York, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY, 10007.  The Complaint and certain other Court documents are also available on the Settlement Website.

**DO NOT TELEPHONE THE COURT, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.**

**<u>SPECIAL NOTICE TO NOMINEES</u>**

If you hold Preferred Stock pursuant to a transaction that took place within the United States within the Class Period as nominee for a beneficial owner, then you must either: (1) send a copy of the Postcard Notice (available on the Settlement Website) by first-class mail to all such persons or entities within ten (10) days of receipt of this Notice; or (2) provide a list of the names and addresses of such persons or entities to the Claims Administrator at the address provided on page 2, above, within ten (10) days of receipt of this Longform Settlement Notice.

If you choose to mail the Postcard Notice yourself, you may obtain from the Claims Administrator (without cost to you) as many additional copies of the Postcard Notice documents as you will need to complete the mailing.

Regardless of whether you choose to complete the mailing yourself or elect to have the mailing performed for you, you may obtain reimbursement for, or advancement of, reasonable administrative costs (not to exceed $0.05 per unit) actually incurred or expected to be incurred in connection with forwarding the Postcard Notice, and which would not have been incurred but for the obligation to forward the Postcard Notice, upon submission of appropriate documentation to the Claims Administrator.

Dated: _____, 2022                         BY ORDER OF THE COURT
                                                                        UNITED STATES DISTRICT COURT
                                                                        SOUTHERN DISTRICT OF NEW YORK