UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JAN MARTÍNEK, | ) | |
| | ) | |
| | ) | Case No. 19-cv-8030-KPF |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMTRUST FINANCIAL SERVICES, INC., | ) | Hon. Katherine Polk Failla |
| BARRY D. ZYSKIND, GEORGE | ) | |
| KARFUNKEL, AND LEAH KARFUNKEL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF JAN MARTÍNEK IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF PLAN OF
ALLOCATION, AND APPROVAL OF REQUESTS FOR ATTORNEYS' FEES
EXPENSES AND PLAINTIFF SERVICE AWARD**

**WOLF POPPER LLP**
Carl L. Stine
Patricia I. Avery
Adam J. Blander
Radha Raghavan
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600
cstine@wolfpopper.com

*Attorneys for Class Representative Jan Martínek and the Class*

I, JAN MARTÍNEK, declare under penalty of perjury as follows:

1.      I am the Court-appointed Lead Plaintiff and Class Representative in the above-captioned securities fraud class action ("Litigation" or "Action").

2.      I submit this declaration in full support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement, Approval of Plan of Allocation and Lead Counsel's Requests.

3.      I currently reside in Prague, Czech Republic.

4.      I presently work as a full-time investor in my family office where I use my own capital to make investments. Prior to this, I worked for Nomura International for 17 years, spending a part of this time as an investment banker and the rest of the time in private equity.

5.      Given my current and past professional experience, I am very knowledgeable about stocks and investing. I am an experienced investor, managing my own portfolio full-time and I spend several hours a day analyzing the markets and various securities.

6.      Prior to this Action, I had experience in other litigation, and was deposed as a witness in an action relating to the misappropriation of trade secrets, within my capacity as an investor in one of the parties.

7.      During the January 22, 2018, to January 18, 2019, Class Period, I purchased AmTrust Financial Service Inc.'s ("AmTrust") preferred stock in reliance on the accuracy and completeness of Defendants' public statements that AmTrust's preferred stock would continue to remain listed on the New York Stock Exchange ("NYSE").

8.      After Defendants disclosed on January 18, 2019, that they would delist the Preferred Stock from the NYSE, the value of my investment in AmTrust's Preferred Stock declined significantly.

9.    Subsequently, I had a series of conversations and emails with a few different attorneys, including Carl L. Stine at Wolf Popper LLP, about the damages I sustained and whether a suit against Defendants was advisable.  I discussed with Mr. Stine my responsibilities as a potential lead plaintiff or a class representative.  I thereafter authorized Wolf Popper to prepare a class action complaint against AmTrust, Barry D. Zyskind, George Karfunkel, and Leah Karfunkel on my behalf.  I reviewed multiple drafts and provided comments to the complaint in this Action, and authorized its filing, which occurred on August 28, 2019 ("Complaint").

10.    Annexed to that Complaint was a certification that I signed attesting to my investments in AmTrust Preferred stock during the January 22, 2018, to January 18, 2019, Class Period and my understanding of my potential responsibilities as lead plaintiff.  ECF No. 5-1.  I undertook the responsibilities of a class representative both for my own benefit and in an effort to maximize recovery of similarly situated investors.

11.    Aside from litigation, I also kept up pressure on AmTrust by issuing an open letter to Stone Point Capital LLC, Defendants' private equity partner, stating that the firm was compromising its reputation in agreeing to delist the Preferred Stock.  I also submitted a letter to the SEC and a letter to the editor, which was published in *Barron's*, and also wrote articles, all of which articulated my objections to the decision to delist.[1]

12.    Subsequently, Wolf Popper prepared for my review a motion and supporting documents for my appointment as Lead Plaintiff in the Litigation.  I reviewed a draft of those documents and authorized the filing of the motion on my behalf.  ECF No. 20.

---

[1] *See* Compl. ¶ 86; "Letters to Barron's," *Barron's*, Feb. 1, 2019; Jan Martinek, "AmTrust Financial Predatory Action: High-Risk Opportunity," Seeking Alpha, Jan. 29, 2019, https://seekingalpha.com/article/4236265-amtrust-financial-predatory-action-high-risk-opportunity; *see also* Jan Martinek, "AmTrust Predatory Action – Part 2 Litigation," Seeking Alpha, Feb. 7, 2019, https://seekingalpha.com/article/4238863-amtrust-predatory-action-part-2-litigation

13.     The Court later issued an order appointing me as the Lead Plaintiff and Wolf Popper as Lead Counsel.  ECF No. 23.  I was provided with a copy of the Court's Lead Plaintiff Order.

14.     Thereafter, Defendants filed their motion to dismiss the Complaint.  ECF Nos. 27-29.  I was provided with a copy of the motion to dismiss brief and a draft of the opposition to the motion to dismiss, which I discussed with Lead Counsel.  I authorized Lead Counsel to file the opposition to the motion to dismiss.  ECF No. 30.  I was also provided with a copy of Defendants' reply in support of their motion to dismiss.  ECF No. 31.  I provided comments to my counsel regarding Defendants' papers as well as our papers.

15.     On August 14, 2020, the Court denied the defendants' motion to dismiss.  ECF No. 34.  I was provided with a copy of the Court's decision and discussed it with Lead Counsel.

16.     Subsequently, discovery in this Litigation commenced.  Defendants served on my counsel requests for the production of documents and interrogatories.  I was provided copies of these requests, discussed them with Lead Counsel, gathered documents and information in response to these requests and provided those documents and information to Lead Counsel, reviewed the written responses to the discovery requests, and verified my interrogatory responses. I also consulted with my counsel regarding the discovery to be sought from Defendants.  I also consulted with my counsel about potential questions to be asked at depositions.

17.     Prior to the filing of the Motion for Class Certification, I reviewed drafts of the motion papers and accompanying expert reports and provided comments and suggestions to the filings, and authorized their filing.  ECF No. 44.

18.     Defendants also noticed my deposition.  In anticipation of the deposition, I reviewed relevant documents and met with Lead Counsel to prepare.  My deposition, which was

taken by video conference, lasted approximately six hours.  I thereafter reviewed and authorized my deposition transcript.

19.     Following my deposition, Defendants filed their opposition to Plaintiff's Class Certification motion.  ECF Nos. 48-49.  I was provided with a copy of the opposition, and related expert reports and a draft of the reply to the opposition to class certification ("Reply") to review. I reviewed these papers and provided comments about them to Lead Counsel, and authorized the filing of the Reply.  ECF Nos. 51-52.

20.     Despite Defendants' vigorous opposition to class certification, they did not oppose my adequacy to serve as a class representative.  In fact, earlier in the Litigation, Defendants described me as a "a sophisticated investor who performed a diligent pre-suit investigation."  ECF No. 28.

21.     Thereafter, the Court issued an order on February 3, 2022, granting Plaintiff's Motion for Class Certification, which certified the Class, appointed me as a Class Representative, and appointed Wolf Popper as Class Counsel.  ECF No. 80.

22.     Throughout the pendency of this Litigation, I have endeavored to be a responsible and diligent representative of the Class.  In aid of this goal, I participated in numerous telephone calls and email exchanges with Lead Counsel to discuss case status and updates, important case filings, and strategy.

23.     I also consulted with Lead Counsel regarding mediation and possible settlement of the Litigation, which included discussions with Lead Counsel regarding selection of the mediator, the strengths of and risks of the claims asserted, potential damages, and the relevant pros and cons of settlement (including of the proposed Settlement that was ultimately reached).  I was provided with copies of the mediation statements and supplements exchanged with Defendants, and

discussed them with Lead Counsel.  While I did not attend the mediation sessions, I was available to speak with Lead Counsel or the mediator, if necessary.

24.     Based on my involvement in this Action and discussions with my counsel, I am satisfied that the $13 million Settlement represents a fair and adequate result for the Settlement Class.

25.     I was the only AmTrust preferred shareholder to file a securities fraud complaint before this Court against AmTrust, and I was the only class member to seek appointment as lead plaintiff in this Litigation.  I initiated this action because based on my experience as an investor in a wide range of financial products, including preferred securities, I found Defendants' conduct concerning their delisting of AmTrust preferred securities, despite making public statements that these securities would remain listed, to be unfair, and their purported reasons justifying the delisting not credible.

26.     I applaud my counsel for their tenacity in developing an extensive factual record with respect to the claims that were sustained, notwithstanding Defendants' equal tenacity and well-financed opposition (with the resources of a public company).  I whole-heartedly endorse the $13 million Settlement.

27.     In this regard I note that the Settlement was reached only after my counsel had obtained and reviewed a large number of documents from the Defendants and affiliated parties; taken nine depositions, including the depositions of the Individual Defendants Barry Zyskind and George Karfunkel; served expert reports by Professor Steven P. Feinstein on damages and loss causation and reviewed Defendants' opposing expert reports; and exchanged mediation statements and had numerous discussions with the mediator.  I also note that the $13 million Settlement represents a significant percentage of the maximum provable aggregate damages in a securities

fraud action of this nature, and was based on the recommendation of the mediator, which I believe also supports the reasonableness of the Settlement.

28.    I am also aware that Lead Counsel in this Action have requested attorneys' fee award equal to one-third of the Settlement Fund (plus reimbursement of their litigation expenses).

29.    I understand that Lead Counsel has been paid nothing to date for the significant amount of time they have devoted to this matter, and that their requested 33.33% fee is completely reasonable taking into account how difficult and lengthy these types of cases are and the risks associated with it.  I have also been advised that percentage fee awards of 33.33% are within the range of fees that have been awarded in other securities class actions that have settled for similar amounts.  Accordingly, I support the requested fee award as fair and reasonable.

30.    I also understand that Lead Counsel are requesting reimbursement of costs and expenses incurred in prosecution of the Litigation.  I believe that the expenses were necessary for the successful prosecution of this Litigation, and I support Lead Counsel's request for reimbursement of these expenses.  With respect to the expert witness expenses in particular, which is the largest category of expenses, I understand that Dr. Feinstein's reports were required in order to obtain class certification and in order to prove that the Class suffered damages.

31.    I have not received or been promised or offered any special compensation for serving as a plaintiff in this Action or in achieving the Settlement.  I am informed by my counsel that I am entitled to request reimbursement for out-of-pocket costs I personally incurred as well as lost wages, and that the Court has the discretion to approve an award to me for my work serving as a representative of the Class.

32.    As noted above, I have been quite involved in all stages of the litigation process.  I provided drafting comments, content suggestions, and additional ideas and points to be included

on most of our filings.  I discussed the litigation, mediation, and all aspects of the case on a very frequent basis with my Counsel.  I likely spoke with my counsel on the phone over 30 to 40 times and exchanged hundreds of emails in connection with this litigation.   I also understand from my Counsel that I have been much more "hands-on" than is standard in many class actions.  I also understand from my Counsel, that due to my 25-year experience in finance, I provided substantial value to the case.

33.     In acting as Lead Plaintiff and Class Representative, I estimate that I expended much time, likely in excess of 100 hours, since mid-2019 for the benefit of the Class in reviewing emails, documents, and draft court filings and written discovery documents; discussing various case matters with Lead Counsel; gathering documents and information in response to Defendants' discovery requests; and preparing for and sitting for my deposition.  Had I not spent this time on the Litigation, I would have spent it managing my portfolio at the family office or on other endeavors.

34.     Given the time and effort I have expended on this matter, and the result achieved for the benefit of the Class, I consider a $15,000 service award for my work on behalf of the Class to be reasonable and appropriate.  My support for the Settlement is not contingent on me receiving my requested award.   I understand that the Court may award me less or no additional compensation, and such a result would not change my support for the Settlement.  I understand I will receive no compensation if the Settlement is not approved by the Court.

35.    Suffice it to say, I would not have undertaken a matter such as this if I had not lost over six figures investing in AmTrust preferred stock and believed that I had a responsibility to maximize the recovery of similarly situated investors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this <u>11th</u> day of October, 2022.

_____
Jan Martínek