**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JAN MARTÍNEK,<br><br>　　　　　　Plaintiff,<br><br>　V.<br><br>AMTRUST FINANCIAL SERVICES, INC.,<br>BARRY D. ZYSKIND, GEORGE KARFUNKEL,<br>and LEAH KARFUNKEL,<br><br>　　　　　　Defendants. | **Case No. 19-cv-8030-KPF** |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED**
**MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................... 2

III.    THE CLAIMS ADMINISTRATION .................................................................... 4

IV.     ARGUMENT ........................................................................................................ 7

A.      Determinations by the Claims Administrator Concerning Eligibility of Proofs of Claim and Calculation of Recognized Loss Amounts and Disbursements from the Net Settlement Fund Should Be Approved ........................................................ 7

B.      Administrator Fees And Expenses to be Paid From the Net Settlement Fund Should Be Approved ............................................................................................... 9

C.      The Court Should Approve Distribution of the Net Settlement Fund to Claimants ............................................................................................................... 10

D.      Pursuant to the Stipulation, the Court Should Release Claims Arising From the Settlement Administration ................................................................................ 12

E.      The Claims Administrator Should Be Permitted to Destroy Claim Records Following the Conclusion of the Distribution Process ......................................... 13

V.      CONCLUSION .................................................................................................... 13

i

## TABLE OF AUTHORITIES

**Cases**

*In re Authentidate Holding Corp. Secs. Litig.*,
   No. 05 Civ. 5323 (LTS), 2013 U.S. Dist. LEXIS 11815 (S.D.N.Y. Jan. 25, 2013) ................... 8

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
   246 F.3d 315 (3d Cir. 2001) .............................................................................................. 9

**Rules**

Fed. R. Civ. P. 23……………………………….…………………………………………...…1,8

## I.    **<u>INTRODUCTION</u>**

Lead Plaintiff Jan Martínek, [1] on behalf of himself and all Class Members, submits this memorandum in support of his Unopposed Motion for Approval of Distribution Plan and moves this Court, pursuant to Federal Rule of Civil Procedure 23 (the "Motion"), to enter the [Proposed] Order for Distribution of the Net Settlement Fund submitted herewith (the "Proposed Distribution Order") to

(1) approve the Claims Administrator A.B. Data, Ltd.'s administrative determinations regarding the acceptance and rejection of claims submitted in connection with the Settlement;

(2) direct distribution of the Net Settlement Fund, after deduction of the payments requested herein, to Class Members whose Proof of Claim and Release Forms have been accepted;

(3) approve the plan for re-distribution and/or donation of any funds remaining in the Net Settlement Fund following the distribution to Class Members;

(4) direct payment out of the Settlement Fund to A.B. Data in the amount of $58,773.71 for the balance of its fees and expenses incurred and currently owing, and direct that $20,865.30 be reserved from the Settlement Fund in anticipation of the work that will be performed and fees and expenses incurred in connection with the administration and distribution of the Net Settlement Fund;

(5) authorize the destruction of paper copies of Proofs of Claim and Releases ("Claim Forms"), and all related paper documents one year after the second distribution, or if there is no second distribution, two years after the initial distribution, and authorize the destruction of electronic files containing claim records one year after all funds have been distributed;

---

[1] Unless otherwise defined, capitalized terms herein have the same meanings as in the Stipulation and Agreement of Settlement filed with the Court on June 23, 2022 (the "Stipulation," or "Settlement," ECF No. 91-1).

1

(6) bar claims against persons involved in the claims administration and distribution process;

(7) bar Class Members from making further claims against the Net Settlement Fund beyond the amount allocated to them; and

(8) for such other and further relief as this Court deems appropriate.

If the Court enters the Proposed Distribution Order, Authorized Claimants will receive their pro rata share of the Settlement Fund in accordance with the Plan of Allocation. The proposed plan for distributing the Net Settlement Fund is set forth in the accompanying declaration of Jack Ewashko ("Ewashko Declaration"), submitted herewith.

The Motion is unopposed. On September 7, 2023, Plaintiff's Counsel sent draft motion papers to defense counsel and requested that Defendants consent to the Motion. On September 18, 2023, Defendants confirmed their consent.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

The now-approved Stipulation provides for the Settlement of this Action for $13 million on behalf of the Class certified by the Court on February 3, 2022 (ECF No. 80) of "[a]ll persons who purchased Series A preferred stock of AmTrust Financial Services, Inc. ('AmTrust'), or AmTrust's Depositary Shares Representing 1/40th of a share of either AmTrust's Series B, C, D, E or F preferred stock … on the open market on a U.S. stock exchange from January 22, 2018, to January 18, 2019, inclusive … excluding present and former executive officers of AmTrust and any parent, subsidiary, or affiliate of AmTrust, Barry D. Zyskind, George Karfunkel, and Leah Karfunkel and their immediate family members (collectively, the 'Excluded Persons') and the legal representatives, heirs, successors, or assigns of any such Excluded Person."[2]

---

[2] The Class also excludes any Class Member who requested exclusion from the Class, ECF No. 80 at 9, however no Class Member requested exclusion by the Court-imposed deadline, ECF No. 110 ¶ 7 (November 9, 2022 declaration

On July 21, 2022, the Court entered an Order preliminarily approving the Settlement, scheduling a settlement hearing for November 16, 2022, and directing that Settlement Notices be disseminated to potential Class Members ("Preliminary Approval Order").  ECF No. 97.  The Preliminary Approval Order also approved the selection of A.B. Data to serve as the Claims Administrator and to, among other things, disseminate the Settlement Notices to potential Class Members, process the Claim Forms submitted by Class Members, and to effectuate the distribution of the Net Settlement Fund to the Class Members who submitted acceptable Claim Forms.

Pursuant to the Preliminary Approval Order, A.B. Data mailed an aggregate of 20,274 Postcard Settlement Notices to potential Class Members and published the Summary Settlement Notice on PR Newswire, a national wire service, and in Investor's Business Daily, a national newspaper.  Ewashko Decl., ¶ 4; ECF No. 105 (Declaration of Jack Ewashko Regarding Mailing of Notice and Publication of Summary Notice, ("Mailing Declaration")) ¶¶ 6-9, 11; ECF No. 110 (Supplemental Declaration of Jack Ewashko Regarding: (A) Mailing of the Notice and Claim Form and (B) Report on Requests for Exclusions) ("Supp. Mailing Decl.") ¶ 3. A.B. Data also maintained the Settlement Website, which contained downloadable copies of the Longform Settlement Notice, Claim Form, and relevant Court filings.  ECF No. 105, ¶ 13.  The Postcard Settlement Notice and Summary Settlement Notice provided summary information concerning the Settlement and directed potential Class Members to the Settlement Website and Longform Settlement Notice for more information.   A.B. Data also mailed letters and responded to communications from Claimants by email and telephone, to assist Claimants in properly completing their otherwise deficient submissions so that they could be eligible to participate in the Settlement.  Ewashko Decl. at ¶ 19.

---

advising that A.B. Data received no requests for exclusion).

At the November 16, 2022 Settlement Hearing, following the conclusion of counsel's presentation, the Court issued a prepared telephonic ruling granting Plaintiff's Motion for Final Approval of Class Action Settlement, Approval of Plan of Allocation, and Approval of Requests for Attorneys' Fees, Expenses, and Plaintiff Service Award. Consistent with the telephonic ruling, the Court entered the Final Judgment (ECF No. 111), and an Order awarding Attorneys' Fees, Litigation Expenses, and a Class Representative Service Award (ECF No. 112) later that day.

A.B. Data has completed the processing of 5,035 Claim Forms received through May 31, 2023, of which 202 Claims were delivered after the initial December 13, 2022, claim-filing deadline established by the Court. Ewashko Decl., ¶ 28. Of the 5,035 Claims, 920 were "hardcopy" or "paper" Claims, 342 were "online" Claims filed through the online filing portal on the Settlement Website, and 578 were submitted electronically ("Electronic Claims" or "E-Claims") by banks, brokers, custodians, and other similar entities. *Id.* ¶ 10. A.B. Data has determined that 4,834 claims were timely filed and valid, 75 claims were untimely filed but otherwise valid, and 1,606 claims were ineligible and should be wholly rejected. *Id.* ¶¶ 33-35.

A. B. Data's standard quality control and audit procedures usually take six to eight months to complete, however the complexity of the administration process, due to the multiple securities covered by the Class definition, required additional time for completion. *Id.* ¶ 31. A.B. Data's quality control and audit procedures were completed in approximately August 2023. *Id.*

III.    **THE CLAIMS ADMINISTRATION**

Pursuant to the Stipulation, the Settlement Notices, and the Preliminary Approval Order, all Class Members wishing to participate in the Settlement were required to submit Claim Forms by mail or online at the Settlement Website such that they were postmarked or submitted online no later than December 13, 2022. ECF No. 91-1 at 59 (Longform Settlement Notice). A.B. Data

4

continued processing all claims received up to May 31, 2023.  Ewashko Declaration, ¶ 7.  As set forth in the Ewashko Declaration, A.B. Data reviewed and processed 5,035 Claim Forms submitted by potential Class Members.   Ewashko Decl., ¶ 7.  A.B. Data has now prepared detailed reports listing all: (i) valid Claim Forms by Authorized Claimants; (ii) Claim Forms that were submitted after the claims submission deadline but are otherwise valid; and (iii) rejected Claim Forms with the rejection reasons.  *Id.* ¶¶ 32-35 and Exs. D-F.

The Claim Forms submitted in paper form were opened, prepared assigned a unique Claim Form number, and scanned.  This process included unfolding documents, removing staples, copying documents with nonconforming sizes, sorting documents, and scanning documents.  The information from each Claim Form, including the claimant's name, address, and account number/information from the supporting documentation, and purchase/acquisition transactions, sale transactions, and holdings listed on the Claim, was entered into a database developed by A.B. Data to process Claim Forms.  *Id.* ¶ 10.  For online Claims, the transactional information and supporting documentation submitted by the filer through the online filing portal was loaded into the database for review.  Once loaded, the Claimant's purchase/acquisition transactions, sale transactions, and holdings were reviewed and verified in a similar manner to the paper Claim processing.  *Id.* ¶ 13.  A.B. Data evaluated and processed all Claim Forms and supporting documentation to determine, among other things, whether the claimant purchased or otherwise acquired AmTrust preferred stock during the Class Period, whether the transaction information entered on the Claim Form was supported by the documentation, and whether the Claims had been submitted by, or on behalf of, excluded persons or a Class Member requesting exclusion.  *Id.* ¶¶ 11-12, 15, 18.

Electronic Claim filers are typically banks, brokers, nominees, and other third-party filers

who file Claims on behalf of a large number of Claimants ("E-Claim Filers").  A.B. Data received

4,115 E-Claims from E-Claim Filers.  *Id.* ¶ 13.  Because E-Claim Filers typically submit a high

volume of transactions on behalf of the beneficial owners, A.B. Data provides E-Claim Filers with

the opportunity to submit a master Claim Form and mail a computer disc or submit an electronic

file to A.B. Data—rather than providing reams of paper requiring manual data entry—so that A.B.

Data may upload all transactions to its proprietary database developed for the Settlement.  *Id.*

Each electronic file received by A.B. Data was reviewed to ensure it was in the required

format and for any potential data issues.  If the file was deemed acceptable, it was loaded into A.B.

Data's database.  *Id.* ¶ 14.  Once loaded, the claims were reviewed for deficiencies just as the hard

copy and online Claims, however rather than manual review, the Electronic Claims were subject

to an electronic review.  *Id.* ¶ 15.  A.B. Data also performed targeted reviews of Electronic Claims,

including high-value Claims in which supplemental information was requested.  *Id.* ¶17.

As reflected in the Ewashko Declaration, to the extent that a Claim Form was determined

to be defective or ineligible in whole or in part, A.B. Data made substantial efforts to provide

claimants a fair opportunity to cure deficiencies.  *Id*. ¶ 19 and *Id*. ¶ 22 and Exs. A-B (sample

communications).  For Claims that were deemed deficient either in whole or in part, A.B. Data

mailed or emailed communications describing the defect(s) or condition(s) of ineligibility in the

Claim Form and advising what was necessary to do to cure any deficiency.  *Id.* ¶¶ 19-21.  A.B.

Data mailed 321 deficiency letters to claimants who filed paper and online Claim Forms, advising

those claimants that the submission of the appropriate information and/or trade documentation

required to complete the Claim had to be sent within 20 days from the date of the letter, or the

Claim would be recommended for either full or partial rejection.  *Id.* ¶¶ 19-21.  A.B. Data also sent

50 status emails and status spreadsheets to E-Claim Filers concerning deficiencies in Electronic

Claims.  Recipients of Status Emails and Status Spreadsheets also had an opportunity to respond in order to resolve issues with the respective claims.  *Id.* ¶¶ 22-26.  A.B. Data had further written and oral communications with claimants to help them resolve the deficiencies.  *Id.* ¶ 19.  If only part of a Claim was valid, then that partial Claim was accepted for distribution.  *Id.* ¶ 12.

Claimants were also advised that if they disagreed with the determination of A.B. Data, they could request review by the Court.  To date, A.B. Data has not received any requests for Court review.  *Id.* ¶ 27.

## IV.    <u>ARGUMENT</u>

### A.  Determinations by the Claims Administrator Concerning Eligibility of Proofs of Claim and Calculation of Recognized Loss Amounts and Disbursements from the Net Settlement Fund Should Be Approved

Lead Plaintiff respectfully moves the Court for an order approving A.B. Data's determinations concerning the acceptance and rejection of the Claim Forms and approving the proposed plan for distribution of the Net Settlement Fund, as set forth in the Ewashko Declaration (the "Distribution Plan").

A.B. Data has completed the processing of the 5,035 Claims received, and has determined that 3,354 of the Claims are acceptable in whole or in part and should receive a distribution, and that 1,606 Claims are recommended for rejection by the Court because they are ineligible, wholly deficient, or have no Recognized Loss when calculated in accordance with the Court-approved Plan of Allocation.  *Id.* ¶¶ 32-35.  The vast majority of Claims recommended for rejection had no purchase of AmTrust preferred stock during the Class Period (770 Claims) or did not result in a Recognized Loss under the Court-approved Plan of Allocation (736 Claims).  *Id.* ¶ 35.

4,834 Claims were timely submitted by the December 13, 2022 Court-approved deadline, and A.B. Data has determined that 3,354 are acceptable in whole or part.  *Id.* ¶ 33.  The total Recognized Loss Amount for these timely submitted and valid Claims is $21,365,879.03.  *Id.* ¶ 33.

A.B. Data received 201 Claims that were postmarked or submitted online after the December 13, 2022 Court approved deadline.  A.B. Data has determined that 75 of these late but otherwise eligible claims are, apart from their late submission, otherwise eligible, and A.B. Data recommends acceptance and payment of these late but otherwise eligible claims.  *Id*. ¶ 34.  The total Recognized Loss Amount for these late but otherwise eligible claims is $1,925,784.46.  *Id*. ¶ 34.

The Stipulation provides that "Lead Counsel may, at their discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Class." ECF No. 91-1 ¶ 8.  A District Court overseeing a settlement distribution has the discretion to accept late claims under Federal Rule of Civil Procedure 23.  *See, e.g., In re Authentidate Holding Corp. Secs. Litig.*, No. 05 Civ. 5323 (LTS), 2013 U.S. Dist. LEXIS 11815, at *3 (S.D.N.Y. Jan. 25, 2013) (courts have "inherent power to accept late claims") (citation omitted).

Lead Counsel believes that, when the equities are balanced, it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement Fund solely because it was submitted after the deadline, but while all claims were still being processed.  No delay has resulted from the provisional acceptance of these untimely claims.  Ewashko Decl., ¶ 28.  Accordingly, Lead Counsel requests that the Court approve the administrative determination to accept the otherwise-eligible claims submitted after the December 13, 2022 deadline.

However, there must be a final cut-off date after which no more claims may be accepted so that there may be a proportional distribution of the Net Settlement Fund.  *See, e.g., In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001) ("there is no question that in the distribution of a large class action settlement fund, a cutoff date is essential and at some

point the matter must be terminated") (citation omitted).  Acceptance of any claim received after preparation of this application would necessarily require a delay in the distribution.  Ewashko Decl., ¶ 29.  Accordingly, it is requested that the Court enter an order directing that no Claim Forms or responses received after May 31, 2023 would be accepted for payment in the initial distribution.  If six months after the initial distribution, monies remain in the fund and it is economically feasible to make an additional distribution, Class Counsel, in consultation with A.B. Data, will consider whether it is equitable that claims received after May 31, 2023, and are otherwise eligible in whole or in part, should be eligible for payment in such a re-distribution.  As of September 1, 2023, A.B. Data has not received any claims after the May 31, 2023 deadline. *Id.* ¶ 31.

**B.  Administrator Fees And Expenses to be Paid From the Net Settlement Fund Should Be Approved**

Lead Plaintiff respectfully request that A.B. Data be paid the sum of $58,773.71 from the Net Settlement Fund as payment for its outstanding fees and expenses incurred and to be incurred in connection with administration of the Settlement and the Distribution Plan.

As set forth in the Ewashko Declaration, A.B. Data's total fees and expenses for its work performed, and to be performed through the distribution of the Net Settlement Fund, on behalf of the Class total $148,536.70.  Ewaskho Decl., ¶ 37. To date, the cost of administration of the Settlement has been $127,671.40.  A.B. Data has received payment of $68,897.69.  Accordingly, there is a total of $79,639.01 payable to A.B. Data.  The estimated cost of conducting the Initial Distribution is $20,865.30.

The Stipulation allows for $350,000 to be paid to A.B. Data without further Order of the Court, and that any additional amounts may be approved by the Court. ECF No. 91-1, ¶ 15.  The Court, in its Preliminary Order has already approved payment of up to $350,000 to A.B. Data (ECF

No. 97 ¶ 20), and, consistent with the Order, A.B. Data was paid $68,897.69 from the Escrow Account to cover notice costs. Lead Plaintiff now requests that the Court authorize in the Distribution Order the payment to A.B. Data from the Net Settlement Fund of $58,773.71 for costs and expenses already incurred, and the reservation of $20,865.30 for anticipated costs and expenses related to the Initial Distribution. *See* Ewashko Decl., ¶ 37. To the extent the amount paid to A.B. Data exceeds $20,865.30, A.B. Data will return the difference or request approval for additional funds to or from the Escrow Account. *Id.* No aggregate payment of $350,000 to A.B. Data is authorized, absent further Order of the Court. *See* ECF No. 91-1 ¶ 15.

**C. The Court Should Approve Distribution of the Net Settlement Fund to Claimants**

Lead Plaintiff also requests that the Court authorize the distribution of the balance of the Net Settlement Amount — after deduction of the fees and expenses previously awarded and requested herein, as well as payment or withholding of current and estimated future Notice and Administration Expenses (such as Taxes and Tax Expenses) — to the Class Members whose claims have been accepted. Ewashko Decl. ¶ 38; *see also* ECF No. 91-1 (Stipulation) ¶ 28.

Pursuant to the proposed Distribution Plan, A.B. Data will conduct an initial distribution (the "Initial Distribution") of the available balance of the Net Settlement Fund. Ewashko Decl., ¶ 38(a). In the Initial Distribution, A.B. Data will calculate award amounts to all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now, after deducting the payments previously allowed and requested herein, and after the payment of (or withholding for the payment of) any estimated Notice and Administration Expenses, including Tax and Tax Expenses, by calculating their pro rata share of the fund in accordance with the Plan of Allocation. *Id*. Pursuant to the terms of the Plan of Allocation, A.B. Data will eliminate any Authorized Claimant whose award amount calculates to less than $10.00. *Id.* Consistent with the Stipulation, such Claimants will not receive any distribution from the Net Settlement Fund. *See* ECF No. 91-

1 at 65 (Plan of Allocation portion of Stipulation stating that "[g]iven the costs of distribution, the Net Settlement Fund will be allocated among all Authorized Claimants whose Distribution Amount (defined below) is $10.00 or greater. Consequently, no cash payment will be made on a claim where the potential distribution amount is less than $10.00").

A.B. Data will then prepare checks for the distribution. Ewashko Decl., ¶ 38(b). Lead Plaintiff proposes that the Initial Distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [90 DAYS AFTER ISSUE DATE]" so as to encourage Authorized Claimants to promptly cash their payments. *Id.* A.B. Data will make reasonable efforts to locate new addresses for Authorized Claimants whose checks are returned as undeliverable. *Id.* A.B. Data will issue replacements to an Authorized Claimant who damages, loses, or requires a new check. *Id.* Authorized Claimants who do not cash their distribution checks within the time allotted or on the conditions set forth in ¶ 38(b) of the Ewashko Declaration will forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks will be subject to redistribution if Lead Counsel, in consultation with A.B. Data, determines that it is economically feasible to conduct a redistribution. *Id.* ¶ 38(c).

Pursuant to the Distribution Plan, if any balance is remaining in the Net Settlement Fund after six (6) months from the Initial Distribution, the remaining funds will be redistributed on a pro rata basis to all Authorized Claimants who cashed their distribution payment and whose additional distribution payment calculates to more than $10.00, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution (the "Second Distribution"). *Id.* ¶ 38(d). If cost effective, redistributions will be repeated until the balance in the Net Settlement Fund is no longer economically feasible to distribute. *Id*; ECF No. 91-1 (Stipulation) ¶ 14.

Finally, if any balance remains in the Net Settlement Fund that is no longer economically feasible to re-allocate, the remaining funds will be contributed to a non-sectarian, non-profit organization(s), to be recommended by Lead Counsel and approved by the Court. *Id*;  Ewashko Decl., ¶ 38(e).

**D.      Pursuant to the Stipulation, the Court Should Release Claims Arising From the Settlement Administration**

Additionally, in order to allow for the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the claims' processing, or involved in the administration or taxation of the Settlement Fund, be released and discharged from any and all claims arising from such involvement. Accordingly, Lead Plaintiff requests that the Court bar any such claims against all such persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted in connection with the Settlement, or otherwise involved in the administration or taxation of the Settlement Fund, and that all such persons be released and discharged from any and all claims arising out of such involvement. This release, which is commonplace in securities class actions, is already required under the Stipulation. *See* ECF No. 91-1, ¶ 30 ("No person or entity shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator, or any other agent designated by Lead Counsel, Defendants, or Defendants' Releasees and/or their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or any order of the Court.")

Lead Plaintiff also requests that Court, consistent with the Stipulation, bar all Class Members, whether or not they are to receive payment from the Net Settlement Fund, from making any further claim against the Net Settlement Fund beyond the amount allocated to them as provided

in any distribution orders entered by the Court. *See* ECF No. 91-1 ¶ 29 ("Payment pursuant to the Class Distribution Order shall be final and conclusive against all Claimants.  All Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternate Judgment, if applicable, to be entered in this Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendants' Releasees with respect to any and all of the Released Plaintiff's Claims.").

**E.  The Claims Administrator Should Be Permitted to Destroy Claim Records Following the Conclusion of the Distribution Process**

Lead Plaintiff also requests that the Court permit A.B. Data to destroy any paper copies of the Claim Forms, and all supporting paper documents, one year after the second distribution, if that occurs, or, if there is no second distribution, two years after the Initial Distribution, and to destroy any electronic copies of the same documents one year after all funds have been distributed. Ewashko Decl., ¶ 38(g).

## V.   CONCLUSION

For the foregoing reasons and for the reasons stated in the Ewashko Declaration, the Motion should be granted, and the Court should issue the Proposed Distribution Order submitted herewith.

Dated: September 18, 2023

Respectfully submitted,

By: */s/ Adam J. Blander*
Carl L. Stine
cstine@wolfpopper.com
Patricia I. Avery
pavery@wolfpopper.com
Adam J. Blander
ablander@wolfpopper.com
Emer C. Burke
eburke@wolfpopper.com
**WOLF POPPER LLP**
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600


*Class Counsel and Attorneys for
Lead Plaintiff*

14